TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Brian F. Moore
Kyle J. Ortiz

*Proposed Counsel to the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                        :

In re:                                    :        Chapter 11
                                        :
TOISA LIMITED, *et al.*,               :        Case No. 17-10184 (___)
                                        :
                     Debtors.[1]        :        (Joint Administration Pending)
                                        :
---------------------------------------------------------------x

**DEBTORS' MOTION FOR THE ENTRY OF AN ORDER UNDER
SECTIONS 105(a), 362, 365, AND 525 OF THE BANKRUPTCY
CODE ENFORCING AND RESTATING AUTOMATIC STAY,
*IPSO FACTO*, AND NON-DISCRIMINATION PROVISIONS**

Toisa Limited and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby apply (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A, under sections 105(a), 362, 365, and 525 of title 11 of the United States Code (the "Bankruptcy Code"), enforcing and restating the automatic stay, *ipso facto*, and non-discrimination provisions of the Bankruptcy Code. In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Robert Hennebry Pursuant to Local Bankruptcy*

---

[1] The Debtors are as follows: Trade Prosperity, Inc.; Toisa Limited; United Courage, Inc.; Trade Vision, Inc.; United Journey, Inc.; United Kalavryta, Inc.; Trade Sky, Inc.; Trade Industrial Development Corporation; United Honor, Inc.; Trade Will, Inc.; United Leadership Inc.; United Seas, Inc.; United Dynamic, Inc.; United Emblem, Inc.; United Ideal Inc.; Trade Unity, Inc.; Trade Quest, Inc.; Trade Spirit, Inc.; Trade Resource, Inc.; United Ambassador, Inc.; Edgewater Offshore Shipping, Ltd.; United Banner, Inc.; Toisa Horizon, Inc.; and Trade and Transport Inc.

*Rule 1007-2 and in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* filed with the Court concurrently herewith (the "First-Day Declaration").[2] In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent that:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.  The predicates for the relief requested herein are sections 105(a), 362, 365, and 525 of the Bankruptcy Code.

## BACKGROUND

**A.    The Chapter 11 Cases.**

3.  The factual background regarding the Debtors is set forth in the First-Day Declaration. On the date hereof (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors continue to operate their business and manage their property as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. The Debtors have requested joint administration of these Chapter 11 Cases by motion filed concurrently herewith. No trustee or examiner has been appointed in these Chapter 11 Cases. As of the date hereof, no creditors' committee has been appointed.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First-Day Declaration.

2

B.     **The United Journey Arrest.**

4.     On or about December 12, 2016, Citibank N.A. ("Citi") issued an Acceleration and Demand Notice in connection with certain alleged defaults under the Debtors' secured loan facility with Citi.  Shortly thereafter, on or about December 24, 2016, Citi caused the Debtors' tanker, United Journey, to be arrested in St. Eustatius in the Caribbean Netherlands.  As of the date hereof, the United Journey is still under arrest.

5.     As a result of the arrest of United Journey, the Debtors have incurred losses and expenses in the approximate amount of $736,474.85[3].

6.     Since Citi caused United Journey to be arrested, several of the Debtors' other lenders (including, among others, DNB Bank ASA, BNP Paribas SA, Danish Ship Finance A/S and Commonwealth Bank of Australia) have issued similar acceleration and demand notices but have not arrested any vessels, but have taken certain other enforcement actions.

## RELIEF REQUESTED

7.     Pursuant to sections 105(a), 362, 365, and 525 of the Bankruptcy Code, the Debtors request the entry of an order enforcing and restating the automatic stay, *ipso facto*, and non-discrimination provisions of the Bankruptcy Code.

## BASIS FOR RELIEF

8.     The Debtors' business operations are conducted worldwide, with significant assets moving through international waters at any given time.  As a result, the Debtors have many foreign creditors and counterparties to contracts in various

---

[3]  This figure is merely an estimate, as many of the components of the Debtors' losses and expenses are continuously incurred while the United Journey remains under arrest.

3

ports and other locations worldwide that may not be well versed in the protections and restrictions of the Bankruptcy Code.  Many of these creditors do not transact business on a regular basis with companies that have filed for chapter 11 or are unfamiliar with the scope of a debtor in possession's authority to continue to conduct its business.  These creditors may be unfamiliar with the operation of the automatic stay and other provisions of the Bankruptcy Code.  An order will make clear the impact of the automatic stay and its applicability to creditors wherever located.

9. Moreover, because the Debtors' business operations implicate maritime law, various foreign creditors could seek to assert maritime liens against the Debtors' assets.  The determination of what claim may constitute a maritime lien is determined by local law on a case by case basis.  Thus, various interested parties may attempt to seize assets located outside of the United States to the detriment of the Debtors and their creditors, or take other actions in contravention of the automatic stay of section 362 of the Bankruptcy Code that could harm the Debtors' estates.  In addition, upon learning of the Debtors' bankruptcy, counterparties to leases and executory contracts may attempt to terminate those leases or contracts pursuant to *ipso facto* provisions in contravention of section 365 of the Bankruptcy Code.

10. Finally, because of the international nature of the Debtors' business, the Debtors are required to obtain licenses, permits, and charters from various governmental units located outside the United States.  These governmental units may be unfamiliar with the non-discrimination provision of section 525 of the Bankruptcy Code, which prohibits governmental units from revoking, suspending, or failing to renew a license, permit, charter, franchise, or other similar grant or discriminate with respect to such grant against a debtor solely based on the debtor's bankrupt status or financial condition.  Without the relief requested in this Motion, certain foreign

4

governmental units may attempt to take adverse action against the Debtors with respect to their various licenses, permits, and charters upon learning of the Debtors' bankruptcy filings.

11. Accordingly, by this Motion, the Debtors seek entry of an order, under sections 105(a), 362, 365, and 525 of the Bankruptcy Code, enforcing and restating the automatic stay, *ipso facto*, and non-discrimination provisions of the Bankruptcy Code. The Debtors believe that a specific order from this Court will help to protect the Debtors and their assets from improper actions, particularly by parties in foreign jurisdictions who are not familiar with the Bankruptcy Code or its protections, and who might unwittingly otherwise violate those sections.

## APPLICABLE AUTHORITY

### A. Automatic Stay and *Ipso Facto* Provisions of the Bankruptcy Code.

12. As a result of the commencement of these Chapter 11 Cases, and by operation of law pursuant to section 362 of the Bankruptcy Code, the automatic stay enjoins all persons from, among other things, taking any action to obtain possession of property of the estate or to attempt to exercise control over property of the estate. The injunction contained in section 362 of the Bankruptcy Code constitutes a fundamental protection for debtors, which, in combination with other provisions of the Bankruptcy Code, provides these Debtors with a "breathing spell from [their] creditors" that is essential to the Debtors' ability to reorganize successfully. *See, e.g., Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir. 1990) (citations omitted) (holding in part that a union action seeking judicial enforcement of a collective bargaining agreement provision was stayed).

13. Given its fundamental importance to a debtor's reorganization, courts broadly construe the stay provisions of section 362 of the Bankruptcy Code. As such,

the stay has been held to preclude unilateral actions by non-debtor parties to terminate contracts without court order. See, e.g., *Fed. Ins. Co. v. Sheldon*, 150 B.R. 314, 319-20 (S.D.N.Y. 1993) (termination of insurance contract void because it violated automatic stay).

14. Section 362 of the Bankruptcy Code applies extraterritorially to all creditors wherever situated. See *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Secs. LLC)*, 2012 WL 1570859 (S.D.N.Y. May 4, 2012) (upholding extraterritorial enforcement of the automatic stay and injunction barring foreign creditor's lawsuit); *Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon)*, 153 F.3d 991, 996 (9th Cir. 1998) ("Given this clear expression of intent by Congress in the express language of the Bankruptcy Code, we conclude that Congress intended extraterritorial application of the Bankruptcy Code as it applies to property of the estate."); *Nakash v. Zur (In re Nakash)*, 190 B.R. 763, 768 (Bankr. S.D.N.Y. 1996) ("[B]ased upon the applicable Code sections [and] other indicia of congressional intent, . . . the automatic stay applies extraterritorially."); *In re McLean Indus.*, 74 B.R. 589, 601 (Bankr. S.D.N.Y. 1987) ("The automatic stay applies extraterritorially.").

15. Recognizing the unique nature of international shipping cases, courts situated in this District have entered orders similar to the proposed order annexed hereto that contain specific reference to the automatic stay protecting against the arrest and seizure of a debtor's vessels or other property of the estate and prohibiting actions that interfere with the operation of a debtor's business (whether those actions are taken in the United States or abroad). *See, e.g., In re: Nautilus Holdings Ltd.*, Case No. 14-22885 (RDD) (Bankr. S.D.N.Y. Jun. 25, 2014) (Docket No. 30) (enjoining all persons and entities, whether located within the United States or otherwise, as well as foreign and domestic governmental units from, among other things, "taking any action whether inside or

outside the United States to obtain possession of property of the Debtors' estates wherever located or to exercise control over property of the estates, wherever located, or interfere in any way with the conduct by the Debtors of their businesses, including, without limitation, **attempts to interfere with deliveries or events or attempts to arrest, attach, seize, or reclaim, in any United States or foreign jurisdiction, any vessels, ships, equipment, supplies, or other assets the Debtors use in their businesses**[.]") (emphasis in original); *In re Excel Marine Carriers Ltd.*, Case No. 13-23060 (RDD) (Bankr. S.D.N.Y. Jul. 3, 2013) (Docket No. 34) (same).

16.    Moreover, as the automatic stay is self-executing, any attempt to retain property of a debtor's estate post-petition constitutes a violation of the stay. *In re Metromedia Fiber Network, Inc.*, 290 B.R. 487, 493 (Bankr. S.D.N.Y. 2003) ("The automatic stay most certainly is "self executing" in the sense that it must be complied with absent any action by the debtor or the court, at the risk of sanctions for violation"); *see also In re Weber*, 719 F.3d 72, 77 (2d Cir. 2013) (holding that creditor that lawfully repossessed chapter 13 debtor's vehicle prepetition nevertheless violated the automatic stay by failing to surrender the vehicle upon receiving notice of the debtor's bankruptcy filing).

17.    As such, bankruptcy courts in shipping cases have issued orders directing that arrested vessels of the debtor be released by such debtor's secured creditors.[4] *See, e.g., In re TMT Procurement Corp.*, Case No. 13-33763 (Bankr. S.D. Tex. Sep. 16, 2013) (Docket No. 459) (Ordering that debtor's secured creditors "shall take all necessary steps to facilitate the release of the [debtors' vessel.]" including but not limited to by filing appropriate pleadings in arrest proceedings); *In re Torch Offshore, Inc.*, Case No. 05-10137 (Bankr. E.D. La. Jan. 11, 2005) (Docket No. 42) (Ordering United States

---

[4]    Copies of these Orders are available upon request.

Marshals and any substitute custodian to immediately release debtor's arrested vessel). Accordingly, the proposed Order granting the relief requested in this motion contains a provision directing that any person or entity in possession or control of the Debtors' vessels release and turnover the same to the Debtors.

18. In addition, section 365(e)(1)(B) of the Bankruptcy Code prohibits counterparties to contracts with a debtor from terminating contracts because of a debtor's bankruptcy filing. Section 365(e)(l)(B) of the Bankruptcy Code provides, subject to certain limited exceptions, that:

> [n]otwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on . . . the commencement of a case under this title.

11 U.S.C. § 365(e)(1)(B). Thus, section 365(e) of the Bankruptcy Code invalidates so-called "*ipso facto*" provisions, which provide for the termination of a contract upon a bankruptcy filing.

19. The application of the protections afforded a debtor by sections 362 and 365 of the Bankruptcy Code is automatic with the filing of a chapter 11 petition. *See* 11 U.S.C. § 362(a) ("[A] petition filed under section 301 . . . of this title . . . operates as a stay applicable to all entities, of [, among other things,] any act to obtain possession over property of the estate or property from the estate or to exercise control over property of the estate . . . ."); 11 U.S.C. § 365 ("any right or obligation under [an executory contract or unexpired lease of the debtor] may not be terminated or modified, at any time after the commencement of the case solely because of [an *ipso facto* provision].").

8

B.  **The Non-Discrimination Provisions of the Bankruptcy Code**

20.  Bankruptcy Code section 525 provides that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to [or] discriminate with respect to such grant against . . . a debtor." 11 U.S.C. § 525(a). The prohibition on governmental discrimination against a debtor is both self-executing and global, and intended to preclude governmental entities from refusing to deal with a debtor based upon its chapter 11 filing, similar to the automatic stay protection but as applied to non-creditor governmental entities. *See In re Gen. Motors Corp.*, No. 09-50026 (REG), 2009 WL 1565942, at *2 (Bankr. S.D.N.Y. June 1, 2009) (Ordering that "all *foreign* and domestic governmental units are prohibited and enjoined from (i) denying, revoking, suspending, or refusing to renew any license, permit, charter, franchise, or other similar grant to, (ii) placing conditions upon such a grant to, or (iii) discriminating against any of the [d]ebtors (or another person with whom the [d]ebtors have been associated) solely because any of the [d]ebtors is a debtor under the Bankruptcy Code, or may have been insolvent before or during [the debtors'] chapter 11 cases[.]") (emphasis supplied); *see also Betty Owen School v. U.S. Dep't of Educ. (In re Betty Owen Schools, Inc.)*, 195 B.R. 23, 31 (Bankr. S.D.N.Y. 1996) ("Section 525(a) was enacted to prevent the government from frustrating the 'fresh start' policy of the Code.") (citation omitted); *Saunders v. Reeher (In re Saunders)*, 105 B.R. 781, 787 (Bankr. E.D. Pa. 1989) ("Section 525(a) instead was intended to reach non-creditor governmental (or quasi-governmental entities) that . . . frustrate the 'fresh start' policy of the bankruptcy code by denying property interests not obtainable through the private sector . . . Unless the governmental entity was acting as an agent for a creditor, such conduct would not run afoul of section 362.") (citations omitted); *see also* H.R. Rep. No. 95-595, at 165 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6126 ("The purpose of [section 525] is to prevent

9

an automatic reaction against an individual for availing himself of the protection of the bankruptcy laws.").

21.     The Debtors are parties to contracts and possess licenses or other grants from governmental units located throughout the world, both domestically and internationally, that are necessary to the conduct of the Debtors' business. Certain of the foreign governmental units may not be cognizant of the protections afforded to the Debtors by Bankruptcy Code section 525, and therefore, may inadvertently contravene its provisions. To ensure that governmental units worldwide do not hamper the Debtors' operations in contravention of the protections of Bankruptcy Code section 525, the Debtors seek, through the proposed order, to inform such governmental entities of the existence and implications of Bankruptcy Code section 525.

C.   **Relief Requested Should Be Granted Under Section 105(a) of the Bankruptcy Code.**

22.     Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) therefore authorizes bankruptcy courts to issue injunctions and take other necessary steps in aid of their jurisdiction.

23.     Notwithstanding the fundamental nature of the automatic stay, *ipso facto*, and non-discrimination protections, and the fact that they arise as a matter of law upon the commencement of a chapter 11 case, not all parties affected or potentially affected by the commencement of a chapter 11 case are aware of these Bankruptcy Code provisions. Nor are all parties cognizant of the significance and impact of these provisions. Experience has shown that it is often necessary to advise third parties – particular those in foreign jurisdictions – of the existence and effect of the automatic stay, the invalidation of *ipso facto* provisions, and the protection from discrimination,

particularly in cases in which the debtor conducts significant business in foreign jurisdictions.  Occasionally, it is necessary to commence proceedings in the bankruptcy court to enforce these provisions.  Accordingly, it is not uncommon for a bankruptcy court to issue an order embodying and restating the provisions of sections 362, 365, and 525 of the Bankruptcy Code.  Although these fundamental protections are automatic, they will not serve their functions if creditors do not realize or understand that they exist.

24.     Thus, even though an order of the sort sought by this Motion is not necessary to trigger the protections afforded the Debtors by sections 362, 365, and 525 of the Bankruptcy Code, the entry of such an order will aid the Debtors in explaining to their creditors, particularly their foreign creditors, the existence and broad scope of these protections and their applicability to such creditors.  The granting of the relief requested will help ensure that (i) the non-debtor parties to unexpired leases and executory contracts with the Debtors will continue to perform and will not unilaterally terminate their contracts, (ii) creditors will not seize the Debtors' assets, impose maritime liens or take any other action in violation of the automatic stay, and (iii) foreign governmental units do not revoke the Debtors' charters or otherwise take adverse action against the Debtors with respect to their licenses, permits, and other grants.

25.     Accordingly, the Debtors respectfully request that this Court issue an order, in the form attached hereto, which substantially restates the applicable provisions of sections 362, 365, and 525 of the Bankruptcy Code as applicable to all creditors and parties-in-interest.  Granting the relief requested herein will facilitate a smooth and orderly transition into chapter 11 and minimize the disruption of the Debtors' business affairs.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

26. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

27. Notice of this Motion shall be given to: (a) the United States Trustee for the Southern District of New York; (b) the Debtors' material prepetition secured lenders; (c) the parties listed in the consolidated list of thirty (30) largest unsecured creditors filed by the Debtors in these Chapter 11 Cases; (d) the Internal Revenue Service; and (e) any such other party entitled to notice pursuant to Local Bankruptcy Rule 9013-1(b). The Debtors respectfully submit that no other or further notice need be provided.

## NO PRIOR REQUEST

28. No previous request for the relief sought herein has been made to this Court or any other court.

[*Concluded on the following page*]

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto as Exhibit A, granting the relief requested in this Motion and such other and further relief as may be just and proper.

DATED:  New York, New York
January 29, 2017

        TOGUT, SEGAL & SEGAL LLP,
*Proposed Counsel to the Debtors and Debtors in Possession*
TOISA LIMITED, *et al.*,
By:

/s/ Albert Togut
ALBERT TOGUT
FRANK A. OSWALD
BRIAN F. MOORE
KYLE J. ORTIZ
One Penn Plaza, Suite 3335
New York, New York  10119
(212) 594-5000