**Hearing Date: 2/21/2017 at 2:00 p.m. (ET)**
**Objection Deadline: 2/20/2017 at 4:00 p.m. (ET)**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Brian F. Moore

*Proposed Counsel to the*
*Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
|  |  |
| --- | --- |
| In re: | Chapter 11 |
| TOISA LIMITED, *et al.*, | Case No. 17-10184 (SCC) |
| Debtors.[1] | (Jointly Administered) |

----------------------------------------------------------------x

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS, UPON CONSENT OF THE DEBTORS AND CITIBANK N.A., LONDON BRANCH (I) AUTHORIZING THE DEBTORS' USE OF CITIBANK'S CASH COLLATERAL, (II) GRANTING CITIBANK ADEQUATE PROTECTION, (III) RELEASING VESSEL, UNITED JOURNEY, TO THE DEBTORS, (IV) SCHEDULING A FINAL HEARING AND (V) GRANTING RELATED RELIEF**

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

       Toisa Limited and certain of its affiliates, as debtors and debtors in possession in

the above-captioned cases (collectively, the "Debtors"), hereby seek ("Motion"), among

other things, entry of an interim order, substantially in the form attached hereto as

---

[1]    The Debtors are as follows:  Trade Prosperity, Inc.;  Toisa Limited;  United Courage, Inc.;  Trade Vision, Inc.;  United Journey, Inc.;  United Kalavryta, Inc.;  Trade Sky, Inc.;  Trade Industrial Development Corporation;  United Honor, Inc.;  Trade Will, Inc.;  United Leadership Inc.;  United Seas, Inc.;  United Dynamic, Inc.;  United Emblem, Inc.;  United Ideal Inc.;  Trade Unity, Inc.;  Trade Quest, Inc.;  Trade Spirit, Inc.;  Trade Resource, Inc.;  United Ambassador, Inc.;  Edgewater Offshore Shipping, Ltd.;  United Banner, Inc.;  Toisa Horizon, Inc.;  and Trade and Transport Inc.

Exhibit A (the "Interim Order"), and thereafter a final order, in substantially the same

form as the Interim Order (the "Final Order" and, together with the Interim Order, the

"Orders"), pursuant to sections 105, 361, 362, 363, 507(b) and 552 of title 11 of the United

States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of

the Local Bankruptcy Rules for the Southern District of New York (the "Local

Bankruptcy Rules"):  (a) authorizing the use of "cash collateral", as that term is defined

in section 363 of the Bankruptcy Code (which shall include, but not be limited to, any

and all cash of any kind, whether in reserved accounts, blocked accounts or otherwise),

in which Citibank N.A., London Branch ("Citibank") has a lien or other interest,

whether existing on the Petition Date (as defined below), arising pursuant to the

Orders, or otherwise (the "Cash Collateral");  (b) granting adequate protection to

Citibank;  (c) modifying the automatic stay imposed under section 362 of the

Bankruptcy Code to the extent necessary to implement the terms of the Orders;

(d) immediately releasing the vessel, *United Journey*, from arrest;  (e) scheduling a

hearing to consider entry of the Final Order;  and (f) granting related relief.  In support

of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of

Robert Hennebry Pursuant to Local Bankruptcy Rule 1007-2 and in Support of the Debtors'

Chapter 11 Petitions and First Day Pleadings* [Docket No. 3] (the "First-Day Declaration").

In further support of the Motion, the Debtors, by and through their undersigned

proposed counsel, respectfully state that:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157

and 1334 and the "Amended Standing Order of Reference" for the Southern District of

New York, dated January 31, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).

2

Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The predicates for the relief requested herein are sections 105, 361, 362, 363, 507(b) and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014 and Local Bankruptcy Rule 4001-2.

BACKGROUND

**A.  The Chapter 11 Cases**

3.      On January 29, 2017, (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of New York (the "Court").  The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered.

4.      The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee or examiner has been appointed in these Chapter 11 Cases.  As of the date hereof, no creditors' committee has been appointed.

5.      The factual background regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to these Chapter 11 Cases, is set forth in detail in the First Day Declaration.[2]

**B.  The Citibank Tanker Facility**

6.      Each of Debtors United Journey Inc. and United Seas Inc. (together, the "Citibank Tanker Borrowers") is a borrower under the Facility Agreement in the

---

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

aggregate original principal amount of $56,000,000, dated January 26, 2015, with Citibank, as lender, and Toisa Limited ("Toisa"), as guarantor (as amended, restated, supplemented or otherwise modified from time to time, the "Citibank Tanker Facility," and together with all other loan and security documents executed in connection with the Citibank Tanker Facility, the "Citibank Tanker Facility Documents").

7.    As of the Petition Date, approximately $46,094,548.00 in aggregate principal amount was outstanding under the Citibank Tanker Facility (the "Citibank Tanker Prepetition Obligations").  For purposes of this Motion, the Citibank Tanker Prepetition Obligations include the principal of, and all interest, fees, expenses, and other charges owing as of the Petition Date in accordance with the Citibank Tanker Facility Documents.   Borrowings under the Citibank Tanker Facility are secured by two vessels, the *United Journey* and the *United Seas*, which carry crude oil or finished petroleum products (each a "Citibank Tanker Vessel," and collectively the "Citibank Tanker Vessels").  Each of the Citibank Tanker Vessels is owned by a Citibank Tanker Borrower.

8.    Prior to the Petition Date, (i) each of the Citibank Tanker Borrowers granted to Citibank, as lender, security interests and liens (the "Citibank Tanker Borrowers Prepetition Liens") on (a) the Citibank Tanker Vessels, (b) the earnings from the Citibank Tanker Vessels (the "Citibank Tanker Earnings"), insurance and requisition compensation for the Citibank Tanker Vessels, and (c) deposit accounts into which, among other things, the Citibank Tanker Earnings are to be deposited[1], and

---

[1]    There are two deposit accounts ("Athens Citibank Tanker Borrower Accounts") under pledge agreements that are held at Citibank International Limited in Athens, Greece as follows:  United Journey Inc. Account Number xxxxxx4/004, and United Seas Inc.  Account Number xxxxxx5/008(last 4 digits only).  As a result of challenges affecting the Greek economy, the parties also utilized two additional deposit accounts (the "London Citibank Tanker Borrower Accounts") that not subject to pledge agreements but which are held by Citibank as lender at accounts at Citibank, N.A, London

*(cont'd)*

collectively with the collateral described in the documents enumerated in Exhibit 1 attached to the Orders, the "Citibank Tanker Prepetition Collateral").

### C. Citibank's Arrest of United Journey

9.      On or about December 12, 2016, Citibank issued an Acceleration and Demand Notice in connection with certain alleged defaults under the Citibank Tanker Facility.  On or about December 24, 2016, Citibank caused the *United Journey* to be arrested in St. Eustatius in the Caribbean Netherlands.  As of the date hereof, the *United Journey* is still under arrest.

10.      At the time of the arrest, the *United Journey* was generating revenue at a rate of $15,000 per day.

11.      To date, no case on the merits has been commenced in St. Eustatius or elsewhere to enforce the mortgage on the *United Journey*, and the vessel remains in the possession of a Mr. Roberto Ricardo Patrick, in his capacity as bailiff, on behalf of Citibank.

12.      Since this Court's entry on January 30, 2017 of the *Order Under Sections 105(a), 362, 365, and 525 of the Bankruptcy Code Enforcing and Restating Automatic Stay, Ipso Facto, and Non-Discrimination Provisions* [Docket No. 14] (the "Automatic Stay Order"), the Debtors and Citibank have engaged in negotiations regarding the release of the *United Journey* and the Debtors post-petition use of cash collateral in which Citibank asserts an interest.

---

*(cont'd from previous page)*
Branch in London, England as follows:  United Journey Inc. account number xxxxx0623 and United Seas Inc.  account number xxxxx0017. (Last 4 digits only).   Collectively, the Athens and London Citibank Tanker Borrower Accounts shall be referred to as the "Citibank Tanker Borrower Accounts."

13.     In exchange for the adequate protection to be granted Citibank pursuant
to the Interim Order, Citibank has agreed to cause the *United Journey's* immediate
release and allow the Citibank Tanker Borrowers to use Citibank's Cash Collateral.

## RELIEF REQUESTED

14.     By this Motion, the Debtors request entry of the Interim Order, and
thereafter, following adequate notice to parties entitled to receive notice pursuant to the
Bankruptcy Rules, the Final Order.

15.     In accordance with Bankruptcy Rule 4001(b) and Local Bankruptcy Rule
4001-2, the following is a summary of the relief requested and set forth in the proposed
form of Interim Order, together with references to the applicable sections of the Interim
Order.[4]

| | |
|---|---|
| Entities with Interest in the Cash Collateral Bankruptcy Rule 4001(b)(1)(B)(i) | Citibank (Interim Order, Section C) |
| Purposes for Use of Cash Collateral Bankruptcy Rule 4001(b)(1)(B)(ii); Local Bankruptcy Rule 4001-2(a)(1) | The Citibank Tanker Borrowers shall not use any Cash Collateral except (i) upon the terms and conditions set forth in the Interim Order, or (ii) upon Citibank's prior written consent (such consent, not to be unreasonably withheld, to be provided in Citibank's sole discretion), or (iii) as otherwise approved by this Court.<br><br>The Citibank Tanker Borrowers are authorized, subject to the terms and conditions of the Orders, to use Cash Collateral during the period from the entry of the Interim Order through the Termination Date (as defined below) to fund, *inter alia*, the Citibank Tanker Voyage and Vessel Operating Expenses, Citibank Tanker Vessel Capital Expenditures, Citibank Tanker Vessel Drydocking Expenses, Citibank Tanker Vessel Drydocking Reserve Amounts (for both Citibank Tanker Vessels in the cumulative amount of $178,235 per month to December 2017, then $63,235 per month to December 2019 per month), and the Adequate Protection Payments as set forth in the rolling 4-week |

---

[4]     In the event of any inconsistency between this summary and the Interim Order, the terms of the
Interim Order shall control.

| | |
|---|---|
| | cash flow forecast of the Citibank Tanker Borrowers' cash receipts and expenditures, attached to the Interim Order as Exhibit 2 (as updated monthly pursuant to paragraph 4 of the Interim Order and as otherwise amended, extended, supplemented or otherwise modified in accordance herewith, the "<u>Budget</u>").   On or before the Final Hearing on the Motion, the Debtors will commence utilizing a 13-week Budget in place of a 4-week Budget.<br><br>(Interim Order, Section 3) |
| Material Terms: Duration and Use of Cash Collateral Bankruptcy Rule 4001(b)(1)(B)(iii) | The Order contemplates use of Cash Collateral through the week ending March 17, 2017 (with such date to be extended until April 30, 2017 upon entry of a Final Order and from time to time by written agreement among Citibank and the Debtors without further order of the Court).<br><br>(Interim Order, Section 19). |
| Material Terms: Termination Events Bankruptcy Rule 4001(b)(1)(B)(iii); Local Bankruptcy Rule 4001-2(a)(10) | Subject to the Remedies Notice Period (as defined below), each of the following events shall constitute a termination event (each, a "<u>Termination Event</u>"):<br><br>a.      The reversal, vacatur or, modification or stay of the Orders in any manner materially adverse to Citibank, without the prior written consent of Citibank (such consent to be provided in Citibank's sole discretion), or any of the Debtors shall file any pleading seeking the foregoing relief;<br><br>b.      The entry by the Court of an order (i) dismissing the Citibank Tanker  Borrowers' Chapter 11 Cases, (ii) converting any Citibank Tanker Borrower's  Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, or (iii) appointing a Chapter 11 trustee or an examiner in any Citibank Tanker Borrower's Chapter 11 Case where such Chapter 11 trustee or examiner is given the power to operate the Citibank Tanker Borrowers' business, or any of the Debtors shall file any pleading seeking the foregoing relief;<br><br>c.      The failure of the Citibank Tanker Borrowers to make any payments as set forth in Paragraph 6 of the Interim Order when due, in the event that such failure is not cured on or within five (5) business days after the delivery of written notice of such failure by Citibank to the Notice Parties (as defined in the Interim Order);<br><br>d.      The failure of the Citibank Tanker Borrowers and Toisa to comply with the reporting requirements as set forth in Paragraph 4 of the Interim Order, in the event that such failure is not cured on or within fifteen (15) calendar days after the delivery of written notice of such failure by Citibank to the Notice Parties (as defined in the Interim Order); |

e.      The incurrence of any post-petition liens or security interests that are superior or *pari passu* to those liens in favor of Citibank, but excluding the Restricted Permitted Liens (as defined below);

f.      the Debtors shall have filed a motion or application for the approval of any superpriority claim or any lien (other than any such claim or lien granted or permitted pursuant to the Orders), which is *pari passu* with or senior to any of the Post-petition Liens, Section 507(b) Claims (except in respect of other secured creditors' 507(b) Claims against Toisa which may be *pari passu* with Citibank's 507(b) Claims against Toisa), or Citibank Tanker Borrowers Prepetition Liens, without the prior consent of Citibank;

g.      Any party forecloses (or a deed in lieu of foreclosure or the like is granted) on one or more of the Citibank Tanker Vessels;

h.      A final order shall be entered on any motion filed by any person (other than Citibank) in the Citibank Tanker Borrowers' Chapter 11 Cases seeking to lift the automatic stay to exercise any rights with respect to any of the Citibank Tanker Prepetition Collateral or the Citibank Tanker Post-petition Collateral without the prior written consent of Citibank, such consent to be provided in Citibank's sole discretion;

i.      unless approved by the Court or agreed to in writing by Citibank in its sole discretion, the fixing of any long-term charter (i.e., in excess of 12 months) on a Citibank Tanker Vessel;

j.      commencement of any action, including the filing of any pleading, by any Debtor, or direct or indirect non-debtor affiliate or subsidiary of a Debtor, against Citibank challenging the matters stipulated to in paragraph C of the Interim Order, subject to the Debtor Challenge Period (as defined below);

k.      the Court shall hereafter grant any application or motion or borrowing request of the Debtors seeking to incur indebtedness for borrowed money from any party other than Citibank, which shall be secured by a lien on, or otherwise have a claim against or recourse to, as the case may be, the Citibank Tanker Borrowers, the Citibank Tanker Prepetition Collateral or the Citibank Tanker Post-petition Collateral, unless such liens or claims are junior and subordinated (and with no rights of payment (including under any plan of reorganization) or enforcement prior to payment in full and in cash of all senior obligations) to the Citibank Tanker Prepetition Liens, the Citibank Tanker Prepetition Obligations, the Citibank Tanker Post-petition Liens, and the Section 507(b) Claims;

l.       any Citibank Tanker Vessel is arrested, confiscated, seized, taken in execution, impounded, forfeited, detained in exercise or purported exercise of any possessory lien or other claim, or otherwise taken from the possession of the applicable Debtor, and such Vessel is not returned to the possession of, or retrieved or repossessed by, the applicable Debtor for use and operation within fourteen (14) calendar days;

m.      the registration of any Citibank Tanker Vessel under the laws of its flag jurisdiction is cancelled or terminated without the prior written consent of Citibank and not restored within five (5) business days, provided that the Debtors have given prompt written notice to Citibank of the occurrence of any such cancellation, and if prompt written notice is not given, the Termination Event shall be deemed to have immediately occurred;

n.      any Debtor or any other person fails or omits to comply with any requirements of the protection and indemnity association or other insurer with which a Citibank Tanker Vessel is entered for insurance or insured against protection and indemnity risks (including oil pollution risks), to the effect that any cover (including, without limitation, any cover in respect of liability for environmental claims arising in jurisdictions where such Citibank Tanker Vessel operates or trades) is cancelled and not renewed or replaced within five (5) business days, provided that the Debtors have given prompt written notice to Citibank of the occurrence of any such cancellation, and if prompt written notice is not given, the Termination Event shall be deemed to have immediately occurred;

o.      the entry of an order of this Court approving any claims for recovery of amounts under section 506(c) of the Bankruptcy Code or otherwise arising from the preservation or disposition of any Citibank Tanker Prepetition Collateral;

p.      the Post-petition Liens and the 507(b) Claims granted to Citibank shall cease to be valid, perfected and enforceable in all respects, or any Debtor shall assert the invalidity or unenforceability of any of the Post-petition Liens or 507(b) Claims;

q.      any Debtor shall seek to, or shall support (in any case by way of, *inter alia*, any motion or other pleading filed with this Court or any other writing to another party in interest executed by or on behalf of any Debtor) any other person's motion to disallow or subordinate in whole or in part Citibank's claim in respect of Citibank Tanker Prepetition Obligations or to challenge matters stipulated to in paragraph C of the Interim Order, except as permitted in paragraph 9 of the Interim Order;  or

| | |
|---|---|
| | r.      the Debtors shall fail to comply with any other provision of the Orders and such failure shall continue unremedied for five (5) business days following written notice thereof (which may be given electronically) from Citibank.<br><br>To the extent the Debtors become aware of a Termination Event, the Debtors will promptly provide notice to Citibank, the Committee (if one is appointed by the U.S. Trustee) and the U.S. Trustee of the occurrence of such Termination Event.   For the period that is five (5) business days after the notice of a Termination Event (the "Remedies Notice Period"), the Debtors and the Committee, (if one is appointed by the U.S. Trustee) shall be entitled to seek an emergency hearing with the Court in connection with any alleged Termination Event (at which hearing the sole issue for determination by the Court will be whether a Termination Event occurred), and the Debtors will continue to be authorized to use Cash Collateral pending such judicial determination.<br><br>(Interim Order, Section 19) |
| Liens, Cash Payments or Adequate Protection Provided for Use of Cash Collateral Bankruptcy Rule 4001(b)(1)(b)(iv); Local Bankruptcy Rule 4001-2(a)(6) | Solely to the extent of the Citibank Tanker Prepetition Obligations, Citibank is entitled, pursuant to Sections 361, 362(d) and 363 of the Bankruptcy Code, to adequate protection for (i) use of its Cash Collateral, (ii) the imposition of the automatic stay pursuant to Section 362(a) of the Bankruptcy Code (the "Automatic Stay"), and (iii) the use, sale, or lease of the Citibank Prepetition Collateral under Section 363 of the Bankruptcy Code (collectively, the "Adequate Protection Obligations").<br><br>As adequate protection for the Adequate Protection Obligations, solely to the extent of any diminution in value of the Citibank Tanker Prepetition Collateral, Citibank is hereby granted the following:<br><br>i.   Adequate Protection Liens.  Pursuant to Sections 361(2), 363(c)(2) and 363(e) of the Bankruptcy Code, solely on account of diminution in value of the Citibank Tanker Prepetition Collateral arising from the use of Cash Collateral, the imposition of the Automatic Stay, or the use, sale, or lease of the Citibank Tanker Prepetition Collateral, valid, binding, continuing, enforceable and perfected non-avoidable first priority security interests in, and liens on (the "Post-petition Liens"), all of the Citibank Tanker Borrowers' now owned or hereafter acquired property and assets, real or personal, tangible or intangible, including all of the Citibank Tanker Prepetition Collateral, post-petition charter revenue and earnings, insurances, requisition |

compensation, bank accounts and other security or deposit accounts of the Citibank Tanker Borrowers, and all proceeds, products, rents, and revenues of any and all of the foregoing, along with any property acquired post-petition that forms part of, or is an appurtenance to, the Citibank Tanker Vessels (collectively, the "Citibank Tanker Post-petition Collateral"), (i) subject to the Carve-Out (as defined below) and (ii) excluding avoidance causes of action (and proceeds thereof) arising under Bankruptcy Code Sections 544, 545, 546, 547, 548, 549, 550, and 553 (collectively, the "Avoidance Actions"). Each such Post-petition Lien shall be, subject to the Carve-Out (defined below), (i) a first priority, perfected lien upon all of the Citibank Tanker Post-petition Collateral that is not otherwise encumbered by a validly perfected, enforceable, non-avoidable security interest or lien, and (ii) a second priority perfected lien upon all Citibank Tanker Post-petition Collateral, which is subject to a validly perfected lien as of the Petition Date, to the Restricted Permitted Liens (as defined below), or to a valid and unavoidable lien in existence immediately prior to the Petition Date that is perfected after the Petition Date as permitted by Bankruptcy Code Section 546(b). The Post-petition Liens shall in all cases be prior and senior to all liens, encumbrances and security interests in and to such Citibank Tanker Post-petition Collateral granted by operation of law or consensually by the Citibank Tanker Borrowers after the Petition Date except for liens, encumbrances, and security interests that meet the following three conditions: (x) the lien, encumbrance, or security interest is incidental to the conduct of the business of the relevant Citibank Tanker Borrower; (y) the lien, encumbrance or security interest arises by operation of any applicable law; and (z) pursuant to applicable law, the lien, encumbrance or security interest ranks prior and senior to, or pari passu with, the Post-petition Liens (the "Restricted Permitted Liens"). The Post-petition Liens shall not be (i) subject to any lien that is avoided and preserved for the benefit of the Citibank Tanker Borrowers' estates under Bankruptcy Code Section 551 or (ii) subordinated to any other lien under Bankruptcy Code Sections 363 and 364.

ii. Adequate Protection Payments. The Citibank Tanker Borrowers shall, on the first day of each month (unless such day is not a business day, in which case the required payment date shall be the next succeeding business day), (i) pay to Citibank the current interest payments due on the Citibank Tanker Prepetition Obligations at the non-default contract rate of interest set forth in (and at the times

provided in) the Citibank Tanker Facility Documents (the "Adequate Protection Interest Payments"), it being understood that the default rate will accrue to the fullest extent permitted under the Bankruptcy Code, with all rights to object fully preserved, and (ii) pay the reasonable and documented unpaid post-petition fees and expenses of legal, financial, and other professionals of Citibank in connection with the Citibank Tanker Facility Documents and/or the Debtors' Chapter 11 Cases (except for fees and expenses that are solely related to other lending facilities in which Citibank or its affiliates serve as lender or agent in respect of the Debtors) (the "Expense Reimbursement," and together with the Adequate Protection Interest Payments, the "Adequate Protection Payments").   The parties reserve all of their respective rights, claims and defenses with respect to the payment of: (i) prepetition fees, costs and expenses in respect of the Citibank Tanker Facility Documents;  and (ii) fees, costs and expenses in respect of other lending facilities in which Citibank or its affiliates serve as lender or agent in respect of the Debtors.  To the extent that the Citibank Tanker Borrowers have not paid any post-petition amount of interest or expense reimbursement due and owing prior to the entry of the Interim Order, the Citibank Tanker Borrowers are authorized to make such payments upon entry of the Interim Order and subject to the terms thereof. None of the fees, costs and expenses payable pursuant to Paragraph 6 of the Interim Order shall be subject to separate approval by this Court, and no recipient of any such payment shall be required to file or serve upon any party an interim or final fee application with respect thereto.  The U.S. Trustee, the Debtors, and the Committee, if one is appointed by the U.S. Trustee, shall have seven (7) days from the date of delivery of such invoices to review and, if appropriate, dispute any of such fees and expenses by filing with the Court and serving upon Citibank a written objection to the reasonableness of such fees, costs and expenses.  The Citibank Tanker Borrowers shall not be authorized to make any of the payments that have been objected to.  Upon entry of an order by the Court resolving such objection (or if such objection is otherwise withdrawn or resolved), the Citibank Tanker Borrowers or Toisa are authorized to pay such amounts no longer in dispute.

iii. 507(b) Claims.  The Adequate Protection Payments and the Adequate Protection Obligations, to the extent not satisfied by the Adequate Protection Payments and the Post-petition Liens, shall constitute expenses of administration under

| | |
|---|---|
| | Bankruptcy Code Sections 503(b), 507(a) and 507(b) (the "507(b) Claims") solely of the Citibank Tanker Borrowers and Toisa with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, Bankruptcy Code Sections 105, 326, 328, 330, 331 and 726, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor (except in respect of other secured creditors' 507(b) Claims against Toisa in which case Citibank's 507(b) Claims against Toisa shall be *pari passu* with such claims), in these Chapter 11 Cases or, to the extent permitted by applicable law, any subsequent proceedings under the Bankruptcy Code; provided, however, that the 507(b) Claims shall be subject to the Carve-Out (as defined below).  Except for the Carve-Out, no cost or expense of administration under Bankruptcy Code Sections 105 or 503(b) or otherwise, including those resulting from the conversion of these Chapter 11 Cases pursuant to Bankruptcy Code Section 1112, shall be senior to, or *pari passu* with, the 507(b) Claims of Citibank arising out of the Adequate Protection Payments.<br><br>(Interim Order, Sections 6, 7) |
| Modification of the Automatic Stay Bankruptcy Rule 4001(b)(1)(B)(iii); Local Bankruptcy Rule 4001-2(a)(10) | The Automatic Stay shall be modified to the extent necessary, if at all, to take all actions necessary to implement and effectuate the terms and conditions of the Order, including, without limitation, (a) to allow the Adequate Protection Payments to be made, and (b) to allow Citibank, upon the occurrence of a Termination Event and expiration of Remedies Notice Period, to terminate the Citibank Tanker Borrowers' use of Cash Collateral in accordance with the Order.<br><br>(Interim Order, Section 11) |
| Carve Out Bankruptcy Rule 4001(b)(1)(B)(iii); Local Bankruptcy Rules 4001-2(a)(5)and 4001-2(d) | For purposes of the Orders, the term "Carve-Out" shall mean:<br><br>(a) in connection with the Citibank Tanker Borrowers' Chapter 11 Cases prior to a Termination Event (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code for the Citibank Tanker Borrowers' Chapter 11 Cases, whether paid directly by the Citibank Tanker Borrowers or on their behalf, and (ii) professional fees and expenses of the Debtors that are incurred and appropriately and fairly allocated to the Citibank Tanker Borrowers' Chapter 11 Cases, and invoiced and payable under sections 330 and 331 of the Bankruptcy Code or otherwise, whether prior to or after a Termination Event, and whether paid directly by the Citibank Tanker Borrowers or on their behalf in an |

| | |
|---|---|
| | amount not to exceed $100,000 and |
| | (b) in connection with the Citibank Tanker Borrowers' Chapter 11 Cases after a Termination Event and without duplication of the amounts described in clause (a) above, an aggregate amount not to exceed $50,000 comprised of professional fees and expenses of the Debtors that are incurred and that are appropriately and fairly allocated to the Citibank Tanker Borrowers' Chapter 11 Cases; all of the foregoing whether paid directly by the Citibank Tanker Borrowers or on their behalf; provided, however, that the Debtors shall be permitted to pay the professional fees and expenses described in clause (a) and the amount of such fees and expenses (to the extent allowed by the Bankruptcy Court) paid under clause (a) shall not be reduced by the amount of any compensation and reimbursement of expenses incurred prior to the occurrence of a Termination Event whether paid prior to or after a Termination Event. In the event that the U.S. Trustee appoints a Committee in these Chapter 11 Cases, the Court will consider an appropriate carve-out for Committee expenses and professional fees.<br><br>(Interim Order, Section 7) |
| Preservation of Rights Bankruptcy Rule 4001(b)(1)(B)(iii); Local Bankruptcy Rule 4001-2(f) | The stipulations in Paragraph C of the Interim Order shall be binding upon the Debtors immediately on the entry of the Interim Order, except as set forth in the immediately following sentence:<br><br>Notwithstanding the foregoing, nothing in this Interim Order shall prejudice any rights of the Debtors to object to or challenge the Stipulations set forth in subparagraphs C(5) and (6) of the Interim Order or to bring suit against Citibank in connection with or related to the matters covered by subparagraphs C(5) and (6) of the Interim Order, provided, that unless the Debtors commence an adversary proceeding or contested matter (as applicable) raising such objection or challenge, or filing suit with respect to the claims or causes of action by the date that is thirty (30) days following the entry of the Interim Order, as such date may be extended by written agreement among the Debtors and Citibank without further order of the Court (the "Debtor Challenge Period," and the date that is the next business day after termination of the Debtor Challenge Period shall be referred to as the ("Debtor Challenge Period Termination Date")), upon the Debtor Challenge Period Termination Date, any and all such challenges and objections by the Debtors shall be deemed forever and irrevocably waived, relinquished and barred and the Stipulations set forth in subparagraphs C(5) and (6) shall be binding on the Debtors.   The Stipulations shall be binding on all other parties in interest, including a Committee (if one is appointed by the U.S. Trustee), unless (a) a party in interest (including the Committee) files an adversary proceeding or contested matter challenging or |

| | |
|---|---|
| | otherwise objecting to the Stipulations, including the amount, validity, enforceability, perfection or priority of the Citibank Tanker Obligations, the Citibank Tanker Facility Documents or the Citibank Tanker Prepetition Liens in respect thereof, on or before seventy-five (75) days after the entry of the Interim Order (the "Committee Investigation Period") or such later date as has been (i) agreed to, in writing, by Citibank in its sole discretion, or (ii) ordered by the Court for cause shown, and (b) the Court rules in favor of a plaintiff or movant in any such timely filed adversary proceeding or contested matter and such ruling becomes a final order.<br><br>(Interim Order, Section 9) |
| No Marshaling Local Bankruptcy Rule 4001(a)(9) | Citibank shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Citibank Tanker Prepetition Collateral.<br><br>(Interim Order, Section 14) |
| 506(c) Waiver Local Bankruptcy Rule 4001(a)(9) | No costs or expenses of administration, other than as agreed to in the Budget, which have been or may be incurred in any of the Chapter 11 Cases or any successor cases at any time shall be charged against Citibank, any of its claims, any Citibank Tanker Prepetition Obligations, Post-petition Liens, Citibank Tanker Borrower Prepetition Liens or Citibank Tanker Prepetition Collateral, including Cash Collateral, pursuant to sections 506(c) or 105(a) of the Bankruptcy Code, or otherwise, without the prior written consent of Citibank.   Nothing contained in the Interim Order shall be deemed a consent by Citibank to any charge, lien, assessment or claim against, or in respect of, the Citibank Tanker Prepetition Collateral, including Cash Collateral, under section 506(c) or 105(a) of the Bankruptcy Code, or otherwise.<br><br>(Interim Order, Section 15) |
| Issues Deferred to a Later Date | The Debtors and Citibank have agreed to defer issues regarding the following matters to a later date:<br><br>• Citibank's rights, claims, and interests in the proceeds of prepetition charter revenue of the Citibank Tanker Vessels held as of the Petition Date by the Debtors' non-debtor affiliate Marine Management Services M.C. ("MMS");<br><br>• The change in cash management that occurred prior to the Petition Date;<br><br>• The characterization of the funds, and any interests therein, held at MMS;<br><br>• Citibank's right to assert a claim or file a motion seeking |

<table>
<tr><td></td><td>

payment of any drydocking expenses incurred with respect to any Citibank Tanker Vessel;

- The characterization of the proceeds of any prepetition charter revenue held as of the Petition Date at MMS;

- Fees, costs, and expenses in respect of the Citibank Tanker Facility Documents;

- Fees, costs, and expenses in respect of any other lending facilities in which Citibank or its affiliates serve as lender or agent in respect of the Debtors;

- Any plan of reorganization or asset sale contemplated in these Chapter 11 Cases;

- The sufficiency of the adequate protection provided Citibank pursuant to the Orders;

- The value of Citibank's collateral, or the treatment of Citibank's claims under any plan of reorganization;

- Any party's rights to assert that the Adequate Protection Payments should be recharacterized as payments of principal under the Citibank Tanker Facility or to assert any claim or causes of action against Citibank with respect to the Citibank Tanker Prepetition Obligations not contemplated or otherwise covered by the Stipulations in Paragraph C of the Interim Order;  and

- Citibank's right to seek immediate payment of any unpaid Adequate Protection Obligations due and owing as of the occurrence of a Termination Event.

(Interim Order, *passim*)
</td></tr>
</table>

## BASIS FOR RELIEF

### A.    The Use of Cash Collateral Is Necessary

16.    Without access to the Cash Collateral, the Citibank Tanker Borrowers may have insufficient liquidity to continue to operate their vessels and pay restructuring costs associated with these Chapter 11 Cases. The Citibank Tanker Borrowers' access to the Cash Collateral therefore is necessary to ensure that the Citibank Tanker Borrowers

have sufficient working capital and liquidity and thus preserve and maintain the going concern value of their assets.

17.    The terms and conditions set forth in the Interim Order (and the Final Order), which were negotiated at arms-length and in good faith, (a) are fair and reasonable under the circumstances;  (b) reflect the Debtors' reasonable exercise of business judgment consistent with their fiduciary duties;  and (c) are supported by reasonably equivalent value and fair consideration. Accordingly, the relief is warranted under the circumstances.

## B.    Citibank's Interests are Adequately Protected

18.    The Interim Order (and Final Order) provides that Citibank will be adequately protected in connection with the Citibank Tanker Borrowers' use of Citibank's Cash Collateral.  What constitutes adequate protection is determined on a case-by-case basis.  Although the Bankruptcy Code does not define the term "adequate protection," it provides a non-exhaustive list of types of adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in such property.  *See* 11 U.S.C. § 361.  Specifically, section 361 of the Bankruptcy Code provides the following non-exclusive examples of what may constitute adequate protection:

> (1)    requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the . . . use . . . under section 363 . . . results in a decrease in the value of such entity's interest in such property.
>
> (2)    providing to such entity an additional or replacement lien to the extent that such . . . use . . . results in a decrease in the value of such entity's interest in such property;  or

(3)    granting such other relief . . . as will result in the realization by such
entity of the indubitable equivalent of such entity's interest in such
property.

*Id.*

19.    Essentially, the Bankruptcy Code intends "adequate protection" to shield a secured creditor from diminution in the value of its interest in the particular collateral during the period of use by the debtor. *In re Pine Lake Vill. Apartment Co.*, 19 B.R. 819, 825-26 (Bankr. S.D.N.Y. 1982) (noting that a secured creditor has the right to receive adequate protection for any decline in value of its collateral). The Debtors' requested use of Cash Collateral and the protections afforded Citibank, in light of the circumstances, are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of Citibank's prepetition collateral.

20.    Citibank's Cash Collateral will be used to fund, *inter alia*, the Citibank Tanker Voyage and Vessel Operating Expenses, Citibank Tanker Vessel Capital Expenditures, Citibank Tanker Vessel Drydocking Expenses, Citibank Tanker Vessel Drydocking Reserve Amounts (for both Citibank Tanker Vessels in the cumulative amount of $178,235 per month to December 2017, then $63,235 per month to December 2019 per month), and the Adequate Protection Payments as set forth in the rolling 4-week cash flow forecast of the Citibank Tanker Borrowers' cash receipts and expenditures, attached to the Interim Order as Exhibit 2 (as updated monthly pursuant to paragraph 4 of the Interim Order and as otherwise amended, extended, supplemented or otherwise modified in accordance therewith, the "Budget"). The Court's authorization of the use of Cash Collateral, therefore, will protect the Citibank's security interests by preserving the value of its collateral. *In re Cardinal Indus. Inc.*, 118

B.R. 971, 981 (Bankr. S.D. Ohio 1990) (ruling that secured lenders were adequately

protected by debtor's use of funds to maintain and manage encumbered properties).

21.     Courts recognize that the preservation of the going concern value of

secured lenders' collateral constitutes adequate protection of such creditors' interest in

the collateral. *See, e.g., In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr.

N.D.N.Y. 1992) (finding a secured creditor's interest in collateral adequately protected

when cash collateral was applied to normal operating and maintenance expenditures on

the collateral property); *In re Stein*, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditors'

secured position would be enhanced by the continued operation of the debtors'

business);  *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996)

(holding that if there is no actual diminution of value of collateral and the debtor can

operate profitably post-petition, then the secured creditor is adequately protected).

22.     In addition, the Citibank Tanker Borrowers will make the Adequate

Protection Payments to protect Citibank from diminution in the value of its collateral.

*See* 11 U.S.C. § 361(1) (periodic cash payments constitute adequate protection); *In re*

*Residential Capital, LLC*, 501 B.R. 549, 589 (Bankr. S.D.N.Y. 2013) (same).  The Adequate

Protection Payments will ensure that interest under the Citibank Tanker Facility and

any fees incurred by Citibank's professionals in connection with preservation of the

Citibank Tanker Prepetition Collateral are timely paid during the course of the Debtors'

Chapter 11 Cases.  These payments provide Citibank with additional adequate

protection.

23.     Further, the Bankruptcy Code expressly provides that granting a

replacement lien is a means of adequate protection.  11 U.S.C. § 361(2).  Granting

replacement liens provides adequate protection of secured creditors' interest in cash

collateral.  *See In re Island Helicopter Corp.*, 63 B.R. 515, 523 (Bankr. E.D.N.Y. 1986)

19

(holding that secured party was adequately protected when granted replacement liens on new helicopters and components).  Here, the Debtors will adequately protect the Citibank's interests in its prepetition collateral, including, to the extent applicable, Cash Collateral by, among other things, granting the Adequate Protection Liens.

24.     Citibank will also be granted allowed administrative expense claims having priority specified in section 507(b) of the Bankruptcy Code.  These claims provide Citibank additional adequate protection and are a standard, customary position in cash collateral agreements.

25.     Finally, the Debtors' assert that the existing equity cushion that exists with respect to Citibank's collateral provides Citibank with additional adequate protection. *See In re Elmira Litho, Inc.*, 174 B.R. 892, 904 (Bankr. S.D.N.Y. 1994) ("It is beyond cavil that an equity cushion can, under certain circumstances, serve as a form of adequate protection.").  To the extent Citibank is oversecured, Citibank is adequately protected by the equity cushion that exists with respect to its collateral.

26.     For the foregoing reasons, the Debtors' requested use of Citibank's Cash Collateral and the protections provided to Citibank are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection."

<u>**RELEASE OF THE UNITED JOURNEY**</u>

27.     In exchange for the adequate protection to be provided to Citibank, Citibank will cause the immediate release of the *United Journey* from arrest.  Not only will that enable the Debtors to put the *United Journey* back into service to generate revenue, but it will avoid additional expense arising from the arrest.

28.     As an initial matter, the *United Journey* is property of the Debtors' estates. Property of the bankruptcy estate is "comprised of all the following property, wherever located: all legal or equitable interests of the debtor in property as of the

commencement of the case." 11 U.S.C. § 541(a)(1); *U.S. v. Whiting Pools, Inc.*, 462 U.S.
198, 204 (1983). The scope of section 541(a)(1) is broad. *Whiting Pools*, 462 U.S. at 205
(citing H.R. Rep. No. 95-595, p. 367 (1977)).

29.    Moreover, as stated in this Court's Automatic Stay Order, and by
operation of law, the automatic stay enjoins all persons from, among other things,
taking any action to obtain possession of property of the estate or to attempt to exercise
control over property of the estate. 11 U.S.C. § 362(a).

30.    In that connection, the duty to turnover property of the estate in
compliance with section 362(a)(3) of the Bankruptcy Code is affirmative and arises
upon the filing of a bankruptcy petition. *In re Metromedia Fiber Network, Inc.*, 290 B.R.
487, 493 (Bankr. S.D.N.Y. 2003) ("The automatic stay most certainly is 'self executing' in
the sense that it must be complied with absent any action by the debtor or the court, at
the risk of sanctions for violation"); *see also In re Weber*, 719 F.3d 72, 77 (2d Cir. 2013)
(holding that creditor that lawfully repossessed chapter 13 debtor's vehicle prepetition
nevertheless violated the automatic stay by failing to surrender the vehicle upon
receiving notice of the debtor's bankruptcy filing); *Johnson v. Smith (In re Johnson)*, 501
F.3d 1163, 1171-74 (10th Cir. 2007); *In re Knaus*, 889 F.2d 773, 774–75 (8th Cir.1989);
*Mitchell v. BankIllinois*, 316 B.R. 891, 899 (S.D. Tex. 2004).

31.    As such, bankruptcy courts in maritime shipping cases have issued orders
directing those in possession of arrested vessels - including secured creditors of the
debtor - to be released.[5] *See, e.g., In re TMT Procurement Corp.*, Case No. 13-33763
(Bankr. S.D. Tex. Sep. 16, 2013) (Docket No. 459) (Ordering that debtor's secured
creditors "shall take all necessary steps to facilitate the release of the [debtors' vessel.]"

---

[5]    Copies of these Orders are not attached to the Motion, but can be made available upon request.

including but not limited to by filing appropriate pleadings in arrest proceedings); *In re Torch Offshore, Inc.*, Case No. 05-10137 (Bankr. E.D. La. Jan. 11, 2005) (Docket No. 42) (Ordering United States Marshals and any substitute custodian to immediately release debtor's arrested vessel). Accordingly, it is appropriate that any order providing Citibank with adequate protection also provide for the immediate release of the *United Journey* to the Debtors, and Citibank has agreed to do so pursuant to the Interim Order.

## MODIFICATION OF THE AUTOMATIC STAY

32.     Section 362 of the Bankruptcy Code provides for an automatic stay upon the filing of a bankruptcy petition. The Orders contemplate a modification of the automatic stay (to the extent applicable) to permit the Debtors to (i) grant the security interests, liens, and superpriority claims described above and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens and (ii) implement the terms of the Orders.

33.     Stay modification provisions of this kind are ordinary and standard features of post-petition debtor-in-possession cash collateral orders, and are, in the Debtors' business judgment, reasonable under the present circumstances. Accordingly, the Debtors respectfully request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Orders.

## WAIVER OF BANKRUPTCY RULE 6004(a) and (h)

34.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a), to the extent applicable, and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

22

## REQUEST FOR A FINAL HEARING

35.     Pursuant to Bankruptcy Rule 4001(b)(2), which requires that a final hearing on a motion to use cash collateral be commenced no earlier than 14 days after service of the motion, the Debtors request that the Court schedule the hearing to consider entry of the Final Order and establish the deadline for parties to file objections to the same.

## NOTICE

36.     Notice of this Motion and the Interim Order has been given to (a) the United States Trustee for the Southern District of New York;  (b) the Debtors' prepetition lenders and their counsel, if known;  (c) the parties listed in the consolidated list of thirty (30) largest unsecured creditors filed by the Debtors;  and (d) any other party entitled to notice pursuant to Local Bankruptcy Rule 9013-1(b) and which has filed a notice of appearance. The Debtors submit that no other or further notice need be provided in order for the Court to consider entry of the Interim Order on the return date of this Motion.

## NO PRIOR REQUEST

37.     No previous request for the relief sought herein has been made to this Court or any other court.

*[Concluded on the following page]*

23

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court grant the relief

requested in this Motion and such other and further relief as may be just and proper.

DATED:  New York, New York
February 15, 2017

TOGUT, SEGAL & SEGAL LLP,
*Proposed Counsel to the Debtors and Debtors in Possession*

By:


/s/ Frank A. Oswald
ALBERT TOGUT
FRANK A. OSWALD
BRIAN F. MOORE
One Penn Plaza, Suite 3335
New York, New York  10119
(212) 594-5000