UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :

In re:                             :     Chapter 11

                                 :

TOISA LIMITED, *et al.*,     :     Case No. 17-10184 (SCC)

                                 :

               Debtors.[1]     :     (Jointly Administered)

                                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## JOINT PLAN OF REORGANIZATION FOR
## TOISA LIMITED AND CERTAIN OF ITS AFFILIATES
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Albert Togut
Frank A. Oswald
Brian F. Moore
Kyle J. Ortiz
TOGUT SEGAL & SEGAL LLP
One Penn Plaza
New York, New York 10119
(212) 594-5000

    Counsel for the Debtors and Debtors-in-Possession

Dated: August 15, 2017
      New York, New York

---

[1]  The Debtors in these chapter 11 cases, are as follows: Trade Prosperity, Inc.; Toisa Limited; United Courage, Inc.; Trade Vision, Inc.; United Journey, Inc.; United Kalavryta, Inc.; Trade Sky, Inc.; Trade Industrial Development Corporation; United Honor, Inc.; Trade Will, Inc.; United Leadership Inc.; United Seas, Inc.; United Dynamic, Inc.; United Emblem, Inc.; United Ideal Inc.; Trade Unity, Inc.; Trade Quest, Inc.; Trade Spirit, Inc.; Trade Resource, Inc.; United Ambassador, Inc.; Edgewater Offshore Shipping, Ltd.; United Banner, Inc.; Toisa Horizon, Inc.; and Trade and Transport Inc.

# TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................................................1

ARTICLE I
DEFINED TERMS AND RULES OF INTERPRETATION.................................................1
1.1      Administrative Claim.................................................................................1
1.2      Administrative Claims Bar Date................................................................ 1
1.4      Affiliate ..................................................................................................... 1
1.5      Allowed ..................................................................................................... 1
1.6      Allowed Claim ...........................................................................................2
1.7      Amended and Restated BNP Credit Facility ............................................2
1.8      Amended and Restated Citi Offshore Credit Facility ...............................2
1.9      Amended and Restated Citi Tanker Credit Facility ..................................2
1.10     Amended and Restated Citizens I Credit Facility.....................................2
1.11     Amended and Restated Citizens II Credit Facility ...................................2
1.12     Amended and Restated Commerzbank I Credit Facility............................3
1.13     Amended and Restated Commerzbank II Credit Facility ..........................3
1.14     Amended and Restated Commonwealth Bank of Australia Credit Facility .............3
1.15     Amended and Restated Credit Agricole Offshore Credit Facility.............................3
1.16     Amended and Restated Credit Agricole Tanker Credit Facility..................................3
1.17     Amended and Restated Credit Facilities ...................................................4
1.18     Amended and Restated Danish Ship Bulker Credit Facility .....................4
1.19     Amended and Restated Danish Ship Offshore Credit Facility. .................4
1.20     Amended and Restated Danish Ship Tanker Credit Facility .....................4
1.21     Amended and Restated DNB Offshore Credit Facility .............................4
1.22     Amended and Restated DNB Tanker Credit Facility ................................4
1.23     Amended and Restated DVB Credit Facility. ...........................................4
1.24     Amended and Restated ING Bulker Credit Facility ..................................5
1.25     Amended and Restated ING Offshore Credit Facility  ..............................5
1.26     Amended and Restated NBG Credit Facility.............................................5
1.27     Amended and Restated Offshore Facilities................................................5
1.28     Amended and Restated Oceangoing Facilities...........................................5
1.29     Amended and Restated Wells Fargo Credit Facility .................................5
1.30     Avoidance Action ......................................................................................6
1.31     Ballot .........................................................................................................6
1.32     Bankruptcy Code .......................................................................................6
1.33     Bankruptcy Court ......................................................................................6
1.34     Bankruptcy Rules.......................................................................................6
1.35     Bar Date .....................................................................................................6
1.36     BNP Credit Facility Vessels ......................................................................6
1.37     Business Day..............................................................................................6
1.38     Cash............................................................................................................6
1.39     Cause of Action .........................................................................................7
1.40     Chapter 11 Case(s) ....................................................................................7
1.41     Citi Offshore Facility Vessels. ..................................................................7
1.42     Citi Tanker Facility Vessels ......................................................................7
1.43     Citizens I Credit Facility Vessel ...............................................................7
1.44     Citizens II Credit Facility Vessel ..............................................................7
1.45     Claim..........................................................................................................7
1.46     Claims Objection Deadline ........................................................................7

1.47      Class ...........................................................................................................................7
1.48      Commerzbank I Credit Facility Vessels.................................................................7
1.49      Commerzbank II Credit Facility Vessel.................................................................7
1.50      Commonwealth Bank of Australia Credit Facility Vessel ....................................7
1.51      Confirmation ..........................................................................................................7
1.52      Confirmation Date ..................................................................................................8
1.53      Confirmation Hearing.............................................................................................8
1.54      Confirmation Order.................................................................................................8
1.55      Credit Agricole Offshore Credit Facility Vessels .................................................8
1.56      Credit Agricole Tanker Credit Facility Vessel ......................................................8
1.57      D&O Liability Insurance Policies ..........................................................................8
1.58      Danish Ship Bulker Credit Facility Vessels..........................................................8
1.59      Danish Ship Offshore Credit Facility Vessels .......................................................8
1.60      Danish Ship Tanker Credit Facility Vessels ..........................................................8
1.61      Debtors ...................................................................................................................8
1.62      Disclosure Statement ..............................................................................................8
1.63      Disputed Claim .......................................................................................................8
1.64      Distribution Date. ...................................................................................................9
1.65      Distribution Record Date. .......................................................................................9
1.66      DNB Offshore Credit Facility Vessels...................................................................9
1.67      DNB Tanker Credit Facility Vessels......................................................................9
1.68      DVB Credit Facility Vessels ..................................................................................9
1.71      Effective Date..........................................................................................................9
1.72      Entity.......................................................................................................................9
1.73      Estate(s) ..................................................................................................................9
1.74      Excluded Assets . ....................................................................................................9
1.75      Exculpated Parties ..................................................................................................9
1.76      Executory Contract .................................................................................................9
1.77      Exhibit.....................................................................................................................9
1.78      Existing BNP Credit Facility..................................................................................9
1.79      Existing BNP Credit Facility Claims ...................................................................10
1.80      Existing Citi Offshore Credit Facility..................................................................10
1.81      Existing Citi Offshore Credit Facility Claims .....................................................10
1.82      Existing Citi Tanker Credit Facility.....................................................................10
1.83      Existing Citi Tanker Credit Facility Claims ........................................................10
1.84      Existing Citizens I Credit Facility........................................................................10
1.85      Existing Citizens I Credit Facility Claims............................................................10
1.86      Existing Citizens II Credit Facility.......................................................................10
1.87      Existing Citizens II Credit Facility Claims ..........................................................10
1.88      Existing Commerzbank I Credit Facility ..............................................................10
1.89      Existing Commerzbank I Credit Facility Claims ..................................................11
1.90      Existing Commerzbank II Credit Facility .............................................................11
1.91      Existing Commerzbank II Credit Facility Claims .................................................11
1.92      Existing Commonwealth Bank of Australia Credit Facility .................................11
1.93      Existing Commonwealth Bank of Australia Credit Facility Claims.....................11
1.94      Existing Credit Agricole Offshore Credit Facility................................................11
1.95      Existing Credit Agricole Offshore Credit Facility Claims....................................11
1.96      Existing Credit Agricole Tanker Credit Facility ..................................................11
1.97      Existing Credit Agricole Tanker Credit Facility Claims.......................................11
1.98      Existing Danish Ship Bulker Credit Facility........................................................12
1.99      Existing Danish Ship Bulker Credit Facility Claims ...........................................12
1.100     Existing Danish Ship Offshore Credit Facility.....................................................12
1.101     Existing Danish Ship Offshore Credit Facility Claims ........................................12

ii

1.102    Existing Danish Ship Tanker Credit Facility ...............................................................12
1.103    Existing Danish Ship Tanker Credit Facility Claims ..................................................12
1.104    Existing DNB Offshore Credit Facility ......................................................................12
1.105    Existing DNB Offshore Credit Facility Claims ..........................................................12
1.106    Existing DNB Tanker Credit Facility ..........................................................................12
1.107    Existing DNB Tanker Credit Facility Claims .............................................................13
1.108    Existing DVB Credit Facility ......................................................................................13
1.109    Existing DVB Credit Facility Claims ..........................................................................13
1.110    Existing ING Bulker Credit Facility. ..........................................................................13
1.111    Existing ING Bulker Credit Facility Claims ...............................................................13
1.112    Existing ING Offshore Credit Facility ........................................................................13
1.113    Existing ING Offshore Credit Facility Claims ...........................................................13
1.114    Existing NBG Credit Facility. .....................................................................................13
1.115    Existing NBG Credit Facility Claims ..........................................................................13
1.116    Existing Wells Fargo Credit Facility ...........................................................................13
1.117    Existing Wells Fargo Credit Facility Claims ..............................................................14
1.118    Existing Management Agreements ...............................................................................14
1.119    Final Order ...................................................................................................................14
1.120    G550 Airplane Credit Facility .....................................................................................14
1.122    General Unsecured Claim .............................................................................................14
1.123    Holder ...........................................................................................................................14
1.124    Impaired ........................................................................................................................14
1.125    ING Bulker Credit Facility Vessels .............................................................................14
1.126    ING Offshore Credit Facility Vessels .........................................................................14
1.127    Initial Distribution. ......................................................................................................14
1.128    Intercompany Claim .....................................................................................................14
1.129    Intercompany Interest ..................................................................................................14
1.130    Interest ..........................................................................................................................15
1.131    Lien. ..............................................................................................................................15
1.132    Management Companies ...............................................................................................15
1.133    NBG Credit Facility Vessel .........................................................................................15
1.134    Newbuild Auction .........................................................................................................15
1.135    Newbuild Tanker Construction Contracts. ..................................................................15
1.136    Newbuild Tanker Credit Facility. ................................................................................15
1.137    Newbuild Tanker Credit Facility Claims .....................................................................15
1.138    Newbuild Tanker Credit Facility Vessels ...................................................................15
1.139    Newbuild Tanker Purchase Agreement .......................................................................15
1.140    Newbuild Tanker Purchaser .........................................................................................15
1.141    Newbuild Tanker Sale and Bid Procedures .................................................................16
1.142    Newbuild Tanker Sale and Bid Procedures Order. .....................................................16
1.143    Newbuild Tanker Sale Proceeds ..................................................................................16
1.144    Newbuild Tanker Sale Transaction ..............................................................................16
1.145    Oceangoing Auction .....................................................................................................16
1.146    Oceangoing Equity Purchase Agreement ....................................................................16
1.147    Oceangoing Equity Purchaser ......................................................................................16
1.148    Oceangoing Equity Sale and Bid Procedures ..............................................................16
1.149    Oceangoing Equity Sale and Bid Procedures Order ...................................................16
1.150    Oceangoing Equity Sale Proceeds ...............................................................................16
1.151    Oceangoing Equity Sale Transaction ...........................................................................16
1.152    Oceangoing Minimum Working Capital ......................................................................17
1.153    Oceangoing Working Capital Contribution .................................................................17
1.154    Offshore Credit Facility Vessels .................................................................................17
1.155    Offshore Minimum Working Capital ...........................................................................17

1.156    Other Priority Claim ................................................................................17
1.157    Person ......................................................................................................17
1.158    Petition Date ...........................................................................................17
1.159    Plan ..........................................................................................................17
1.160    Plan Supplement .....................................................................................17
1.161    Prepetition Cash Reconciliation .............................................................17
1.162    Priority Tax Claim ..................................................................................18
1.163    Professional .............................................................................................18
1.164    Professional Compensation - Accrued ...................................................18
1.165    Professional Fee Claim ...........................................................................18
1.166    Professional Fee Escrow Account ..........................................................18
1.167    Professional Fee Reserve Amount ..........................................................18
1.168    Pro Rata ...................................................................................................18
1.169    Proof of Claim .........................................................................................18
1.170    Released Party .........................................................................................18
1.171    Releasing Parties .....................................................................................19
1.172    Reorganized Citi Tanker Debtors ...........................................................19
1.173    Reorganized Commerzbank I Debtors .....................................................19
1.174    Reorganized Commerzbank II Debtor .....................................................19
1.175    Reorganized Credit Agricole Tanker Debtor ..........................................19
1.176    Reorganized Danish Ship Bulker Debtors ...............................................19
1.177    Reorganized Danish Ship Tanker Debtors ...............................................19
1.178    Reorganized Debtors ...............................................................................19
1.179    Reorganized DNB Tanker Debtors ..........................................................19
1.180    Reorganized ING Bulker Debtors ............................................................20
1.181    Reorganized NBG Debtor ........................................................................20
1.182    Reorganized Oceangoing Vessel Debtors ...............................................20
1.183    Reorganized Toisa ...................................................................................20
1.184    Reorganized Trade and Transport ...........................................................20
1.185    Reorganized Trade and Transport Enterprise ..........................................20
1.186    Retained Actions .....................................................................................20
1.188    Schedules .................................................................................................20
1.189    Secured Claim ..........................................................................................20
1.190    Toisa ........................................................................................................20
1.191    Toisa Equity Contribution .......................................................................21
1.192    T&T ..........................................................................................................21
1.193    Unimpaired ..............................................................................................21
1.194    Wells Fargo Credit Facility Vessel .........................................................21

ARTICLE II
ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS ............................................22
2.1    Administrative Claims .............................................................................22
2.2    Priority Tax Claims .................................................................................22
2.3    Professional Fee Claims ..........................................................................22

ARTICLE III
CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........................23
3.1    Classification And Settlement ..................................................................23
3.2    Summary of Classification .......................................................................23
3.3    Treatment Of Classes ...............................................................................24
3.4    Enforcement of Subordination Agreements. ............................................34
3.5    Alternative Treatment ..............................................................................35
3.6    Special Provision Regarding Unimpaired Claims ....................................35

ARTICLE IV
ACCEPTANCE OR REJECTION OF THIS PLAN..................................................................35
    4.1       Acceptance By Class Entitled To Vote .................................................35
    4.2       Presumed Acceptance Of The Plan. ......................................................35
    4.3       Elimination Of Classes ........................................................................35
    4.4       Cramdown .............................................................................................35

ARTICLE V
MEANS FOR IMPLEMENTATION OF THIS PLAN .............................................................36
    5.1       Continued Legal Existence. ..................................................................36
    5.2       The Oceangoing Equity Sale ................................................................36
    5.3       The Newbuild Tanker Sale ...................................................................36
    5.4       Sources of Cash for Toisa Distributions and Operations. ....................36
    5.5       Sources of Cash for Reorganized Oceangoing
                  Debtors Distributions and Operations...................................................36
    5.6       Approval and Authorization for the Amended and Restated Credit Facilities. ......36
    5.7       New Boards of Reorganized Debtors.....................................................37
    5.8       Corporate Action...................................................................................37
    5.9       Effectuating Documents;  Further Transactions....................................37
    5.10     Preservation Of Retained Actions. .......................................................37
    5.11     Exemption From Certain Transfer Taxes And Recording Fees................37
    5.12     Further Authorization ...........................................................................38
    5.13     Cancellation Of Existing Securities And Agreements ..........................38

ARTICLE VI
PROVISIONS GOVERNING DISTRIBUTIONS......................................................................38
    6.1       Distribution Record Date ......................................................................38
    6.2       Allowed Claims.....................................................................................38
    6.3       Distributions For Claims Allowed As Of The Effective Date...................38
    6.4       Interest And Penalties On Claims. ........................................................39
    6.5       Delivery of Distributions.......................................................................39
    6.6       Manner of Payment Under Plan............................................................39
    6.7       Withholding and Reporting Requirements.............................................39
    6.8       Setoffs...................................................................................................39
    6.9       Payment of Disputed Claims..................................................................40

ARTICLE VII
PROCEDURES FOR DISPUTED CLAIMS.............................................................................40
    7.1       Allowance of Claims.............................................................................40
    7.2       Objections to Claims. ...........................................................................40
    7.3       Estimation of Claims. ...........................................................................40
    7.4       Establishment of Reserve Account. ......................................................41
    7.5       No Distributions Pending Allowance.....................................................41
    7.6       Resolution of Claims. ...........................................................................41
    7.7       Disallowed Claims. ...............................................................................41

ARTICLE VIII
TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES..............................41
    8.1       Rejection Of Executory Contracts And Unexpired Leases .....................41
    8.2       Assumption of Existing Management Executory Contracts. ..................42
    8.3       D&O Liability Insurance Policies ..........................................................42
    8.4       Indemnification .....................................................................................42
    8.5       Cure of Defaults Under Assumed Contracts .........................................42

ARTICLE IX
CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ......................................................43

9.1       Conditions Precedent to the Effective Date. ...............................................43
9.2       Waiver of Conditions Precedent.................................................................44
9.3       Effect of Failure of Conditions to Effective Date........................................44

ARTICLE X
EFFECT OF PLAN CONFIRMATION ........................................................................44
10.1      Binding Effect ...........................................................................................44
10.2      Revesting Of Assets ..................................................................................45
10.3      Compromise And Settlement Of Claims, Interests And Controversies ...................45
10.4      Releases And Related Matters.....................................................................45
10.5      Discharge. Of the Debtors...........................................................................47
10.6      Injunction .................................................................................................47
10.7      Exculpation And Limitation Of Liability .....................................................47
10.8      Term Of Bankruptcy Injunction Or Stays.....................................................48
10.9      Post-Confirmation Date Retention Of Professionals .....................................48

ARTICLE XI
RETENTION OF JURISDICTION ..............................................................................48
11.1      Retention of Jurisdiction. ...........................................................................48

ARTICLE XII
MISCELLANEOUS PROVISIONS .............................................................................50
12.1      Payment Of Statutory Fees ........................................................................50
12.2      Amendment Or Modification Of This Plan ..................................................50
12.3      Substantial Consummation. ........................................................................50
12.4      Severability Of Plan Provisions .................................................................50
12.5      Successors And Assigns .............................................................................51
12.6      Revocation, Withdrawal, Or Non-Consummation ........................................51
12.7      Dissolution of Creditors' Committee. .........................................................51
12.8      Governing Law..........................................................................................51
12.9      Time. ........................................................................................................51
12.10     Immediate Binding Effect. .........................................................................51
12.11     Entire Agreement.......................................................................................52
12.12     Notice........................................................................................................52
12.13     Exhibits ....................................................................................................52
12.14     Filing Of Additional Documents ................................................................52
12.15     Conflicts....................................................................................................53

## INTRODUCTION

Toisa Limited and certain of its affiliates, as debtors and debtors in possession, propose the following joint plan of reorganization for the resolution of the outstanding Claims against and Interests in the Debtors. Reference is made to the Disclosure Statement for a discussion of (i) the Debtors' history, business and operations, (ii) a summary and analysis of this Plan, and (iii) certain related matters, including risk factors relating to the consummation of this Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, and Bankruptcy Rule 3019 the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

*Defined Terms*.  As used herein, capitalized terms shall have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1    *Administrative Claim* means a Claim for costs and expenses of administration of the Chapter 11 Cases under sections 328, 330, 363, 364(c)(1), 365, 503(b), or 507(b) of the Bankruptcy Code, including, but not limited to: (a) any actual and necessary costs and expenses, incurred on or after the Petition Date and through the Effective Date, of preserving the Estates and operating the businesses of the Debtors (b) Professional Fee Claims; (c) all fees and charges assessed against the Estates under Chapter 123 of Title 28 of the United States Code; and (d) all other claims entitled to administrative claim status pursuant to an order of the Bankruptcy Court.

1.2    *Administrative Claims Bar Date* means the first Business Day that is 30 days following the Effective Date, except as otherwise specifically set forth in the Plan.

1.3    *Administrative Claims Objection Bar Date* means the first Business Day that is 120 days following the Effective Date, except as otherwise specifically set forth in the Plan; *provided that* the Administrative Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Reorganized Debtors after notice and a hearing.

1.4    *Affiliate* means, with respect to any Person, "affiliate" as defined in section 101(2) of the Bankruptcy Code as if such Person were a Debtor.

1.5    *Allowed* means, with respect to a Claim against any Debtor, except as otherwise provided herein, (a) a Claim that is (i) listed in the Schedules as of the Effective Date as neither disputed, contingent nor unliquidated, and for which no Proof of Claim has been timely filed, or (ii) evidenced by a valid Proof of Claim or request for payment of Administrative Claim, as applicable, filed by the applicable Bar Date, and as to which the Debtors or other parties-in-interest have not filed an objection to the

allowance thereof by the Claims Objection Deadline, or (b) a Claim that is Allowed under the Plan or any stipulation or settlement approved by, or Final Order of, the Bankruptcy Court; *provided, however*, that any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court will not be considered "Allowed Claims" under the Plan.  Notwithstanding the foregoing, a Claim shall not be Allowed and shall not be entitled to a distribution under the Plan to the extent it has been satisfied prior to the Effective Date.  If a Claim is Allowed only in part, references to Allowed Claims include and are limited to the Allowed portion of such Claim.  Notwithstanding anything to the contrary herein, no Claim that is disallowed in accordance with Bankruptcy Rule 3003 or section 502(d) of the Bankruptcy Code is Allowed and each such Claim shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

1.6    *Allowed Claim* means an Allowed Claim of the particular type or Class described.

1.7    *Amended and Restated BNP Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the outstanding principal amount under the Existing BNP Credit Facility, among the Reorganized Toisa as borrower, and the lender parties thereto as reflected in the amended and restated forms of the Existing BNP Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.8    *Amended and Restated Citi Offshore Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the outstanding principal amount under the Existing Citi Offshore Credit Facility, among Reorganized Toisa as borrower and the lender parties thereto as reflected in the amended and restated forms of the Existing Citi Offshore Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.9    *Amended and Restated Citi Tanker Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the outstanding principal amount under the Existing Citi Tanker Credit Facility, among the Reorganized Citi Tanker Debtors as borrower, Reorganized Trade and Transport as guarantor, and the lender parties thereto as reflected in the amended and restated forms of the Existing Citi Tanker Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.10    *Amended and Restated Citizens I Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the outstanding principal amount under the Existing Citizens I Credit Facility, among the Reorganized Toisa as borrower, and the lender parties thereto as reflected in the amended and restated forms of the Existing Citizens I Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.11    *Amended and Restated Citizens II Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the

outstanding principal amount under the Existing Citizens II Credit Facility, among the Reorganized Toisa as borrower, and the lender parties thereto as reflected in the amended and restated forms of the Existing Citizens II Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.12    *Amended and Restated Commerzbank I Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the outstanding principal amount under the Existing Commerzbank I Credit Facility, among the Reorganized Commerzbank I Debtors as borrower, Reorganized Trade and Transport as guarantor, and the lender parties thereto as reflected in the amended and restated forms of the Existing Commerzbank I Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.13    *Amended and Restated Commerzbank II Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the outstanding principal amount under the Existing Commerzbank II Credit Facility, among the Reorganized Commezbank II Debtors as borrower, Reorganized Trade and Transport as guarantor, and the lender parties thereto as reflected in the amended and restated forms of the Existing Commerzbank II Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.14    *Amended and Restated Commonwealth Bank of Australia Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the outstanding principal amount under the Existing Commonwealth Bank of Australia Credit Facility, among the Reorganized Toisa as borrower, and the lender parties thereto as reflected in the amended and restated forms of the Existing Commonwealth Bank of Australia Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.15    *Amended and Restated Credit Agricole Offshore Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the outstanding principal amount under the Existing Credit Agricole Offshore Credit Facility, among the Reorganized Toisa as borrower, and the lender parties thereto as reflected in the amended and restated forms of the Existing Credit Agricole Offshore Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.16    *Amended and Restated Credit Agricole Tanker Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the outstanding principal amount under the Existing Credit Agricole Tanker Credit Facility, among the Reorganized Credit Agricole Tanker Debtor as borrower, Reorganized Trade and Transport as guarantor, and the lender parties thereto as reflected in the amended and restated forms of the Existing Credit Agricole Tanker Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.17    *Amended and Restated Credit Facilities* means collectively the Amended and Restated Offshore Facilities and the Amended and Restated Offshore Facilitites.

1.18    *Amended and Restated Danish Ship Bulker Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the outstanding principal amount under the Existing Danish Ship Bulker Credit Facility, among the Reorganized Danish Ship Bulker Debtors as borrower, Reorganized Trade and Transport as guarantor, and the lender parties thereto as reflected in the amended and restated forms of the Existing Danish Ship Bulker Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.19    *Amended and Restated Danish Ship Offshore Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the outstanding principal amount under the Existing Danish Ship Offshore Credit Facility, among the Reorganized Toisa as borrower, and the lender parties thereto as reflected in the amended and restated forms of the Existing Danish Ship Offshore Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.20    *Amended and Restated Danish Ship Tanker Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the outstanding principal amount under the Existing Danish Ship Tanker Credit Facility, among the Reorganized Danish Ship Tanker Debtors as borrower, Reorganized Trade and Transport as guarantor, and the lender parties thereto as reflected in the amended and restated forms of the Existing Danish Ship Tanker Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.21    *Amended and Restated DNB Offshore Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the outstanding principal amount under the Existing DNB Offshore Credit Facility, among the Reorganized Toisa as borrower, and the lender parties thereto as reflected in the amended and restated forms of the Existing DNB Offshore Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.22    *Amended and Restated DNB Tanker Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the outstanding principal amount under the Existing DNB Tanker Credit Facility, among the Reorganized DNB Tanker Debtors as borrower, Reorganized Trade and Transport as guarantor, and the lender parties thereto as reflected in the amended and restated forms of the Existing DNB Tanker Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.23    *Amended and Restated DVB Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the outstanding principal amount under the Existing DVB Credit Facility, among the Reorganized Toisa as borrower, and the lender parties thereto as reflected in the amended and restated

forms of the Existing DVB Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.24    *Amended and Restated ING Bulker Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the outstanding principal amount under the Existing ING Bulker Credit Facility, among the Reorganized ING Bulker Debtors as borrower, Reorganized Trade and Transport as guarantor, and the lender parties thereto as reflected in the amended and restated forms of the Existing ING Bulker Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.25    *Amended and Restated ING Offshore Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the outstanding principal amount under the Existing ING Offshore Credit Facility, among the Reorganized Toisa as borrower, and the lender parties thereto as reflected in the amended and restated forms of the Existing ING Offshore Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.26    *Amended and Restated NBG Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the outstanding principal amount under the Existing NBG Credit Facility, among the Reorganized NBG Debtor as borrower, Reorganized Trade and Transport as guarantor, and the lender parties thereto as reflected in the amended and restated forms of the Existing NBG Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.27    *Amended and Restated Offshore Facilities* means collectively the Amended and Restated BNP Credit Facility, the Amended and Restated Citi Offshore Credit Facility, the Amended and Restated Citizens I Credit Facility, the Amended and Restated Citizens II Credit Facility, the Amended and Restated Commonwealth Bank of Australia Credit Facility, the Amended and Restated Credit Agricole Offshore Credit Facility, the Amended and Restated Danish Ship Offshore Credit Facility, the Amended and Restated DNB Offshore Credit Facility, the Amended and Restated DVB Credit Facility, the Amended and Restated ING Offshore Credit Facility, and the Amended and Restated Wells Fargo Credit Facility.

1.28    *Amended and Restated Oceangoing Facilities* means collectively the Amended and Restated Citi Tanker Credit Facility, the Amended and Restated Commerzbank I Credit Facility, the Amended and Restated Commerzbank II Credit Facility, the Amended and Restated Credit Agricole Tanker Credit Facility, the Amended and Restated Danish Ship Bulker Credit Facility, the Amended and Restated Danish Ship Tanker Credit Facility, the Amended and Restated DNB Tanker Credit Facility, the Amended and Restated ING Bulker Credit Facility, and the Amended and Restated NBG Credit Facility.

1.29    *Amended and Restated Wells Fargo Credit Facility* means that certain amended and restated financing facility, in a principal amount equal to the outstanding principal amount under the Existing Wells Fargo Credit Facility, among the

Reorganized Toisa as borrower, and the lender parties thereto as reflected in the amended and restated forms of the Existing Wells Fargo Credit Facility Documents, which shall be filed as part of the Plan Supplement and entered into on the Effective Date.

1.30    ***Avoidance Action*** means any claim or Cause of Action of an Estate arising out of or maintainable pursuant to sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code or under any other similar applicable non-bankruptcy law, regardless of whether or not such action has been commenced prior to the Effective Date.

1.31    ***Ballot*** means each of the ballot forms distributed to each Holder of a Claim that is entitled to vote to accept or reject this Plan and on which the Holder is to indicate, among other things, acceptance or rejection of this Plan.

1.32    ***Bankruptcy Code*** means Title 11 of the United States Code, as now in effect or hereafter amended, to the extent such amendments apply to the Chapter 11 Cases.

1.33    ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York, or any other court with jurisdiction over the Chapter 11 Cases.

1.34    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

1.35    ***Bar Date*** means (i) August 8, 2017 at 5:00 p.m. (Eastern Time), the date by which each Holder of a Claim against any of the Debtors, unless such Claim falls within one of the exceptions, must have filed a Proof of Claim against such Debtor(s); (ii) the later of (a) the General Bar Date and (b) 5:00 p.m. (prevailing Eastern time) on the date that is 60 days after entry of a Court order pursuant to which executory contracts or unexpired leases are rejected  for claims arising from such rejected agreements; (iii) the later of (a) the General Bar Date and (b) 5:00 p.m. (prevailing Eastern time) on the date that is 60 days after the date that notice of any applicable amendment or supplement to the Schedules is served on a claimant for those claims affected by any such amendment or supplement to the Schedules; and July 28, 2017 at 5:00 p.m. (prevailing Eastern time) for governmental units.

1.36    ***BNP Credit Facility Vessels*** means collectively the vessels *Toisa Pegasus* and *Toisa Paladin*.

1.37    ***Business Day*** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.38    ***Cash*** means legal tender of the United States of America and equivalents thereof.

1.39    ***Cause of Action*** means any action, proceeding, agreement, Claim, cause of action, controversy, demand, debt, right, action, Avoidance Action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, recoupment, crossclaim, counterclaim, third-party claim, indemnity claim, contribution claim or any other claim known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether pending in litigation or otherwise, in contract or in tort, in law or in equity or pursuant to any other theory of law, based in whole or in part upon any act or omission or other event occurring prior to the Effective Date.

1.40    ***Chapter 11 Case(s)*** means (a) when used with reference to a particular Debtor, the case under Chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court and (b) when used with reference to all Debtors, the cases under Chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court.

1.41    ***Citi Offshore Facility Vessels*** means collectively the vessels *Toisa Envoy*, *Toisa Explorer*, *Toisa Elan*, and *Toisa Wave*.

1.42    ***Citi Tanker Facility Vessels*** means collectively the vessels *United Journey* and *United Seas*.

1.43    ***Citizens I Credit Facility Vessel*** means the vessel *Toisa Independent*.

1.44    ***Citizens II Credit Facility Vessel*** means the vessel *Toisa Coral*.

1.45    ***Claim*** means a "claim" as defined in section 101(5) of the Bankruptcy Code.

1.46    ***Claims Objection Deadline*** means (i) ninety (90) days following the Effective Date or (ii) such other later date that the Bankruptcy Court may establish upon a motion by the Debtors or Reorganized Debtors, which motion may be approved without a hearing and without notice to any party.

1.47    ***Class*** means a category of Claims or Interests, as described in Article III hereof.

1.48    ***Commerzbank I Credit Facility Vessels*** means collectively the vessels named *United Banner, United Carrier*, and *United Ambassador*

1.49    ***Commerzbank II Credit Facility Vessel*** means the vessel named *United Honor*.

1.50    ***Commonwealth Bank of Australia Credit Facility Vessel*** means the vessels named *Toisa Solitare* and *Toisa Warrior*.

1.51    ***Confirmation*** means the confirmation of this Plan by the Bankruptcy Court under section 1129 of the Bankruptcy Code.

1.52    ***Confirmation Date*** means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.53    ***Confirmation Hearing*** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

1.54    ***Confirmation Order*** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.55    ***Credit Agricole Offshore Credit Facility Vessels*** means collectively the vessels *Toisa Valiant*, *Toisa Vigilant*, and *Toisa Voyager*.

1.56    ***Credit Agricole Tanker Credit Facility Vessel*** means the vessel *United Grace*.

1.57    ***D&O Liability Insurance Policies*** means all insurance policies for directors' and officers' liability maintained by the Debtors, including any directors' and officers' "tail policy."

1.58    ***Danish Ship Bulker Credit Facility Vessels*** means collectively the vessels *Trade Vision* and *Trade Will*.

1.59    ***Danish Ship Offshore Credit Facility Vessels*** means collectively the vessels *Toisa Defiant*, *Toisa Daring*, *United Leadership*, and *Toisa Dauntless*.

1.60    ***Danish Ship Tanker Credit Facility Vessels*** means collectively the vessels *United Leadership* and *United Kalavryta*.

1.61    ***Debtors*** means Trade Prosperity, Inc.; Toisa Limited; United Courage, Inc.; Trade Vision, Inc.; United Journey, Inc.; United Kalavryta, Inc.; Trade Sky, Inc.; Trade Industrial Development Corporation; United Honor, Inc.; Trade Will, Inc.; United Leadership Inc.; United Seas, Inc.; United Dynamic, Inc.; United Emblem, Inc.; United Ideal Inc.; Trade Unity, Inc.; Trade Quest, Inc.; Trade Spirit, Inc.; Trade Resource, Inc.; United Ambassador, Inc.; Edgewater Offshore Shipping, Ltd.; United Banner, Inc.; Toisa Horizon, Inc.; and Trade and Transport Inc.

1.62    ***Disclosure Statement*** means the disclosure statement (including all exhibits and schedules thereto) relating to this Plan, as amended, modified or supplemented from time to time, and distributed contemporaneously herewith.

1.63    ***Disputed Claim*** means (a) any Claim as to which the Debtors have interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtors, the Reorganized Debtors, or other party in interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order, (b) any Claim scheduled by the Debtors as contingent, unliquidated, or disputed, (c) any Claim which amends a claim scheduled by the Debtors as contingent, unliquidated, or disputed, or (d) any Claim prior to it having become an Allowed Claim.

1.64    *Distribution Date* means a date or dates, including the Initial Distribution Date as determined by the Disbursing Agent in accordance with the terms of the Plan, on which the Disbursing Agent Makes a distribution to holders of Allowed Claims.

1.65    *Distribution Record Date* means October 30, 2017.

1.66    *DNB Offshore Credit Facility Vessels* means collectively the vessels *Toisa Proteus*, *Toisa Intrepid*, and *Toisa Conqueror*.

1.67    *DNB Tanker Credit Facility Vessels* means collectively the vessels *United Emblem*, *United Dynamic*, *Toisa Invincible*, and *United Ideal*.

1.68    *DVB Credit Facility Vessels* means collectively the vessels *Toisa Pisces* and *Toisa Perseus*.

1.71    *Effective Date* means the Business Day this Plan becomes effective as provided in Article IX hereof.

1.72    *Entity* means "entity" as defined in section 101(15) of the Bankruptcy Code.

1.73    *Estate(s)* means, individually, the estate of any of the Debtors and, collectively, the estates of all of the Debtors created under section 541 of the Bankruptcy Code.

1.74    *Excluded Assets* shall have the meaning ascribed to it in the Purchase Agreement.

1.75    *Exculpated Parties* means collectively:  (a) the Debtors;  (b) the Newbuild Tanker Purchaser;  (c) the Oceangoing Equity Purchaser;  and (d) with respect to each of the foregoing entities such entities' predecessors, successors, and assigns, subsidiaries, Affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executor, Estates, servants and nominees, in each case in their capacity as such.

1.76    *Executory Contract* means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.77    *Exhibit* means an exhibit annexed to either this Plan, the Plan Supplement, or as an appendix to the Disclosure Statement, as amended, modified or supplemented from time to time.

1.78    *Existing BNP Credit Facility* means that certain senior secured credit facility, dated as of March 11, 2008, utilized to finance the BNP Credit Facility Vessels, which has a term of twelve (12) years from the drawdown date and has a rate

of Libor + 150 bps.  The unpaid principal balance of the BNP Credit Facility as of the Petition Date was approximately $78,869,046.

1.79    ***Existing BNP Credit Facility Claims*** means all Claims outstanding under the Existing BNP Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.80    ***Existing Citi Offshore Credit Facility*** means that certain senior secured credit facility, dated as of December 30, 2009, utilized to finance the Citi Offshore Facility Vessels, which has a term of ten (10) years with a rate of Libor + 3%. The unpaid principal balance on the Citi Offshore Credit Facility as of the Petition Date was approximately $99,493,000.

1.81    ***Existing Citi Offshore Credit Facility Claims*** means all Claims outstanding under the Existing Citi Offshore Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.82    ***Existing Citi Tanker Credit Facility*** means that certain senior secured credit facility, dated as of January 26, 2015, utilized to finance the Citi Tanker Facility Vessels, which has a term of five (5) years and a rate of Libor +2%.  The unpaid principal balance of the Citi Tanker Credit Facility as of the Petition Date was $46,094,548.

1.83    ***Existing Citi Tanker Credit Facility Claims*** means all Claims outstanding under the Existing Citi Tanker Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.84    ***Existing Citizens I Credit Facility*** means that certain senior secured credit facility, dated as of July 28, 2010, utilized to finance the Citizens I Credit Facility Vessel, which has a term of seven (7) years and rate of Libor + 2.5%.  The unpaid principal balance on the Citizens I Credit Facility as of the Petition Date was approximately $12,260,000.

1.85    ***Existing Citizens I Credit Facility Claims*** means all Claims outstanding under the Existing Citizens I Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.86    ***Existing Citizens II Credit Facility*** means that certain senior secured credit facility, dated as of July 28, 2010, utilized to finance the Citizens Credit II Facility Vessel, which has a term of seven (7) years and rate of Libor + 2.5%.  The unpaid principal balance on the Citizens II Credit Facility as of the Petition Date was approximately $6,535,258.

1.87    ***Existing Citizens II Credit Facility Claims*** means all Claims outstanding under the Existing Citizens II Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.88    ***Existing Commerzbank I Credit Facility*** means that certain senior secured credit facility, dated as of June 13, 2007, utilized to finance the Commerzbank I

Credit Facility Vessels, which has a term of ten (10) years and a rate of Libor + 1%. The unpaid principal balance on the Commerzbank I Credit Facility as of the Petition Date was $53,237,261.

1.89    *Existing Commerzbank I Credit Facility Claims* means all Claims outstanding under the Existing Commerzbank I Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.90    *Existing Commerzbank II Credit Facility* means that certain senior secured credit facility, dated as of March 3, 2010, utilized to finance the Commerzbank II Credit Facility Vessel, which has a term of ten (10) years and a rate of Libor + 2.5%. The unpaid principal balance on the Commerzbank II Credit Facility as of the Petition Date was $25,609,035.

1.91    *Existing Commerzbank II Credit Facility Claims* means all Claims outstanding under the Existing Commerzbank II Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.92    *Existing Commonwealth Bank of Australia Credit Facility* means that certain senior secured credit facility, dated as of February 21, 2014, utilized to finance the Commonwealth Bank of Australia Credit Facility Vessel, which has term of seven (7) years and rate of Libor + 2.35%. The unpaid principal balance of the Commonwealth Bank of Australia Credit Facility as of the Petition Date was approximately $22,750,000.

1.93    *Existing Commonwealth Bank of Australia Credit Facility Claims* means all Claims outstanding under the Existing Commonwealth Bank of Australia Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.94    *Existing Credit Agricole Offshore Credit Facility* means that certain senior secured credit facility, dated as of September 21, 2007, utilized to finance the Credit Agricole Offshore Credit Facility Vessels, which has a term of twelve (12) years from the drawdown date and a rate of Libor + 0.65 %. The unpaid principal balance on the Credit Agricole Offshore Credit Facility as of the Petition Date was approximately $47,400,000.

1.95    *Existing Credit Agricole Offshore Credit Facility Claims* means all Claims outstanding under the Existing Credit Agricole Offshore Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.96    *Existing Credit Agricole Tanker Credit Facility* means that certain senior secured credit facility, dated as of November 7, 2008, utilized to finance the purchase of the Credit Agricole Tanker Credit Facility Vessel, which has a term of twelve (12) years and a rate of Libor + 1.0%. The unpaid principal balance on the Credit Agricole Tanker Credit Facility as of the Petition Date was approximately $25,976,000.

1.97    *Existing Credit Agricole Tanker Credit Facility Claims* means all Claims outstanding under the Existing Credit Agricole Tanker Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.98    ***Existing Danish Ship Bulker Credit Facility*** means that certain senior secured credit facility, dated as of March 22, 2013, utilized to finance the purchase of the Danish Ship Finance Bulker Credit Facility Vessels, which has a term four (4) years and nine (9) months and a rate of Libor + 2.95%. The unpaid principal balance on the Danish Ship Bulker Credit Facility as of the Petition Date was approximately $22,000,000.

1.99    ***Existing Danish Ship Bulker Credit Facility Claims*** means all Claims outstanding under the Existing Danish Ship Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.100   ***Existing Danish Ship Offshore Credit Facility*** means that certain senior secured credit facility, dated as of November 11, 2014, utilized to finance the Danish Ship Finance Offshore Credit Facility Vessels, which has a term of seven (7) years and a rate of Libor + 1.90%. In addition, the vessel named United Leadership was added as additional collateral on April 28, 2016. The unpaid principal balance on the Danish Ship Offshore Credit Facility as of the Petition Date was approximately $64,643,000.

1.101   ***Existing Danish Ship Offshore Credit Facility Claims*** means all Claims outstanding under the Existing Danish Ship Offshore Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.102   ***Existing Danish Ship Tanker Credit Facility*** means that certain senior secured credit facility, dated as of February 28, 2014, utilized to finance the purchase of the Danish Ship Tanker Credit Facility Vessels, which has a term of seven 7 years with a rate of Libor + 1.8%. The unpaid principal balance on the Danish Ship Tanker Credit Facility as of the Petition Date was $35,285,720.

1.103   ***Existing Danish Ship Tanker Credit Facility Claims*** means all Claims outstanding under the Existing Danish Ship Tanker Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.104   ***Existing DNB Offshore Credit Facility*** means that certain senior secured credit facility, dated as of December 16, 2014, utilized to finance the purchase of the DNB Offshore Credit Facility Vessels, which has a term of five (5) years and a rate of Libor + 2.25 %. The unpaid principal balance on the DNB Offshore Credit Facility as of the Petition Date was approximately $58,411,354.

1.105   ***Existing DNB Offshore Credit Facility Claims*** means all Claims outstanding under the Existing DNB Offshore Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.106   ***Existing DNB Tanker Credit Facility*** means that certain senior secured credit facility, dated as of September 20, 2010, utilized to finance the DNB Tanker Credit Facility Vessels, which has a term of ten (10) years and a rate of Libor + 0.650% - 0.90% depending on the interest coverage ratio. The unpaid principal balance on the DNB Tanker Credit Facility as of the Petition Date was $110,703,990.

1.107    ***Existing DNB Tanker Credit Facility Claims*** means all Claims outstanding under the Existing DNB Tanker Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.108    ***Existing DVB Credit Facility*** means that certain senior secured credit facility, dated as of December 19, 2014, utilized to partially finance DVB Credit Facility Vessels, which has a term of five (5) years and a rate of Libor + 2.15 %.  The unpaid principal balance on the DVB Credit Facility as of the Petition Date was approximately $73,978,000.

1.109    ***Existing DVB Credit Facility Claims*** means all Claims outstanding under the Existing DVB Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.110    ***Existing ING Bulker Credit Facility*** means that certain senior secured credit facility, dated as of May 7, 2015, utilized to finance the ING Bulker Credit Facility Vessels, which has a term of seven (7) years and a rate of Libor + 1.9%.  The unpaid principal balance on the ING Bulker Credit Facility as of the Petition Date was $72,265,104.

1.111    ***Existing ING Bulker Credit Facility Claims*** means all Claims outstanding under the Existing ING Bulker Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.112    ***Existing ING Offshore Credit Facility*** means that certain senior secured credit facility, dated as of February 21, 2014, utilized to finance the purchase of the ING Offshore Credit Facility Vessels, which has a seven (7) year term and a rate of Libor + 2.35%.  The unpaid principal balance on the ING Offshore Credit Facility as of the Petition Date was approximately $42,316,000.

1.113    ***Existing ING Offshore Credit Facility Claims*** means all Claims outstanding under the Existing ING Offshore Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.114    ***Existing NBG Credit Facility*** means that certain senior secured credit facility, dated as of November 13, 2008, utilized to finance the purchase of the NBG Credit Facility Vessel, which has a term of ten (10) years and a rate of Libor + 1%.  The unpaid principal balance on the NBG Credit Facility as of the Petition Date was approximately $29,925,000.

1.115    ***Existing NBG Credit Facility Claims*** means all Claims outstanding under the Existing NBG Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.116    ***Existing Wells Fargo Credit Facility*** means that certain senior secured credit facility, dated as of July 28, 2010, utilized to finance the purchase of the Wells Fargo Credit Facility Vessel, which has a term of seven (7) years from the drawdown date and a rate of Libor + 2.5%.  The unpaid principal balance on the Wells Fargo Credit Facility as of the Petition Date was approximately $6,756,000.

1.117   *Existing Wells Fargo Credit Facility Claims* means all Claims outstanding under the Existing Wells Fargo Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.118   *Existing Management Agreements* means the Management Agreements entered into by the Management Companies and Certain Debtors, a list of which will be provided in the Plan Supplement.

1.119   *Final Order* means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing has expired and no appeal, petition for certiorari, or request for reargument or further review or rehearing has been timely filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for reargument or further review or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari or request for reargument or further review or rehearing has been or can be taken for granted.

1.120   *G550 Airplane Credit Facility* means that certain senior secured credit facility, dated as of June 16, 2015, utilized to finance the acquisition the G550 Airplane.  The G550 Airplane Credit Facility has a term of eight (8) years and a rate of Libor + 1.95%.  The unpaid principal balance on the G550 Airplane Credit Facility was approximately $16,961,476 as of August 11, 2017.

1.122   *General Unsecured Claim* means any Claim against any Debtor other than an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, an Secured Claim, , or an Intercompany Claim.

1.123   *Holder* means a holder of a Claim or Interest, as applicable.

1.124   *Impaired* means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.125   *ING Bulker Credit Facility Vessels* means collectively the vessels *Trade Quest*, *Trade Spirit*, *Trade Unity*, *Trade Prosperity*, and *Trade Resource*.

1.126   *ING Offshore Credit Facility Vessels* means collectively the vessels *Toisa Serenade, Toisa Warrior,* and *Toisa Sonata*.

1.127   *Initial Distribution* means the first distribution that either the Debtors or the Reorganized Debtors, as applicable, makes to holders of Allowed Claims.

1.128   *Intercompany Claim* means any and all Claims of a Debtor against another Debtor or non-Debtor affiliate.

1.129   *Intercompany Interest* means an Interest in a Debtor held by another Debtor.

1.130   *Interest* means any equity security, including a limited liability company membership interest, in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized or outstanding shares of capital stock of the Debtors, together with any warrants, options or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

1.131   *Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.132   *Management Companies* means collectively Sealion Shipping, Ltd., Marine Management Services M.C., and Marine Management Bulk Services Inc.

1.133   *NBG Credit Facility Vessel* means the vessel *United Fortitude*.

1.134   *Newbuild Auction* means the auction for the sale of the NewBuild Tanker Credit Facility and the Newbuild Tanker Contracts to be held in accordance with the Newbuild Tanker Sale and Bid Procedures.

1.135   *Newbuild Tanker Construction Contracts* means the contracts for the construction of the Newbuild Tanker Credit Facility Vessels with China Shipping Industry Co., Ltd. and China Shipping Industry (Jiangsu) Co., Ltd. to be listed in the Plan Supplement.

1.136   *Newbuild Tanker Credit Facility* means that certain senior secured credit facility, dated as of June 14, 2016, utilized to finance the construction of the Newbuilding Tanker Credit Facility Vessels, which has a term of seven (7) years post-delivery or up to 9.5 years from signing, and a rate of Libor + 1.95% for the Citi tranche and 4.35% fixed for the Cexim tranche.  The unpaid principal balance on the Newbuilding Tanker Facility is approximately $24,034,500.

1.137   *Newbuild Tanker Credit Facility Claims* means means all Claims outstanding under the Newbuild Tanker Credit Facility, whether such Claims are secured or undersecured as of the Petition Date.

1.138   *Newbuild Tanker Credit Facility Vessels* means six (6) vessels: three (3) Aframax tankers and (3) Suezmax tankers currently being built by China Shipping.

1.139   *Newbuild Tanker Purchase Agreement* means one or more asset purchase agreements, in form and substance reasonably acceptable to the Debtors, by and between Toisa, as seller, and the Purchaser, as buyer, which provides for the sale of the NewBuild Tanker Credit Facility and the Newbuild Tanker Contracts, or such other asset purchase agreement submitted at or prior to the Newbuild Auction and determined by the Debtors pursuant to the Newbuild Tanker Sale and Bid Procedures to reflect the highest or otherwise best offer for such assets.

1.140   *Newbuild Tanker Purchaser* means one or more purchasers under a Newbuild Tanker Purchaser Agreement.

1.141  *Newbuild Tanker Sale and Bid Procedures* means the sale, bid, and Newbuild Auction procedures set forth and described in the Newbuild Tanker Sale and Bid Procedures Order.

1.142  *Newbuild Tanker Sale and Bid Procedures Order* means an order of the Bankruptcy Court that among other things establishes procedures for the Newbuild Auction and a date for the Confirmation Hearing, including the hearing on the Newbuild Tanker Sale Transaction.

1.143  *Newbuild Tanker Sale Proceeds* means all proceeds for the Newbuild Tanker Sale Transaction.

1.144  *Newbuild Tanker Sale Transaction* means the sale of the Newbuild Tanker Credit Facility and the Newbuild Tanker Contracts pursuant to the Plan and the Newbuild Tanker Purchase Agreement.

1.145  *Oceangoing Auction* means the auction for the sale of Toisa's equity interests in Debtors Trade and Transport, Inc., United Dynamic, Inc., United Emblem, Inc., and United Ideal, Inc., to be held in accordance with the Oceangoing Equity Sale and Bid Procedures.

1.146  *Oceangoing Equity Purchase Agreement* means one or more asset purchase agreements, in form and substance reasonably acceptable to the Debtors, by and among Toisa, as seller, and the Oceangoing Equity Purchaser, as buyer, which provides for the sale of Toisa's equity interests in Debtors Trade and Transport, Inc., United Dynamic, Inc., United Emblem, Inc., and United Ideal, Inc., or such other asset purchase agreement submitted at or prior to the Oceangoing Equity Auction and determined by the Debtors pursuant to the Oceangoing Equity Sale and Bid Procedures to reflect the highest or otherwise best offer for such assets.

1.147  *Oceangoing Equity Purchaser* means one or more purchasers under an Oceangoing Equity Purchaser Agreement.

1.148  *Oceangoing Equity Sale and Bid Procedures* means the sale, bid, and Oceangoing Auction procedures set forth and described in the Oceangoing Sale and Bid Procedures Order.

1.149  *Oceangoing Equity Sale and Bid Procedures Order* means an order of the Bankruptcy Court that among other things establishes procedures for the Oceangoing Auction and a date for the Confirmation Hearing, including the hearing on the Oceangoing Equity Sale Transaction.

1.150  *Oceangoing Equity Sale Proceeds* means all proceeds for the Oceangoing Equity Sale Transaction.

1.151  *Oceangoing Equity Sale Transaction* means the sale of Toisa's equity interests in Debtors Trade and Transport, Inc., United Dynamic, Inc., United Emblem, Inc., and United Ideal, Inc. pursuant to the Plan and the Oceangoing Equity Purchase Agreement.

1.152 ***Oceangoing Minimum Working Capital*** means a minimum operating Cash level of $1,000,000 per vessel.

1.153 ***Oceangoing Working Capital Contribution*** means the requirement that any Oceangoing Equity Purchaser capitalize Reorganized Trade and Transport with $12 million to be contributed to the Reorganized Oceangoing Debtors as working capital.

1.154 ***Offshore Credit Facility Vessels*** means collectively BNP Credit Facility Vessels, Citi Offshore Facility Vessels, Citizens I Credit Facility Vessel, Citizens II Credit Facility Vessel, Commonwealth Bank of Australia Credit Facility Vessel, Credit Agricole Offshore Credit Facility Vessels, Danish Ship Offshore Credit Facility Vessels, DNB Offshore Credit Facility Vessels, DVB Credit Facility Vessels, ING Offshore Credit Facility Vessels, and Wells Fargo Credit Facility Vessel.

1.155 ***Offshore Minimum Working Capital*** means a minimum operating Cash level of an amount to be determined per vessel before any cash flow sweep will take place for any Amended and Restated Offshore Facility.

1.156 ***Other Priority Claim*** means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or Priority Tax Claim.

1.157 ***Person*** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, or other entity.

1.158 ***Petition Date*** means January 29, 2017.

1.159 ***Plan*** means this Chapter 11 plan of reorganization, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be altered, amended, supplemented, or modified from time to time.

1.160 ***Plan Supplement*** means the compilation of documents and forms of documents, schedules and exhibits to the Plan to be filed by the Debtors, in a form mutually acceptable to the Debtors and the parties affected by the particular document, containing, among other things, the Oceangoing Equity Purchase Agreement, the Newbuild Tanker Purchase Agreement, the Amended and Restated Credit Facilities, and information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code, *provided that*, through that Effective Date, the Debtors shall have the right to amend any schedules, exhibits or amendments to the Oceangoing Equity Purchase Agreement, the Newbuild Tanker Purchase Agreement, the Amended and Restated Credit Facilities, and the other documents contained in, and exhibits to, the Plan Supplement. The Plan Supplement shall be filed no later than ten (10) days prior to the deadline set to object to the Plan.

1.161 ***Prepetition Cash Reconciliation*** means the full and complete accounting and reconciliation to be delivered to the secured vessel lenders, in writing,

17

of all cash receipts, disbursements and transfers of their cash collateral (including updated cash balances in any deposit accounts) with respect to the Debtors and the Management Companies from August 31, 2016 through June 30, 2017.

1.162    *Priority Tax Claim* means any Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.163    *Professional* means (a) any professional employed in these Chapter 11 Cases pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code or otherwise and (b) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

1.164    *Professional Compensation - Accrued* means, at any date, and regardless of whether such amounts are billed or unbilled, all of a Professional's accrued and unpaid fees (including success fees) and reimbursable expenses for services rendered in the Chapter 11 Cases through and including such date, whether or not such Professional has filed a fee application for payment of such fees and expenses, (i) all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount) and (ii) after applying any retainer that has been provided by the Debtors to such Professional and not previously applied. No amount of a Professional's fees and expenses denied under a Final Order shall constitute Accrued Professional Compensation.

1.165    *Professional Fee Claim* means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred on or after the Petition Date and prior to and including the Effective Date.

1.166    *Professional Fee Escrow Account* means an escrow account to be funded with the Professional Fee Reserve Amount by the Debtors and Reorganized Debtors on the Effective Date solely for the purpose of paying all Allowed Professional Fee Claims.

1.167    *Professional Fee Reserve Amount* means the aggregate Accrued Professional Compensation through the Effective Date as estimated by the Professionals in accordance with Article II.

1.168    *Pro Rata* means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims and Disputed Claims within such Class.

1.169    *Proof of Claim* means a written proof of Claim filed against any Debtor in the Chapter 11 Cases.

1.170    *Released Party* means collectively and in each case in their capacity as such, each of the following: (a) the Debtors; (b) the Oceangoing Equity Purchaser; (c) the Newbuild Tanker Purchaser; and (d) with respect to each of the foregoing persons in the foregoing clauses, such Person's current and former subsidiaries,

Affiliates, members, directors, officers, principals, agents, financial advisors, restructuring advisors, accountants, investment bankers, consultants, attorneys, employees, partners, equity holders,  representatives, and other professionals, in each case, only in their capacity as such.

1.171  ***Releasing Parties*** means collectively and in each case in their capacity as such: each holder of a Claim or an Interest, and with respect to each of the foregoing entities, such entities current and former subsidiaries, Affiliates, members, directors, officers, principals, agents, financial advisors, restructuring advisors, accountants, investment bankers, consultants, attorneys, employees, partners, equity holders,  representatives, and other professionals, in each case, only in their capacity as such

1.172  ***Reorganized Citi Tanker Debtors*** means collectively Reorganized United Journey, Inc. and Reorganized United Seas, Inc.

1.173  ***Reorganized Commerzbank I Debtors*** means collectively Reorganized United Banner, Inc., Reorganized United Courage, Inc., and Reorganized United Ambassador, Inc.

1.174  ***Reorganized Commerzbank II Debtor*** means Reorganized United Honor, Inc.

1.175  ***Reorganized Credit Agricole Tanker Debtor*** means Reorganized Trade Industrial Development Corporation.

1.176  ***Reorganized Danish Ship Bulker Debtors*** means collectively Reorganized Trade Vision, Inc. and Reorganized Trade Will, Inc.

1.177  ***Reorganized Danish Ship Tanker Debtors*** means collectively Reorganized United Kalavryta, Inc. and Reorganized United Leadership, Inc.

1.178  ***Reorganized Debtors*** means collectively Reorganized Trade Prosperity, Inc.;  Reorganized Toisa Limited;  Reorganized United Courage, Inc.; Reorganized Trade Vision, Inc.;  Reorganized United Journey, Inc.;  Reorganized United Kalavryta, Inc.;  Reorganized Trade Sky, Inc.;  Reorganized Trade Industrial Development Corporation;  Reorganized United Honor, Inc.;  Reorganized Trade Will, Inc.;  Reorganized United Leadership Inc.;  Reorganized United Seas, Inc.;  Reorganized United Dynamic, Inc.;  Reorganized United Emblem, Inc.;  Reorganized United Ideal Inc.;  Reorganized Trade Unity, Inc.;  Reorganized Trade Quest, Inc.;  Reorganized Trade Spirit, Inc.;  Reorganized Trade Resource, Inc.;  Reorganized United Ambassador, Inc.;  Reorganized Edgewater Offshore Shipping, Ltd.;  Reorganized United Banner, Inc.; Reorganized Toisa Horizon, Inc.;  and Reorganized Trade and Transport Inc.

1.179  ***Reorganized DNB Tanker Debtors*** means Reorganized United Dynamic, Inc., Reorganized United Emblem, Inc., and Reorganized United Ideal, Inc.

1.180    *Reorganized ING Bulker Debtors* means collectively, Reorganized trade Unity, inc, Reorganized Trade Quest, Inc., Reorganized Trade Spirit, Inc., Reorganized Trade Resource, Inc., and Reorganized Trade Prosperity, Inc.

1.181    *Reorganized NBG Debtor* means Reorganized United Fortitude, Inc.

1.182    *Reorganized Oceangoing Vessel Debtors* means collectively the Reorganized Citi Tanker Debtors, Reorganized Commerzbank I Debtors, Reorganized Commerzbank II Debtor, Reorganized Credit Agricole Tanker Debtor, Reorganized Danish Ship Bulker Debtors, Reorganized Danish Ship Tanker Debtors, Reorganized DNB Tanker Debtors, Reorganized ING Bulker Debtors, and Reorganized NBG Debtor.

1.183    *Reorganized Toisa* means Reorganized Toisa Limited.

1.184    *Reorganized Trade and Transport* means Reorganized Trade and Transport Inc.

1.185    *Reorganized Trade and Transport Enterprise* means collectively Reorganized Trade and Transport and the Reorganized Oceangoing Vessel Debtors.

1.186    *Retained Actions* means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which any Debtor or any Debtor's Estate may hold against any Person, including, without limitation, (a) claims and Causes of Action brought prior to the Effective Date, (b) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by any of the Debtors, (c)claims and Causes of Action seeking the recovery of any of the Debtors' or the Reorganized Debtors' accounts receivable or other receivables or rights to payment created or arising in the ordinary course of any of the Debtors' or the Reorganized Debtors' businesses, including, without limitation, claim overpayments and tax refunds, (d) all Avoidance Actions, and (e) any such claims, Causes of Action, rights of action, suits or proceedings listed in the Disclosure Statement or any schedules filed by the Debtors in these cases, if any; provided, however, that Retained Actions shall not include those claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, released under Article X herein.

1.188    *Schedules* means the Debtors' schedules of assets and liabilities and statements of financial affairs, filed under section 521 of the Bankruptcy Code and the Bankruptcy Rules, as amended, supplemented, or modified.

1.189    *Secured Claim* means a Claim that is secured by a Lien on property in which a Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

1.190    *Toisa* means Debtor Toisa Limited.

1.191    ***Toisa Equity Contribution*** means a $1,000,000 new capital investment from the current owner of Toisa to retain ownership of Toisa.

1.192    ***T&T*** means Debtor Trade and Transport Inc.

1.193    ***Unimpaired*** means a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.194    ***Wells Fargo Credit Facility Vessel*** means the vessel *Toisa Crest*.

*Rules Of Interpretation And Computation Of Time.*  For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections and Articles are references to Sections and Articles of or to this Plan; (f) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; (k) "including" means "including without limitation;" and (l) with reference to any distribution under this Plan, "on" a date means on or as soon as reasonably practicable after that date.

*Exhibits.*  All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court no later than ten (10) Business Days prior to the hearing at which the Bankruptcy Court considers whether to confirm the Plan.  Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to the Debtors. Upon their filing, the Exhibits may be inspected (a) in the office of the clerk of the Bankruptcy Court or its designee during normal business hours; (b) on the Bankruptcy Court's website at http://nysb.uscourts.gov (registration required) or (c) at our noticing agent's website at http://www.kccllc.net/toisa.  The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

*Controlling Document.*  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document).  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## ARTICLE II

## ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote on this Plan.

2.1    *Administrative Claims*.  On, or as soon as reasonably practicable after, the later of (a) the Effective Date, (b) the date on which an Administrative Claim becomes an Allowed Administrative Claim, or (c) the date on which an Allowed Administrative Claim becomes payable under any agreement relating thereto, each Holder of such Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim.

2.2    *Priority Tax Claims*.  The legal and equitable rights of the Holders of Priority Tax Claims are Unimpaired by the Plan.  Unless the Holder of an Allowed Priority Tax Claim and the Debtors agree to a different treatment, on the Effective Date, each Holder of an Allowed Priority Tax Claim shall have such Claim Reinstated and each Holder of an Allowed Priority Tax Claim shall receive Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date, the date such Allowed Priority Tax Claim is due and payable in the ordinary course, or as otherwise permitted under Section 1129(a)(9) of the Bankruptcy Code.

2.3    *Professional Fee Claims*.

(a)    Professionals shall submit final fee applications seeking approval of all Professional Fee Claims no later than thirty (30) days after the Effective Date.  These applications remain subject to Bankruptcy Court approval under the standards established by the Bankruptcy Code, including the requirements of sections 327, 328, 330, 331, 363, 503(b) and 1103 of the Bankruptcy Code, as applicable.  Any unpaid amounts to Professionals shall be made upon entry of an order approving such Professional Fee Claims.

(b)      The Reorganized Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course without the need for Bankruptcy Court Approval.

(c)      On the Effective Date, the Debtors or the Reorganized Debtors will establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1      *Classification And Settlement*.  Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date. Subject to the payment of Professional Fees and any other joint and several obligations of the Debtors, each Debtor shall be responsible for satisfying the Claims and Administrative Claims against and Interests in such Debtor from such Debtor's assets.

In accordance with section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and holders of Claims and Interests and is fair, equitable and reasonable.

3.2      *Summary of Classification*.  The following table designates the Classes of Claims and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code and (c) deemed to reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Section 3.  All of the potential Classes for the Debtors are set forth herein.  Certain of the Debtors may not have holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Section 3.3.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1............. | Other Priority Claims | Unimpaired | No (deemed to accept) |

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 2............. | Existing Citi Tanker Credit Facility Claims | Impaired | Yes |
| Class 3.......... | Existing Commerzbank I Credit Facility Claims | Impaired | Yes |
| Class 4.......... | Existing Commerzbank II Credit Facility Claims | Impaired | Yes |
| Class 5.......... | Existing Credit Agricole Tanker Credit Facility Claims | Impaired | Yes |
| Class 6.......... | Existing Danish Ship Bulker Credit Facility Claims | Impaired | Yes |
| Class 7.......... | Existing Danish Ship Tanker Credit Facility Claims | Impaired | Yes |
| Class 8.......... | Existing DNB Tanker Credit Facility Claims | Impaired | Yes |
| Class 9.......... | Existing ING Bulker Credit Facility Claims | Impaired | Yes |
| Class 10........ | Existing NBG Credit Facility Claims | Impaired | Yes |
| Class 11......... | Newbuild Tanker Credit Facility Claims | Impaired | Yes |
| Class 12.......... | Existing DVB Credit Facility Claims | Impaired | Yes |
| Class 13......... | Existing Citizens I Credit Facility Claims | Impaired | Yes |
| Class 14........ | Toisa Offshore Secured Claims | Impaired | Yes |
| Class 15............ | G550 Airplane Credit Facility Claims | Unimpaired | No (deemed to accept) |
| Class 16............ | T&T General Unsecured Claims | Unimpaired | No (deemed to accept) |
| Class 17............ | Toisa General Unsecured Claims | Unimpaired | No (deemed to accept) |
| Class 18............ | Intercompany Claims | Unimpaired | No (deemed to accept) |
| Class 19............ | Interests in Toisa | Unimpaired | No (deemed to accept) |
| Class 20............ | Intercompany Interests in Other Debtors | Unimpaired | No (deemed to accept) |

3.3   *Treatment Of Classes*.

(a)   *Class 1 – Other Priority Claims*

(i)   *Claims In Class:* Class 1 consists of all Other Priority Claims that may exist against the Debtors.

(ii)   *Treatment:* On, or as soon as reasonably practicable after, (a) the Effective Date if such Other Priority Claim is an Allowed Other Priority Claim on the Effective Date or (b) the date on which such Other Priority Claim becomes

24

an Allowed Other Priority Claim, each Holder of an Allowed Class 1 Other Priority Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Other Priority Claim, Cash equal to the unpaid portion of such Allowed Other Priority Claim.

(iii)    *Voting:*  Claims in Class 1 are Unimpaired, and the Holders of Allowed Class 1 Other Priority Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject this Plan.

(b)    *Class 2 – Existing Citi Tanker Credit Facility Claims*

(i)    *Claims In Class:*  Class 2 consists of all Citi Tanker Credit Facility Claims.

(ii)    *Treatment:*  On, or as soon as reasonably practicable after, the Effective Date, each Holder of an Allowed Class 2 Citi Tanker Credit Facility Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such claims, its pro rata share of the loans under the Amended and Restated Citi Tanker Credit Facility, in addition to any terms of treatment that the Court orders.  Under the Amended and Restated Citi Tanker Credit Facility the balances and interest rates under the Amended and Restated Citi Tanker Credit Facility will remain unchanged from those in effect under the Existing Citi Tanker Credit Facility;  however, the maturity shall be extended to five (5) years from the Effective Date;  interest is to be paid by the earnings from the Citi Tanker Vessels, and pooled to pay interest deficiencies, if any, relating to the Amended and Restated Oceangoing Facilities. 50% of any excess cash flow shall be swept on a quarterly basis to repay principal on the Amended and Restated Citi Tanker Credit Facility subject to a consolidated cash balance at the Reorganized Trade and Transport Enterprise in excess of the Oceangoing Minimum Working Capital amount.  Such cash flow sweeps shall replace the prepetition amortization schedule.

(iii)    for the avoidance of doubt, all Toisa guarantees relating to the Existing Citi Tanker Facility shall be fully released as of the Effective Date.

(iv)    *Voting:*  Claims in Class 2 are Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Class 2 Citi Tanker Facility Claim is entitled to vote to accept or reject this Plan.

(c)    *Class 3 – Existing Commerzbank I Credit Facility Claims*

(i)    *Claims In Class:*  Class 3 consists of all Existing Commerzbank I Credit Facility Claims.

(ii)    *Treatment:*  On, or as soon as reasonably practicable after, the Effective Date, each Holder of an Allowed Class 3 Existing Commerzbank I Credit Facility Claim shall receive, in full and final satisfaction, settlement, release, and

discharge of, and in exchange for, such claims, its pro rata share of the loans under the Amended and Restated Commerzbank I Credit Facility, in addition to any terms of treatment that the Court orders.  Under the Amended and Restated Commerzbank I Credit Facility the balances and interest rates under the Amended and Restated Commerzbank I Credit Facility will remain unchanged from those in effect under the Existing Commerzbank I Credit Facility;  however, the maturity shall be extended to five (5) years from the Effective Date;  interest is to be paid by the earnings from the Commerzbank I Vessels , and pooled to pay interest deficiencies, if any relating to the Amended and Restated Oceangoing Facilities.  50% of any excess cash flow shall be swept on a quarterly basis to repay principal on the Amended and Restated Commerzbank I Credit Facility subject to a consolidated cash balance at the Reorganized Trade and Transport Enterprise in excess of the Oceangoing Minimum Working Capital amount.  Such cash flow sweep shall replace the prepetition amortization schedule.

(iii)    for the avoidance of doubt, all Toisa guarantees relating to the Existing Commerzbank I Facility shall be fully released as of the Effective Date.

(iv)    *Voting:*  Claims in Class 3 are Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Class 3 Commerzbank I Facility Claim is entitled to vote to accept or reject this Plan.

(d)    *Class 4 – Existing Commerzbank II Credit Facility Claims*

(i)    *Claims In Class:*  Class 4 consists of all Existing Commerzbank II Facility Claims.

(ii)    *Treatment:*  On, or as soon as reasonably practicable after, the Effective Date, each Holder of an Allowed Class 4 Existing Commerzbank II Credit Facility Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such claims, its pro rata share of the loans under the Amended and Restated Commerzbank II Credit Facility, in addition to any terms of treatment that the Court orders.  Under the Amended and Restated Commerzbank II Credit Facility the balances and interest rates under the Amended and Restated Commerzbank II Credit Facility will remain unchanged from those in effect under the Existing Commerzbank II Credit Facility;  however, the maturity shall be extended to five (5) years from the Effective Date;  interest is to be paid by the earnings from the Commerzbank II Vessels, and pooled to pay interest deficiencies, if any relating to the Amended and Restated Oceangoing Facilities.  50% of any excess cash flow shall be swept on a quarterly basis to repay principal on the Amended and Restated Commerzbank II Credit Facility subject to a consolidated cash balance at the Reorganized Trade and Transport Enterprise in excess of the Oceangoing Minimum Working Capital amount.  Such cash flow sweep shall replace the prepetition amortization schedule.

(iii)    for the avoidance of doubt, all Toisa guarantees relating to the Existing Commerzbank II Facility shall be fully released as of the Effective Date.

26

(iv)    *Voting:*  Claims in Class 4 are Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Class 4 Existing Commerzbank II Facility Claim is entitled to vote to accept or reject this Plan.

(e)    *Class 5 – Existing Credit Agricole Tanker Credit Facility Claims*

(i)    *Claims In Class:*  Class 5 consists of all Existing Credit Agricole Tanker Credit Facility Claims.

(ii)    *Treatment:*  On, or as soon as reasonably practicable after, the Effective Date, each Holder of an Allowed Class 5 Credit Agricole Tanker Credit Facility Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such claims, its pro rata share of the loans under the Amended and Restated Credit Agricole Tanker Credit Facility, in addition to any terms of treatment that the Court orders.  Under the Amended and Restated Credit Agricole Tanker Credit Facility the balances and interest rates under the Amended and Restated Credit Agricole Tanker Credit Facility will remain unchanged from those in effect under the Existing Credit Agricole Tanker Credit Facility;  however, the maturity shall be extended to five (5) years from the Effective Date;  interest is to be paid by the earnings from the Credit Agricole Tanker Vessels, and pooled to pay interest deficiencies, if any relating to the Amended and Restated Oceangoing Facilities.  50% of any excess cash flow shall be swept on a quarterly basis to repay principal on the Amended and Restated Credit Agricole Tanker Credit Facility subject to a consolidated cash balance at the Reorganized Trade and Transport Enterprise in excess of the Oceangoing Minimum Working Capital amount.  Such cash flow sweep shall replace the prepetition amortization schedule.

(iii)    *Voting:*  Claims in Class 5 are Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Class 5 Existing Credit Agricole Tanker Facility Claim is entitled to vote to accept or reject this Plan.

(f)    *Class 6 – Existing Danish Ship Bulker Credit Facility Claims*

(i)    *Claims In Class:*  Class 6 consists of all Existing Danish Ship Bulker Credit Facility Claims.

(ii)    *Treatment:*  On, or as soon as reasonably practicable after, the Effective Date, each Holder of an Allowed Class 6 Danish Ship Bulker Credit Facility Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such claims, its pro rata share of the loans under the Amended and Restated Danish Ship Bulker Credit Facility, in addition to any terms of treatment that the Court orders.  Under the Amended and Restated Danish Ship Bulker Credit Facility the balances and interest rates under the Amended and Restated Danish Ship Bulker Credit Facility will remain unchanged from those in effect under the Existing Danish Ship Bulker Credit Facility;  however, the maturity shall be extended to five (5) years from the Effective Date;  interest is to be paid by the earnings from the Danish Ship Bulker Vessels, and pooled to pay interest deficiencies, if any relating to the Amended and Restated Oceangoing Facilities.  50% of any excess cash flow shall be swept on a quarterly basis to repay principal on the Amended and Restated Danish

27

Ship Bulker Credit Facility subject to a consolidated cash balance at the Reorganized Trade and Transport Enterprise in excess of the Oceangoing Minimum Working Capital amount.  Such cash flow sweep shall replace the prepetition amortization schedule.

(iii)    for the avoidance of doubt, all Toisa guarantees relating to the Existing Danish Ship Bulker Credit Facility shall be fully released as of the Effective Date.

(iv)    *Voting:*  Claims in Class 6 are Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Class 6 Existing Danish Ship Bulker Credit Facility Claim is entitled to vote to accept or reject this Plan.

(g)    *Class 7 – Existing Danish Ship Tanker Credit Facility Claims*

(i)    *Claims In Class:*  Class 7 consists of all Existing Danish Ship Tanker Credit Facility Claims.

(ii)    *Treatment:*  On, or as soon as reasonably practicable after, the Effective Date, each Holder of an Allowed Class 7 Existing Danish Ship Tanker Credit Facility Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such claims, its pro rata share of the loans under the Amended and Restated Danish Ship Tanker Credit Facility, in addition to any terms of treatment that the Court orders.  Under the Amended and Restated Danish Ship Tanker Credit Facility the balances and interest rates under the Amended and Restated Danish Ship Tanker Credit Facility will remain unchanged from those in effect under the Existing Danish Ship Tanker Credit Facility;  however, the maturity shall be extended to five (5) years from the Effective Date;  interest is to be paid by the earnings from the Danish Ship Tanker Vessels, and pooled to pay interest deficiencies, if any relating to the Amended and Restated Oceangoing Facilities.  50% of any excess cash flow shall be swept on a quarterly basis to repay principal on the Amended and Restated Danish Ship Tanker Credit Facility subject to a consolidated cash balance at the Reorganized Trade and Transport Enterprise in excess of the Oceangoing Minimum Working Capital amount.  Such cash flow sweep shall replace the prepetition amortization schedule.

(iii)    for the avoidance of doubt, all Toisa guarantees relating to the Existing Danish Ship Tanker Credit Facility shall be fully released as of the Effective Date.

(iv)    *Voting:*  Claims in Class 7 are Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Class 7 Danish Ship Tanker Credit Facility Claim is entitled to vote to accept or reject this Plan.

(h)     *Class 8 – Existing DNB Tanker Credit Facility Claims*

(i)     *Claims In Class:*  Class 8 consists of all Existing DNB Tanker Credit Facility Claims.

(ii)     *Treatment:*  On, or as soon as reasonably practicable after, the Effective Date, each Holder of an Allowed Class 8 DNB Tanker Credit Facility Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such claims, its pro rata share of the loans under the Amended and Restated DNB Tanker Credit Facility, in addition to any terms of treatment that the Court orders.  Under the Amended and Restated DNB Tanker Credit Facility the balances and interest rates under the Amended and Restated DNB Tanker Credit Facility will remain unchanged from those in effect under the Existing DNB Tanker Credit Facility;  however, the maturity shall be extended to five (5) years from the Effective Date;  interest is to be paid by the earnings from the DNB Tanker Vessels, and pooled to pay interest deficiencies, if any relating to the Amended and Restated Oceangoing Facilities.  50% of any excess cash flow shall be swept on a quarterly basis to repay principal on the Amended and Restated DNB Tanker Credit Facility subject to a consolidated cash balance at the Reorganized Trade and Transport Enterprise in excess of the Oceangoing Minimum Working Capital amount.  Such cash flow sweep shall replace the prepetition amortization schedule.

(iii)     for the avoidance of doubt, all Toisa guarantees relating to the Existing DNB Tanker Credit Facility shall be fully released as of the Effective Date.

(iv)     *Voting:*  Claims in Class 8 are Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Class 8 DNB Tanker credit Facility Claim is entitled to vote to accept or reject this Plan.

(i)     *Class 9 – Existing ING Bulker Credit Facility Claims*

(i)     *Claims In Class:*  Class 9 consists of all Existing ING Bulker Credit Facility Claims.

(ii)     *Treatment:*  On, or as soon as reasonably practicable after, the Effective Date, each Holder of an Allowed Class 9 Existing ING Bulker Credit Facility Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such claims, its pro rata share of the loans under the Amended and Restated ING Bulker Credit Facility, in addition to any terms of treatment that the Court orders.  Under the Amended and Restated ING Bulker Credit Facility the balances and interest rates under the Amended and Restated ING Bulker Credit Facility will remain unchanged from those in effect under the Existing ING Bulker Credit Facility;  however, the maturity shall be extended to five (5) years from the Effective Date;  interest is to be paid by the earnings from the ING Bulker Vessels, and pooled to pay interest deficiencies, if any relating to the Amended and Restated Oceangoing Facilities.  50% of any excess cash flow shall be swept on a quarterly basis to repay principal on the Amended and Restated ING Bulker Credit Facility subject to a consolidated cash balance at the Reorganized Trade and Transport Enterprise in excess

of the Oceangoing Minimum Working Capital amount.  Such cash flow sweep shall replace the prepetition amortization schedule.

(iii)    for the avoidance of doubt, all Toisa guarantees relating to the Existing ING Bulker Credit Facility shall be fully released as of the Effective Date.

(iv)    *Voting:*  Claims in Class 9 are Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Class 9 ING Bulker Facility Claim is entitled to vote to accept or reject this Plan.

(j)    *Class 10 – Existing NBG Credit Facility Claims*

(i)    *Claims In Class:*  Class 10 consists of all Existing NBG Credit Facility Claims.

(ii)    *Treatment:*  On, or as soon as reasonably practicable after, the Effective Date, each Holder of an Allowed Class 10 NBG Existing Credit Facility Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such claims, its pro rata share of the loans under the Amended and Restated NBG Credit Facility, in addition to any terms of treatment that the Court orders.  Under the Amended and Restated NBG Credit Facility the balances and interest rates under the Amended and Restated NBG Credit Facility will remain unchanged from those in effect under the Existing NBG Credit Facility;  however, the maturity shall be extended to five (5) years from the Effective Date;  interest is to be paid by the earnings from the NBG Vessels, and pooled to pay interest deficiencies, if any relating to the Amended and Restated Oceangoing Facilities.  50% of any excess cash flow shall be swept on a quarterly basis to repay principal on the Amended and Restated NBG Credit Facility subject to a consolidated cash balance at the Reorganized Trade and Transport Enterprise in excess of the Oceangoing Minimum Working Capital amount.  Such cash flow sweep shall replace the prepetition amortization schedule.

(iii)    *Voting:*  Claims in Class 10 are Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Class 10 Existing NBG Credit Facility Claim is entitled to vote to accept or reject this Plan.

(k)    *Class 11 – Newbuild Tanker Credit Facility Claims*

(i)    *Claims In Class:*  Class 11 consists of all Newbuild Credit Facility Claims.

(ii)    *Treatment:*  On, or as soon as reasonably practicable after, the Effective Date and the closing of the Newbuild Tanker Sale Transaction, each Holder of an Allowed Class 11 Newbuild Tanker Credit Facility Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such claims, the treatment provided for in the Newbuild Tanker Purchase Agreement.

(iii)    for the avoidance of doubt, all Trade and Transport guarantees relating to the Newbuild Tanker Credit Facility shall be fully released as of the later of the Effective Date and the closing of the Newbuild Tanker Sale Transaction.

(iv)    *Voting:* Claims in Class 11 are Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Class 11 Newbuild Tanker Credit Facility Claim is entitled to vote to accept or reject this Plan.

(l)    *Class 12 – Existing DVB Credit Facility Claims*

(i)    *Claims In Class:*  Class 12 consists of all DVB Credit Facility Claims.

(ii)    *Treatment:* On, or as soon as reasonably practicable after, the Effective Date, each Holder of an Allowed Class 12 DVB Credit Facility Claims shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Claims its pro rata share of the loans under the  Amended and Restated DVB Credit Facility.  Under the Amended and Restated DVB Credit Facility the balances and interest rates under the Amended and Restated DVB Credit Facility will remain unchanged from those in effect under the Existing DVB Credit Facility; however, the maturity shall be extended to five (5) years from the Effective Date and interest shall be paid in Cash at the Cash Rate (as defined in section 3.3(n) below) with the remaining interest paid as PIK Interest in an amount equal to the interest rate under the Existing DVB Credit Facility minus the Cash Rate.  Any earnings from DVB Credit Facility Vessels in excess of the Cash Rate shall be pooled to pay interest deficiencies, if any, relating to the Amended and Restated Offshore Facilities.  50% of any excess cash flow after payment of interest deficiencies shall be swept on a quarterly basis to repay principal on the Amended and Restated DVB Credit Facility subject to a consolidated cash balance at Reorganized Toisa in excess of the Offshore Minimum Working Capital amount.  Such cash flow sweep shall replace the prepetition amortization schedule.

(iii)    *Voting:* Claims in Class 12 are Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Class 12 DVB Credit Facility Claim is entitled to vote to accept or reject this Plan.

(m)    *Class 13 – Existing Citizens I Credit Facility Secured Claim*

(i)    *Claims In Class:*  Class 13 consists of all Existing Citizens I Credit Facility Secured Claims.

(ii)    *Treatment:* On, or as soon as reasonably practicable after, the Effective Date, each Holder of an Allowed Class 13 Existing Citizens I Credit Facility Secured Claims shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Claims, its pro rata share of the loans under the Amended and Restated Citizens I Credit Facility, in addition to any terms of treatment that the Court orders.  Under the Amended and Restated Offshore Credit Facilities the balances and interest rates under the Amended and Restated Offshore Credit Facilities will remain unchanged from those in effect under the Existing Offshore Credit Facilities;  however, the maturity shall be extended to five (5) years from the

Effective Date and interest shall be paid in Cash at the Cash Rate (as defined in section 3.3(n) below) with the remaining interest paid as PIK Interest in an amount equal to the interest rate under the applicable Existing Offshore Credit Facility minus the Cash Rate. Any earnings from Citizens I Credit Facility Vessels in excess of the Cash Rate shall be pooled to pay interest deficiencies, if any, relating to the Amended and Restated Offshore Facilities. 50% of any excess cash flow after payment of interest deficiencies shall be swept on a quarterly basis to repay principal on the Amended and Restated Citizens I Credit Facility subject to a consolidated cash balance at Reorganized Toisa in excess of the Offshore Minimum Working Capital amount. Such cash flow sweep shall replace the prepetition amortization schedule.

(iii)    *Voting:* Claims in Class 13 are Impaired. Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Class 13 Existing Citizens I Credit Facility Secured Claim is entitled to vote to accept or reject this Plan.

(n)    *Class 14 – Toisa Offshore Secured Claims*

(i)    *Claims In Class:* Class 14 consists of all Existing BNP Credit Facility Claims, Existing Citi Offshore Facility Claims, Existing Citizens II Credit Facility Claims, Existing Commonwealth Bank of Australia Credit Facility Claims, Existing Credit Agricole Offshore Credit Facility Claims, Existing Danish Ship Offshore Credit Facility Claims, Existing DNB Offshore Credit Facility Claims, Existing ING Offshore Credit Facility Claims, and Existing Wells Fargo Credit Facility Claims.

(ii)    *Treatment:* On, or as soon as reasonably practicable after, the Effective Date, each Holder of an Allowed Class 14 Toisa Offshore Secured Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Claims its pro rata share of the loans under such Holder's applicable Amended and Restated Offshore Credit Facility. Under the Amended and Restated Offshore Credit Facilities, the balances and interest rates under the Amended and Restated Offshore Credit Facilities will remain unchanged from those in effect under the Existing Offshore Credit Facilities; however, the maturity shall be extended to five (5) years from the Effective Date and interest shall be paid in Cash at the rate of Libor+25bps (the "Cash Rate") with the remaining interest paid as PIK Interest in an amount equal to the interest rate under the applicable Existing Offshore Credit Facility minus the Cash Rate. Any earnings from Offshore Credit Facility Vessels in excess of the Cash Rate interest payable under the corresponding Offshore Credit Facility shall be pooled to pay interest deficiencies, if any, relating to the Amended and Restated Offshore Facilities. 50% of any excess cash flow from Offshore Credit Facility Vessels after payment of pooled interest deficiencies shall be swept on a quarterly basis to repay principal on the corresponding Amended and Restated Offshore Credit Facility subject to a consolidated cash balance at Reorganized Toisa in excess of the Offshore Minimum Working Capital amount. Such cash flow sweeps shall replace the prepetition amortization schedule.

(iii)    *Voting:* Claims in Class 14 are Impaired. Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Class 14 Toisa Offshore Secured Claim is entitled to vote to accept or reject this Plan.

(o)     *Class 15 – G550 Airplane Credit Facility Claims*

(i)     *Claims In Class:* Class 15 consists of all Existing G550 Airplane Credit Facility Claims.

(ii)     *Treatment:* On, or as soon as reasonably practicable after, the Effective Date, the G550 Airplane Credit Facility shall be reinstated in full upon its current terms without any modifications.

(iii)     *Voting:* Claims in Class 15 are Unimpaired, and the Holders of Allowed Class 15 G550 Airplane Credit Facility Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 15 G550 Airplane Credit Facility Claims are not entitled to vote to accept or reject this Plan.

(p)     *Class 16 – T&T General Unsecured Claims*

(i)     *Claims In Class:* Class 16 consists of all General Unsecured Claims that may exist against the Debtor T&T ("T&T General Unsecured Claims").

(ii)     *Treatment:* Within ninety (90) days after the Effective Date or, if such T&T General Unsecured Claim becomes Allowed after the Effective Date, as soon as reasonably practicable after the date at which such General Unsecured Claim becomes Allowed, each Holder of an Allowed Class 16 T&T General Unsecured Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Claim, payment in Cash of the full amount of such Allowed T&T General Unsecured Claims.

(iii)     *Voting:* Claims in Class 16 are Unimpaired, and the Holders of Allowed Class 16 T&T General Unsecured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 16 T&T General Unsecured Claims are not entitled to vote to accept or reject this Plan.

(q)     *Class 17 – Toisa General Unsecured Claims*

(i)     *Claims In Class:* Class 17 consists of all General Unsecured Claims that may exist against the Debtor Toisa ("Toisa General Unsecured Claims").

(ii)     *Treatment:* Within ninety (90) days after the Effective Date or, if such Toisa General Unsecured Claim becomes Allowed after the Effective Date, as soon as reasonably practicable after the date at which such General Unsecured Claim becomes Allowed, each Holder of an Allowed Class 17 Toisa General Unsecured Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Claim, payment in Cash of the full amount of such Allowed Toisa General Unsecured Claims.

(iii)   *Voting:*  Claims in Class 17 are Unimpaired, and the Holders of Allowed Class 17 Toisa General Unsecured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 17 Toisa General Unsecured Claims are not entitled to vote to accept or reject this Plan

(r)   *Class 18 – Intercompany Claims*

(i)   *Claims In Class:*  Class 18 consists of all Intercompany Claims.

(ii)   *Treatment:*  On or prior to the Effective Date, all Class 18 Intercompany Claims shall be reinstated.

(iii)   *Voting:*  Claims in Class 18 are Unimpaired and the Holders Class 18 Intercompany Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 18 Intercompany Claims are not entitled to vote to accept or reject this Plan.

(s)   *Class 19 – Interests in Toisa*

(i)   *Interests in Class*:  Class 19 consists of all Interests in Toisa.

(ii)   *Treatment*:  On the Effective Date, all Class 19 Interests shall be reinstated.

(iii)   *Voting*:  Interests in Class 19 are Unimpaired, and the Holders of Class 19 Interests are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 19 Interests are not entitled to vote to accept or reject this Plan.

(t)   *Class 20 – Intercompany Interests in Other Debtors*

(i)   *Interests in Class*:  Class 20 consists of all Intercompany Interests in each Debtor except Toisa.

(ii)   *Treatment*:  Except as otherwise provided herein or in the Oceangoing Equity Purchase Agreement, on or prior to the Effective Date, all Class 20 Intercompany Interests in Other Debtors shall be Reinstated.

(iii)   *Voting*:  Interests in Class 20 are Unimpaired, and the Holders of Class 20 Intercompany Interests are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 20 Intercompany Interests are not entitled to vote to accept or reject this Plan.

3.4   ***Enforcement of Subordination Agreements.*** Notwithstanding any provision herein to the contrary, in accordance with section 510 of the Bankruptcy Code, subordination agreements or arrangements to which any Debtor is a party, are

enforceable, and nothing in the Plan shall affect or otherwise alter any such subordination agreement.

3.5    *Alternative Treatment*.  Notwithstanding any provision herein to the contrary, any Holder of an Allowed Claim may receive, instead of the distribution or treatment to which it is entitled hereunder, any other distribution or treatment to which it and the Debtors may agree in writing; *provided, however*, that under no circumstance may the Debtor agree to provide any other distribution or treatment to any Holder of an Allowed Claim that would adversely impair the distribution or treatment provided to any other Holder of an Allowed Claim.

3.6    *Special Provision Regarding Unimpaired Claims*.  Except as otherwise provided in this Plan, nothing shall affect the Debtors' rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including but not limited to all rights with respect to legal and equitable defenses to setoffs against or recoupments of Unimpaired Claims.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THIS PLAN

4.1    *Acceptance By Class Entitled To Vote*.  Classes 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14 are the Classes of Claims of the Debtors that are entitled to vote to accept or reject this Plan.  Classes 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14 shall have accepted this Plan if (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in each Class have voted to accept this Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in each Class have voted to accept this Plan, not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code.  If there are no votes cast in a particular Class that is entitled to vote on the Plan, then the Plan shall be deemed accepted by such Class.

4.2    *Presumed Acceptance Of The Plan.*  Classes 1, 15, 16, 17, 18, 19 and 20 are Unimpaired.  Therefore, such Classes are deemed to have accepted this Plan by operation of law and are not entitled to vote to accept or reject the Plan.

4.3    *Elimination Of Classes*.  To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan for purposes of (a) voting to accept or reject this Plan and (b) determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

4.4    *Cramdown*.  The Debtors request Confirmation of this Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Debtors reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

# ARTICLE V

## MEANS FOR IMPLEMENTATION OF THIS PLAN

5.1    ***Continued Legal Existence***.  Except as otherwise provided for in this Plan, the Oceangoing Equity Purchase Agreement, or the Newbuild Tanker Purchase Agreement, each of the Debtors will continue to exist after the Effective Date as the Reorganized Debtors – separate legal entities, with all the powers of such an entity (whether a company or other entity as appropriate) under applicable law in the jurisdiction in which each applicable Debtor is incorporated or otherwise formed and pursuant to such Debtor's certificate or articles of incorporation and by-laws or other organizational documents in effect prior to the Effective Date, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date.

5.2    ***The Oceangoing Equity Sale.***  The Confirmation Order shall authorize the Oceangoing Equity Sale Transaction under sections 363, 365, 1123(b)(4), 1129(b)(2)(A)(iii), 1145, and 1146(a) of the Bankruptcy Code under the terms and conditions of the Oceangoing Equity Purchase Agreement.  Upon Confirmation, the Debtors shall be authorized to take any and all actions necessary to consummate the Oceangoing Equity Sale Transaction.

5.3    ***The Newbuild Tanker Sale.***  The Confirmation Order shall authorize the Newbuild Tanker Sale Transaction under sections 363, 365, 1123(b)(4), 1129(b)(2)(A)(iii), 1145, and 1146(a) of the Bankruptcy Code under the terms and conditions of the Newbuild Tanker Purchase Agreement.  Upon Confirmation, the Debtors shall be authorized to take any and all actions necessary to consummate the Newbuild Tanker Sale Transaction.

5.4    ***Sources of Cash for Toisa Distributions and Operations***.  All Cash necessary for Reorganized Toisa to make payments required by this Plan and for post Confirmation operations shall be obtained from (a) existing Cash at Toisa, (b) Oceangoing Equity Sale Proceeds, (c) Newbuild Tanker Sale Proceeds, (d) the Toisa Equity Contribution, (e) the Proceeds from any Causes of Action, and (f) the operations of Reorganized Toisa.

5.5    ***Sources of Cash for Reorganized Oceangoing Debtors Distributions and Operations***.  All cash necessary for the Reorganized Oceangoing Debtors to make payments required by this Plan and for post Confirmation operations shall be obtained from (a) existing Cash at each of the Reorganized Oceangoing Debtors and Reorganized Trade and Transport, (b) the Oceangoing Working Capital Contribution, and (c) the operations of the Reorganized Oceangoing Debtors.

5.6    ***Approval and Authorization for the Amended and Restated Credit Facilities***.  Confirmation shall be deemed approval of each of the Amended and Restated Credit Facilities and authorization for the applicable Reorganized Debtors to enter into each of the applicable Amended and Restated Credit Facilities and execute such documents as may be required to effectuate the treatment afforded to the applicable lenders pursuant to each of the Amended and Restated Credit Facilities.

5.7    *New Boards of Reorganized Debtors*.  The members of the Boards of each of the Reorganized Debtors shall be identified in the Plan Supplement.

5.8    *Corporate Action*.  Each of the matters provided for under this Plan involving the corporate structure of any Debtor or any corporate action to be taken by or required of any Debtor or Reorganized Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by shareholders, members, creditors, directors, or managers of the Debtors.

5.9    *Effectuating Documents; Further Transactions*.  Each of the Debtors and the Reorganized Debtors, and their respective officers and designees, is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan, or to otherwise comply with applicable law.

5.10    *Preservation Of Retained Actions*.  In accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors will retain and may (but are not required to) enforce all Retained Actions.  After the Effective Date, the Reorganized Debtors, in their sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court.  The Reorganized Debtors or any successors, in the exercise of their sole discretion, may pursue such Retained Actions so long as it is in the best interests of the Reorganized Debtors or any successors holding such rights of action.  The failure of the Debtors to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by the Debtors or the Reorganized Debtors of such claim, right of action, suit, proceeding or other Retained Action, and the Reorganized Debtors will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches will apply to such claim, right of action, suit, proceeding, or other Retained Action upon or after the Confirmation or consummation of this Plan.

5.11    *Exemption From Certain Transfer Taxes And Recording Fees*.  To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by any Debtor or any transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental

37

assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

5.12    ***Further Authorization***.  The Debtors and the Reorganized Debtors shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

5.13    ***Cancellation Of Existing Securities And Agreements***.  Except as provided in this Plan or in the Confirmation Order, on the Effective Date, all notes, stock, instruments, certificates, agreements, side letters, fee letters and other documents evidencing or giving rise to Claims and Interests in the Debtors shall be cancelled, and the obligations of the Debtors thereunder or in any way related thereto shall be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote, or other approval or authorization by any Person.  The Holders of or parties to such notes, stock, instruments, certificates, agreements, side letters, fee letters, and other documents shall have no rights arising from or relating to such notes, stock, instruments, certificates, agreements, side letters, fee letters, and other documents or the cancellation thereof, except the rights provided pursuant to this Plan and the Confirmation Order.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

6.1    ***Distribution Record Date***.  As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents, shall be deemed closed, and there shall be no further changes in the record of Holders of any of the Claims or Interests.  The Debtors or the Reorganized Debtors shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.

6.2    ***Allowed Claims.***  Notwithstanding any provision herein to the contrary, the Debtors or the Reorganized Debtors shall make distributions only to Holders of Allowed Claims.  A Holder of a Disputed Claim shall receive a distribution on account thereof only when and to the extent that such Holder's Disputed Claim becomes an Allowed Claim.

6.3    ***Distributions For Claims Allowed As Of The Effective Date.***  Except as otherwise provided under this Plan or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Effective Date or as soon thereafter as is practicable.  Any distribution to be made on the Effective Date pursuant to this Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective

Date or as soon thereafter as is practicable.  Any payment or distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

      6.4    *Interest And Penalties On Claims.*  Unless otherwise specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest and penalties shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date such Claim is satisfied in accordance with the terms of this Plan

      6.5    *Delivery of Distributions.* In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Debtors or the Reorganized Debtors, as applicable, has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; *provided, however,* such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the Initial Distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Debtors automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan and the Claim of any such holder to such property or interest in property shall be released, settled, compromised, and forever barred.

      6.6    *Manner of Payment Under Plan*.  At the option of the Debtors or the Reorganized Debtors, any Cash payment to be made hereunder may be made by a check or wire transfer.

      6.7    *Withholding and Reporting Requirements.*  In connection with this Plan and all distributions hereunder, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Reorganized Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.  Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for U.S. federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

      6.8    *Setoffs*.  The Debtors and the Reorganized Debtors may, but shall not be required to, set off against any Claim, any Claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the holder of such Claim; provided that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claim the Debtors or the Reorganized Debtors may have against the holder of such Claim.

6.9    ***Payment of Disputed Claims.***  As Disputed Claims are resolved pursuant to Section 7 hereof, the Reorganized Debtors shall make distributions on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date.  Such distributions shall be made on the first Distribution Date that is at least forty-five (45) days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the Reorganized Debtors in the Reorganized Debtors's sole discretion.

## ARTICLE VII

## PROCEDURES FOR DISPUTED CLAIMS

7.1    ***Allowance of Claims***.  After the Effective Date, the Debtors or the Reorganized Debtors shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claims, except with respect to any Claim deemed Allowed under this Plan.  Except as expressly provided in this Plan or in any order entered in these Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in these Chapter 11 Cases allowing such Claim.

7.2    ***Objections to Claims.***  As of the Effective Date, objections to, and requests for estimation of, Claims against the Debtors may be interposed and prosecuted only by the Reorganized Debtors.  Such objections and requests for estimation shall be served and filed (a) on or before the 60th day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as ordered by the Bankruptcy Court upon motion filed by the Reorganized Debtors.

7.3    ***Estimation of Claims***.  The Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or Reorganized Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or Reorganized Debtors, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

7.4    *Establishment of Reserve Account*.  The Reorganized Debtors shall reserve an amount sufficient to pay holders of Disputed Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims (the "Claims Reserve Account").  In the event the holders of Allowed Claims have not received payment in full on account of their Claims after the resolution of all Disputed Claims, then the Reorganized Debtors shall make a final distribution to all holders of Allowed Claims or if all Allowed Claims have been paid in full, the balance of the Claims Reserve Account shall be returned to Reorganized Toisa. Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

7.5    *No Distributions Pending Allowance*.  If an objection to a Claim is filed as set forth in Section 7, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

7.6    *Resolution of Claims*.  Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their estates may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. The Reorganized Debtors or their successors may pursue such retained Claims, rights, Causes of Action, suits or proceedings, as appropriate, in accordance with the best interests of the Debtors.

7.7    *Disallowed Claims*.  All Claims held by persons or entities against whom or which any of the Debtors or the Reorganized Debtors has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code shall be deemed "disallowed" Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this section shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Debtors or the Reorganized Debtors from such party have been paid.

## ARTICLE VIII

## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

8.1    *Rejection Of Executory Contracts And Unexpired Leases*.  Except as otherwise provided in the Plan the Oceangoing Equity Purchase Agreement, or the Newbuild Tanker Purchase Agreement, on the Effective Date, all Executory Contracts

and Unexpired Leases of the Debtors shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (a) has previously been assumed by order of the Bankruptcy Court in effect as of the Effective Date (which order may be the Confirmation Order); (b) is the subject of a motion to assume filed on or before the Effective Date; (c) is identified as an Executory Contract or Unexpired Lease to be assumed pursuant to the Plan Supplement before the Effective Date; or (d) expired or terminated pursuant to its own terms.

8.2    *Assumption of Existing Management Executory Contracts.* Unless otherwise provide in the Plan, the Newbuild Tanker Purchase Agreement, or the Oceangoing Equity Purchase Agreement, upon the Effective Date, the Debtors shall be deemed to have assumed the Existing Management Agreements with the Management Companies.  Cure amounts will be set at $0 for all Existing Management Agreements. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the Existing Management Agreements.

8.3    *D&O Liability Insurance Policies*.  As of the Effective Date, the D&O Liability Insurance Policies shall be treated as if they were Executory Contracts that are assumed under this Plan.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed.

8.4    *Indemnification*.  Except as otherwise specifically limited in this Plan, any obligations or rights of the Debtors to defend, indemnify, reimburse, or limit the liability of the Debtors' present and former directors, officers, employees, agents, representatives, attorneys, accountants, financial advisors, restructuring advisors, investment bankers and consultants (the "Covered Persons") pursuant to the Debtors' certificates of incorporation, by-laws, policy of providing employee indemnification, applicable law, or specific agreement in respect of any claims, demands, suits, Causes of Action, or proceedings against such Covered Persons based upon any act or omission related to such Covered Persons' service with, for, or on behalf of the Debtors prior to the Effective Date, shall be treated as if they were Executory Contracts that are assumed under this Plan and shall survive the Effective Date and remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability is owed in connection with an occurrence before or after the Petition Date.

8.5    *Cure of Defaults Under Assumed Contracts*.  The Reorganized Debtors shall cure any monetary defaults under any Executory Contract and Unexpired Lease to be assumed pursuant to the Plan by paying to the non-Debtor counterparty the full amount of any monetary default in the ordinary course of business.  Accordingly, no party to an Assumed Contract need file any cure claim, and the Debtors need not file any lists of any proposed cure claims, with the Bankruptcy Court.  Notwithstanding the

foregoing, the Reorganized Debtors and counter-parties to Assumed Contracts reserve all their rights in the event of a dispute over the amount of a cure claim. If there is any such dispute that cannot be resolved consensually, then either party must file with the Bankruptcy Court a request for allowance and payment of such cure claim within seventy-five (75) days from the Effective Date. Moreover, the Reorganized Debtors shall be authorized to reject any Executory Contract or Unexpired Lease to the extent the Reorganized Debtors, in the exercise of their sound business judgment, conclude that the amount of the cure claim as determined by the Bankruptcy Court, renders assumption of such Executory Contract or Unexpired Lease unfavorable to the Reorganized Debtors.

## ARTICLE IX

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

9.1    *Conditions Precedent to the Effective Date*.  The Debtors shall request that the Confirmation Order include a finding by the Bankruptcy Court that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry.  The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived by the Debtors in accordance with the terms hereof:

(a)    the Bankruptcy Court shall have entered the Confirmation Order, which, in form and substance, shall be acceptable to the Oceangoing Equity Purchaser and the Newbuild Tanker Purchaser, each in their sole discretion, and the Confirmation Order shall have become a Final Order and shall, among other things, provide that the Debtors and the Reorganized Debtors are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the agreements and documents created in connection with this Plan.

(b)    all documents related to, provided for therein, or contemplated by the Amended and Restated Credit Facilities shall have been executed and delivered, and all conditions precedent thereto shall have been satisfied (other than the occurrence of the Effective Date), which shall occur simultaneously with the satisfaction of all conditions precedent under the Amended and Restated Credit Facilities).

(c)    all conditions precedent to the effectiveness of the Oceangoing Equity Purchase Agreement have occurred or been waived and the Oceangoing Equity Sale Transaction has been consummated.

(d)    all conditions precedent to the effectiveness of the Newbuild Tanker Purchase Agreement have occurred or been waived and the Newbuild Tanker Sale Transaction has been consummated.

(e)    the Professional Fee Escrow Account shall have been funded and all amounts authorized as of the Effective Date to be paid to Professionals pursuant to orders of the Bankruptcy Court shall have been paid;

(f)      the Claims Reserve Account shall have been funded;

(g)      the Prepetition Cash Reconciliation shall have been completed;

(h)      all governmental and third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan, the Oceangoing Equity Sale Transaction, and the Newbuild Tanker Sale Transaction shall have been obtained, not be subject to unfulfilled conditions and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions;  and

(i)      all documents and agreements necessary to implement the Plan and the consummation of both the Oceangoing Equity Sale Transaction and the Newbuild Tanker Sale Transaction shall have (a) been tendered for delivery and (b) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

9.2      *Waiver of Conditions Precedent*.  Each of the conditions precedent in Section 9.1 other than the condition set forth in section 9.1(a) may be waived in writing by the Debtors and, if applicable, the Oceangoing Equity Purchaser and the Newbuild Tanker Purchaser.  Without limitation, the Oceangoing Equity Purchaser and the Newbuild Tanker Purchaser, in its sole discretion, shall have the right to consent to any waiver under subsection (c), (d), (h), or (i) above.

9.3      *Effect of Failure of Conditions to Effective Date*.  Unless otherwise extended by the Debtors, if the Effective Date does not occur or if the Confirmation Order is vacated, (i) no distributions under the Plan shall be made, (ii) the Debtors and all holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iii) all the Debtors' obligations with respect to the Claims and the Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtors or otherwise.

## ARTICLE X

## EFFECT OF PLAN CONFIRMATION

10.1      *Binding Effect*.  Following the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtors, their Estates, all present and former Holders of Claims and Interests whether or not such Holders voted in favor of the Plan, and their respective successors and assigns.

10.2     *Revesting Of Assets*. Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estates (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in the Reorganized Debtors, free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders.  As of the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, and dispose of their property without supervision of the Bankruptcy Court, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

10.3     *Compromise And Settlement Of Claims, Interests And Controversies*. Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against or Interests in them and Causes of Action against other Persons.

10.4     *Releases And Related Matters*

(a)      **Releases by the Debtors**

**Pursuant to section 1123(b) of the Bankruptcy Code and to the extent allowed by applicable law, and except as otherwise specifically provided in the Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtors, the Reorganized Debtors, or the Estates have asserted or would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the Plan Supplement, the business or contractual**

arrangements between any Debtor, Reorganized Debtor, Estate or non-Debtor Affiliate and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or related agreements, instruments or other documents, or any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided, however* that nothing in this Section 10.4(a) shall be construed to release any party or entity from gross negligence, intentional fraud, willful misconduct, or criminal conduct, as determined by a Final Order of a court of competent jurisdiction.

(b)     Third-Party Releases by Holders of Claims or Interests

Except as otherwise provided in the Plan or the Plan Supplement, as of the Effective Date, each Holder of a Claim against or Interest in a Debtor, to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtors, the Reorganized Debtors, the Estates, and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative Claims assertable on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that such Person would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan or the Plan Supplement, the business or contractual arrangements between any Debtor, Reorganized Debtor, Estate or non-Debtor Affiliate and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event or other occurrence including or pertaining to the Debtors and taking place on or before the Effective Date, *provided, however* that nothing in this Section 10.4(b) shall be construed to release any party or entity from gross negligence, intentional fraud, willful misconduct, or criminal conduct, as determined by a Final Order of a court of competent jurisdiction; *provided further,* however, that this Section 10.4(b) shall not release the Debtors, the Reorganized Debtors), the Estates, or the Released Parties from any Cause of Action held by a governmental entity existing as of the Effective Date based on (i) the Internal Revenue Code or other domestic state, city, or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city, or municipality, (iii) any criminal laws of the United States or any domestic state, city, or municipality, (iv) the Securities and Exchange Act of 1934 (as now in effect or hereafter amended), the Securities Act, or other securities laws of the United States or any domestic state, city or municipality, (v) the Employee Retirement Income Security Act of 1974, as amended, or (vi) the laws and regulations of the Bureau of Customs and Border Protection of the United States Department of Homeland Security.

10.5   *Discharge. Of the Debtors*   Except Upon the Effective Date, the Debtors, and each of them, shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (i) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (iii) a Claim based upon such debt is or has been disallowed by order of the Bankruptcy Court, or (iv) the Holder of a Claim based upon such debt accepted this Plan.

(b)      As of the Effective Date, except as provided in this Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors any other or further Claims, debts, rights, Causes of Action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as provided in this Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim.

10.6   *Injunction*

**Except as provided in this Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, or liability that is released or discharged under this Article X are permanently enjoined from taking any of the following actions against the Debtors, the Reorganized Debtors, the Oceangoing Equity Purchaser, the Newbuild Tanker Purchaser, and their respective Affiliates or their property on account of any such released or discharged Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, or liability: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Lien or encumbrance; (d) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to any released Person; or (e) commencing or continuing any action, in each such case in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order.**

10.7   *Exculpation And Limitation Of Liability*

**None of the Released Parties shall have or incur any liability to any Entity, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the Disclosure Statement, the formulation, negotiation, or implementation of this Plan, the solicitation of acceptances of this Plan, the pursuit of Confirmation of this Plan, the Confirmation of this Plan, the consummation of this**

**Plan, or the administration of this Plan or the property to be distributed under this Plan, or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors;** *provided*, *however*, **that the foregoing provisions of this exculpation shall have no effect on the liability of any Released Party that results from any such act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted gross negligence or willful misconduct.  Nothing in this Plan shall affect the ability of the United States to pursue any non-Debtors to the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal tax liabilities owed by the Debtors or the Debtors' Estates.  Additionally, the United States may pursue police and regulatory actions or proceedings with respect to the Released Parties in the manner, and by the administrative or judicial tribunals, in which the United States could have pursued such actions or proceedings as if this bankruptcy had never been commenced.**

10.8    *Term Of Bankruptcy Injunction Or Stays*.  Except as provided otherwise in this Plan, from and after the entry of an order closing these chapter 11 cases, the automatic stay of section 362(a) of the Bankruptcy Code shall terminate.

10.9    *Post-Confirmation Date Retention Of Professionals*.  Upon the Confirmation Date, any requirement that professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate and the Reorganized Debtors will employ and pay professionals in the ordinary course of business.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1    *Retention of Jurisdiction*. Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction (unless otherwise indicated) over all matters arising in, arising out of, and/or related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    Resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(b)    Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date (which jurisdiction shall be non-exclusive as to any such non-core matters);

(c)    Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan, and all contracts (including the the Oceangoing Equity Purchase Agreement and the Newbuild Tanker Purchase

Agreement), instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

(d)    Resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to this Plan, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

(e)    Modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

(f)    Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under sections 330, 331, 503(b), and 1129(a)(4) of the Bankruptcy Code; *provided, however*, that from and after the Confirmation Date the payment of fees and expenses by the Reorganized Debtors, including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(g)    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation, or enforcement of this Plan or the Confirmation Order;

(h)    Adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

(i)    Resolve any cases, controversies, suits, or disputes that may arise in connection with General Unsecured Claims, including without limitation, the Bar Date, related notice, claim objections, allowance, disallowance, estimation and distribution;

(j)    Hear and determine Retained Actions by or on behalf of the Debtors or the Reorganized Debtors;

(k)    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or distributions pursuant to this Plan are enjoined or stayed;

(l)    Determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Oceangoing Equity Purchase Agreement, the Newbuild Tanker Purchase Agreement, the Confirmation Order, or any

contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, the Oceangoing Equity Purchase Agreement, the Newbuild Tanker Purchase Agreement, or the Confirmation Order;

(m)    Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases;

(n)    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code; and

(o)    Enter an order closing the Chapter 11 Cases.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1    *Payment Of Statutory Fees*.  All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on the earlier of when due or the Effective Date.

12.2    *Amendment Or Modification Of This Plan*.  Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtors reserve the right to alter, amend, or modify this Plan at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Plan.  A Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

12.3    *Substantial Consummation*.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

12.4    *Severability Of Plan Provisions*.  If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.5    *Successors And Assigns*.  This Plan shall be binding upon and inure to the benefit of the Debtors, and their respective successors and assigns, including, without limitation, the Reorganized Debtors.  The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

12.6    *Revocation, Withdrawal, Or Non-Consummation*.  The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization.  If the Debtors revoke or withdraw this Plan, or if Confirmation or consummation of this Plan does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Class of Claims), assumption of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (c) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors or any other Person.

12.7    *Dissolution of Creditors' Committee*.  On the Effective Date, the Creditors' Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided, however*, that after the Effective Date, the Creditors' Committee shall exist and its professionals shall continue to be retained and shall continue to be entitled to reasonable compensation by the Debtors without the need for further application to the Bankruptcy Court with respect to (a) all applications filed pursuant to sections 330 and 331 of the Bankruptcy Code and any related hearings; and (b) pending appeals of the Confirmation Order;  provided further, however, that the Bankruptcy Court shall retain jurisdiction with respect to any disputes over the reasonableness of fees.

12.8    *Governing Law*.  Except to the extend that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of law thereof.

12.9    *Time*.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.10    *Immediate Binding Effect.*  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Oceangoing Equity Purchaser, the Newbuild Tanker Purchaser, the holders of Claims and Interests,

51

the Released Parties, the Exculpated Parties, and each of their respective successors and assigns, including, without limitation, the Reorganized Debtors.

12.11 ***Entire Agreement.*** On the Effective Date, the Plan, the Plan Supplement, the Oceangoing Equity Purchase Agreement, the Newbuild Tanker Purchase Agreement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

12.12 ***Notice***. All notices, requests, and demands to or upon the Reorganized Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> TOISA LIMITED
> Attn: Richard Baldwin
> c/o Brokerage and Management
> 40 Wall Street
> New York, NY 10005
>
> and
>
> TOGUT, SEGAL & SEGAL LLP
> Albert Togut
> Frank A. Oswald
> Brian F. Moore
> Kyle J. Ortiz
> One Penn Plaza, Suite 3335
> New York, New York 10019
> Facsimile: (212) 967-4258
>
> Counsel for Debtors and Debtors in Possession

12.13 ***Exhibits***. All Exhibits to this Plan are incorporated and are a part of this Plan as if set forth in full herein.

12.14 ***Filing Of Additional Documents***. On or before substantial consummation of this Plan, the Debtors shall file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

12.15   *Conflicts*.  In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

Dated: August 15, 2017
         New York, New York

> TOISA LIMITED
> (for itself and on behalf of each of the other Debtors)

By:    */s/ Robert Hennebry*
         Name:  Robert Hennebry
         Title:    Chief Financial Officer