TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Kyle J. Ortiz
Brian F. Moore

*Counsel to the Debtors and
Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
: 
In re:                                            :   Chapter 11
:
TOISA LIMITED, *et al.*,                         :   Case No. 17-10184 (SCC)
:
Debtors.[1]                          :   (Jointly Administered)
:
x
------------------------------------------------------------

**DEBTORS' APPLICATION FOR ORDER APPROVING TERM SHEET UNDER
BANKRUPTCY CODE SECTIONS 105(a), 362 AND FED. R. BANKR. P. 9019**

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Toisa Limited and certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this application (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "9019 Order"), pursuant to sections 105(a) and 362 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") approving the Term Sheet by and

---

[1] The Debtors in these chapter 11 cases are as follows: Trade Prosperity, Inc.; Toisa Limited; United Courage, Inc.; Trade Vision, Inc.; United Journey, Inc.; United Kalavryta, Inc.; Trade Sky, Inc.; Trade Industrial Development Corporation; United Honor, Inc.; Trade Will, Inc.; United Leadership Inc.; United Seas, Inc.; United Dynamic, Inc.; United Emblem, Inc.; United Ideal Inc.; Trade Unity, Inc.; Trade Quest, Inc.; Trade Spirit, Inc.; Trade Resource, Inc.; United Ambassador, Inc.; Edgewater Offshore Shipping, Ltd.; United Banner, Inc.; Toisa Horizon, Inc.; and Trade and Transport Inc.

among Gregory Callimanopulos ("the Shareholder"), the Debtors, the members of the Informal Committee of Secured Lenders (the "Informal Committee")[2], and the Official Committee of Unsecured Creditors and its individual members (the "Creditors' Committee") (collectively, the "Parties"), which is attached to the 9019 Order as Exhibit 1 (the "Term Sheet").  In support of this Motion,[3] the Debtors rely upon and incorporate by reference the Declaration of Richard Baldwin (the "Declaration"), attached hereto as Exhibit B, and respectfully state:

## PRELIMINARY STATEMENT

The Parties have negotiated the terms of the Term Sheet, which includes a Form of Shareholder Release that will not become effective until the Plan Effective Date subject to the terms and conditions in the Term Sheet, to implement the agreements reached at a successful Mediation in London in early November 2017.  The terms memorializing the agreements reached among the Parties are the culmination of extensive dialogue and negotiations among them, facilitated by the Honorable James M. Peck, (ret.), as the Court-appointed Mediator.

The Debtors seek this Court's approval of, and authorization to enter into, the Term Sheet including its Form of Shareholder Release, which will be contained in a forthcoming chapter 11 plan, subject to the terms and conditions in the Term Sheet.  The Debtors believe that entry into the Term Sheet is in the best interest of their estates

---

[2] An Informal Committee has been formed consisting of the following lenders:  BNP Paribas S.A., Citibank Europe, plc UK Branch, Citibank N.A. London Branch, Commerzbank AG, Commonwealth Bank of Australia, Credit Agricole Corporate and Investment Bank, Danish Ship Finance A/S, DNB (UK) Limited, DVB Bank America N.V., Export-Import Bank of China, HSH Nordbank AG, ING Bank N.V., London Branch, National Bank of Greece S.A., Royal Bank of Scotland plc, and Unicredit Bank  AG.

[3] Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to these Chapter 11 Cases, is set forth in detail in the Proposed Disclosure Statement.

2

because it is an important step required before the Debtors can negotiate an exit from Chapter 11. Once the Term Sheet is approved, the Debtors will formulate, in good faith and subject to Bankruptcy Court approval, a chapter 11 plan on terms supported by its key creditors.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the "Amended Standing Order of Reference" for the Southern District of New York, dated January 31, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief requested herein is Bankruptcy Code sections 105(a). Such relief is also warranted pursuant to Bankruptcy Rule 9019.

## BACKGROUND

3. On January 29, 2017 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. The Debtors' chapter 11 cases (the "Chapter 11 Cases") have been consolidated for procedural purposes only and are being jointly administered.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5. On May 18, 2017, the United States Trustee for the Southern District of New York appointed the Creditors' Committee. No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

6. On August 15, 2017, the Debtors filed the *Joint Plan of Reorganization for Toisa Limited and Certain of Its Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*

3

[Docket No. 281] (the "Proposed Plan") and the accompanying *Disclosure Statement for the Joint Plan of Reorganization for Toisa Limited and Certain of Its Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 282]. At the time of the filing of the Proposed Plan, it was expected that the Proposed Plan would be modified and further refined.

7. On September 19, 2017, the Informal Committee provided the Debtors with a formal response to the Proposed Plan by a term sheet that provided for, among other things, the right of each secured vessel lender to credit bid for the vessel that secures such lender's vessel facility (the "Lender Response").

8. Notwithstanding the differences in the Proposed Plan and the Lender Response, the Parties agreed to continue to work toward a consensual plan of reorganization, and, therefore, determined that it was in their collective best interest to seek mediation.

9. On September 29, 2017, the Court entered its Mediation Order [Document No. 318] scheduling mediation (the "Mediation") to take place in London, England on November 2 and 3, 2017 [Docket No. 318]. In connection therewith, the hearing to consider approval of the Proposed Disclosure Statement was cancelled (*See* Notice of Cancellation, Docket No. 325).

10. Pursuant to the Mediation Order, the Honorable James Peck (ret.) was appointed as the Mediator.

11. At the formal Mediation sessions in London, a verbal agreement was reached that there would not be a Shareholder-sponsored plan, and the parties committed to working together toward a consensual plan. As reported to the Court at an omnibus hearing on November 8, 2017, the parties agreed to, among other things:

4

- extend the Debtors' exclusive period to solicit acceptances through November 30, 2017 (subsequently further extended through January 8, 2018);

- extend the Debtors' consensual use of cash collateral under each of the three final cash collateral orders entered in the Chapter 11 Cases through November 30, 2017 (subsequently further extended through January 8, 2018);  and

- the Debtors also agreed to make certain governance changes, including appointing three new independent directors to replace the current board of directors of Toisa Limited, and appointing Jonathan "Joff" Mitchell as Chief Restructuring Officer ("CRO").

12. Additionally, it was agreed that the Shareholder would be granted a release in exchange and consideration for the Shareholder's agreement to (i) facilitate the governance changes, (ii) facilitate the settlement, collection or recovery of any refunds on account of vessel construction contracts or account receivables, (iii) reasonably cooperate with the Toisa CRO to assist through the Plan Effective Date, available to, (iv) facilitate the proposed plan, and (v) other non-monetary contributions, cooperation and support to be provided by the Shareholder.

13. From the November 8, 2017 hearing through the filing of this Motion, the Parties have continued to negotiate the terms of the Term Sheet and Form of Shareholder Release to implement the agreement reached at the Mediation sessions in London. The Debtors thus seek this Court's approval of, and authorization to enter into, the Term Sheet, which includes the Form of Shareholder Release. The Debtors believe that entry into the Term Sheet is in the best interest of their estates.

**RELIEF REQUESTED**

14.     The Debtors request entry of the 9019 Order substantially in the form attached hereto as <u>Exhibit A</u>, (a) finding that the Term Sheet and Form of Shareholder Releases embodied in the Term Sheet have been entered into; (b) approving the Term Sheet and the Form of Shareholder Release therein to be implemented in, and effective upon the Plan Effective Date of, a Chapter 11 plan; and (c) granting such other relief as this Court deems just and proper.

**BASIS OF RELIEF REQUESTED**

15.     The Debtors' entry into, and approval of, the Term Sheet, including the Form of Shareholder Release, is appropriate under Bankruptcy Rule 9019.  Courts in this District have authorized debtors to enter into settlement agreements with reference to the settlement standards of Bankruptcy Rule 9019 where a critical component of the settlement, as here, requires the approval of the forms of releases that are to be implemented under a plan.  *See See In re Dewey & LeBoeuf LLP,* 478 B.R. 627, 64  (Bankr. S.D.N.Y 2012) (approving releases under Bankruptcy Rule 9019 that were to be implemented under subsequent Chapter 11 plan).

**I. THE TERM SHEET SHOULD BE
APPROVED UNDER BANKRUPTCY RULE 9019**

16.     Bankruptcy Rule 9019(a) authorizes a court, after notice and a hearing, to approve a compromise or settlement of a controversy, providing, in relevant part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Bankruptcy courts will generally approve a settlement pursuant to Rule 9019 if the settlement is in the best interest of the debtor's estate.  *See Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.),* 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  And

6

settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson ("TMT Trailer")*, 390 U.S. 414, 424 (1968) (quoting *Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106,130 (1939)); *see also In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (decision to accept or reject settlement lies within sound discretion of bankruptcy court).

17.    A court must determine that a settlement under Bankruptcy Rule 9019 is fair, equitable, and in the best interests of the estate before it may approve it. *TMT Trailer*, 390 U.S. 414, 424-25 (1968); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994); *In re Mrs. Weinberg's Kosher Foods, Inc.*, 278 B.R. 358, 365 (Bankr. S.D.N.Y. 2002); *In re MF Global Inc.*, Case No. 11–2790 2012 WL 3242533 at *5 (Bankr. S.D.N.Y. Aug 10, 2012).

18.    In doing so, the Court need not decide the numerous issues of law and fact raised by a compromise or settlement "but must only 'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" *In re Adelphia Commc'n. Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)). The Court need not "conduct a 'mini-trial'" but rather "only need be apprised of those facts that are necessary to enable it to evaluate the settlement and make a considered and independent judgment. *In re Adelphia*, 327 B.R. at 159.

19.    The decision to approve or deny a particular settlement involving a bankruptcy estate lies within the discretion of the bankruptcy court. *See In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Nellis v. Shugrue*, 165 B.R. 115, 122-23 (S.D.N.Y. 1994). A court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) (citing cases). And, in order to evaluate the

necessary facts, a court may rely on the opinion of the debtor, settlement parties and professionals. *See In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010); *See also In re MF Global Inc.*, Case No. 11–2790, 2012 WL 3242533 at *5 (Bankr. S.D.N.Y. Aug 10, 2012) (recognizing the business judgment of the debtor in recommending a settlement should be considered).

20.     Courts evaluate the following factors when considering whether to approve a settlement:

(a)   the balance between the litigation's possibility of success and the settlement's future benefits;

(b)   the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;

(c)   "the paramount interests of the creditors," including each affected class' relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement";

(d)   whether other parties in interest support the settlement;

(e)   the "competency and experience of counsel" supporting the settlement;

(f)   "the nature and breadth of releases to be obtained by officers and directors"; and

(g)   "the extent to which the settlement is the product of arm's length bargaining."

*See Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007).

21.     The Term Sheet meets each of the so-called *Iridium* factors and amply satisfy the *TMT Trailer* standards for approval of a settlement. The Term Sheet is fair and equitable and in the best interests of the estate because, together, it resolves on a consensual basis potential claims and causes of action assertable against Shareholder on terms well above the "lowest point in the range of reasonableness," since the agreement

8

will implement corporate governance changes and result in the installation of a CRO that will be a key step to formulating a feasible, consensual chapter 11 plan pursuant to which the Form of Shareholder Release will be implemented, subject to the terms and conditions of the Term Sheet.

    i.    <u>The Outcome of Litigation Is Uncertain While Settlement Benefits Are Substantial</u>

22.    The first *Iridium* factor reflects the Supreme Court's view that a court should form an "intelligent and objective opinion" of the probability of success in the underlying litigation and inherent costs of such litigation. *TMT Trailer*, 390 U.S. at 424.

23.    There was a concern by some creditors that there may have been funds improperly transferred by the Shareholder through the Debtors and the non-Debtor affiliates. At the urging of the Informal Committee and the Creditors' Committee, Zolfo Cooper was retained, in part, as the Debtors' Bankruptcy Consultants and Special Financial Advisors to review the transactions with non-Debtor affiliates, and to provide a full and complete accounting and reconciliation of all cash receipts, disbursements, and transfers of the Debtors' cash with respect to the Debtors and their non-Debtor management companies from August 31, 2016 through June 30, 2017. During the process of preparing this report, Zolfo Cooper did not find evidence of misappropriation of cash by the Shareholder or the Debtors. The Debtors agree with the Zolfo Cooper findings and are not aware of any colorable claims that could be successfully asserted against the Shareholder on such grounds. *See* Declaration, ¶4.

24.    Annually, the Debtors would typically declare a dividend to be paid to the Shareholder based on the company's financial performance. The Debtors evaluated the annual dividend paid (either directly or indirectly) to the Shareholder by Toisa Limited on or about May 31, 2016, in an amount totaling $20 million (the "<u>Dividend</u>"). The

9

Debtors have assessed and evaluated the Dividend, as well as the significant defenses and counterclaims that would likely preclude a meaningful recovery, if any, on account of the otherwise duly-declared Dividend, based upon potential claims or causes of action for actual or constructive fraudulent transfers or conveyances under Sections 544 and 548 of the Bankruptcy Code or other applicable law.

25.     Accordingly, the Debtors have concluded that they will not pursue any such claims for the Dividend, or any other claims set forth in the term sheet (subject to the usual exceptions for causes of action arising out of or related to any act or omissions that constitute gross negligence, fraud, willful misconduct or criminal conduct), in light of the Shareholder's agreement to facilitate the reorganization or liquidation of the Debtors in the Chapter 11 Cases and provide other non-monetary contributions, cooperation and support, including the terms of the Term Sheet which, *inter alia*, will allow for the Debtors to reconstitute the Toisa Limited Board, and, in turn, allow for the appointment of Joff Mitchell as CRO with the support of the members of the Informal Committee.  *See* Declaration, ¶¶ 5-6.

26.     Additionally, in exchange for the duly-negotiated release of claims set forth in the Form of Shareholder Release, the Shareholder has and will continue to facilitate the settlement, collection and recovery of any refunds on account of vessel construction contracts or account receivables and otherwise cooperate as required by the terms of the Term Sheet.  Most notably, the Debtors believe Shareholder has made a very considerable contribution for the benefit of the Debtors' estate in obtaining the valuable settlement (the "HHI Settlement") with Hyundai Heavy Industries Co., Ltd ("HHI"), which is currently pending before the Court for approval.  *See Debtors' Application For Entry Of An Order Approving Settlement Agreement With Hyundai Heavy Industries Co., Ltd.* [Docket No. 403].  Pursuant to the HHI Settlement, the Debtors have

resolved an alleged multi-million dollar claim against the estate on account of a vessel construction contract with HHI, and recovered $42.5 million on the counterclaim, without the need for additional arbitration proceedings or litigation. The Shareholder has also facilitated a structured settlement between the Debtors and Constructora Subacuática Diavaz, S.A. de C.V. ("Diavaz"), a former charter counterparty of the Debtors, which, if approved by the Court, will result in the Debtors' recovery of an approximate $20.4 million receivable over a term of years. *See* Declaration, ¶ 7.

27.     For these reasons, pursuing claims against the Shareholder would involve significant and complex issues of fact and law, all of which carry significant litigation risk (to all parties).

28.     Accordingly, the Debtors have, in consultation with their counsel and financial advisors, made a well-considered business judgment to release certain claims, if any, against the Shareholder. With new and independent corporate governance and a CRO in place, the Debtors have determined the Term Sheet, including the Form of Shareholder Release, to be in the best interests of their estates and will provide a path forward to efficiently conclude the Debtors' Chapter 11 Cases, without the considerable cost, delay and uncertainty if the Shareholder claims were fully investigated and litigated. *See* Declaration, ¶8.

      ii.     The Alternative Is Years of Complex, Costly Litigation

29.     In evaluating the reasonableness of a settlement, a court should "form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *TMT Trailer*, 390 U.S. at 424.

30. Clearly, any litigation over the potential claims against the Shareholder would be highly contentious, drawn-out and costly, especially with the involvement of highly sophisticated and able counsel and advisors. Thus, the alternative would be years of expensive and protracted litigation. Insolvency would be a threshold issue for certain fraudulent conveyance claims. Proving insolvency would be expensive and vigorously contested. Indeed, at the time of the annual distribution, the Debtors believed that they were solvent.

    iii.    <u>The Term Sheet Has Widespread Support</u>

31. It appears that virtually every constituency in the Debtors' Chapter 11 Cases supports the Term Sheet. Significantly, the members of the Informal Committee and the Creditors' Committee, which is a fiduciary body charged with representing the interests of all of the Debtors' unsecured creditors, are supportive of the Term Sheet. The Term Sheet was developed over many weeks of intense negotiations among the Parties with the assistance of the Mediator. The result of these negotiations, with the assistance of the Mediator, is a comprehensive settlement that is fair, equitable, and in the best interests of the estate. *See* Declaration, ¶9.

32. The Informal Committee and its counsel have agreed to obtain confirming emails from each of the lenders represented by the Informal Committee, who are creditors of the Debtors, prior to any hearing in this application. Until all such lenders provide such email confirmations, the Debtors will not prosecute this Motion and will adjourn it, pending receipt of such email confirmations.

    iv.    <u>The Term Sheet Is Supported By Highly Skilled Counsel and Advisors</u>

33. The Parties have been represented by skilled and experienced bankruptcy practitioners during the negotiations to get to the Term Sheet, which further supports approval of the settlement. Courts have given this factor considerable weight. *See In re*

*Adelphia*, 327 B.R. at 164; *see also In re Chemtura Corp.,* 439 B.R. at 608 ("No argument has been made, nor could any argument be made that counsel who put the Settlement together were anything less than highly skilled in their craft . . . ."). If the Term Sheet is not approved, these same skilled attorneys will zealously represent their clients to pursue any and all claims and causes of action against the Shareholder and the Debtors.

    v.    <u>Nature and Breadth of Releases Are Proper</u>

34. The Form of Shareholder Release embodied in the Term Sheet is appropriate and an integral part of the comprehensive resolution of the claims and corporate governance resolution achieved by the Term Sheet.

35. The Form of Shareholder Release is an integral part of the Term Sheet. Without the release, the Shareholder would not have entered into the Term Sheet. *See* Declaration, ¶10.

36. With respect to the release being given by the Debtors to the Shareholder, all Debtor claims, including derivative claims, accrue to the debtor in possession upon the filing of bankruptcy, and the debtor in possession is "vested with the power to settle the estate's claims." *Police & Fire Retirement System v. Ambac Fin. Group (In re Ambac Fin. Group, Inc.)*, 2011 WL 6844533 at *2 (S.D.N.Y. Dec. 29, 2011) (quoting *Smart World Techs., LLC v. Juno Online Servs., Inc.,* 423 F.3d 166, 175 (2d Cir. 2005)). Therefore, the Debtors' release will only reach claims or causes of action that are either: (i) property of the Debtors' estates, or (ii) derivative of a right asssertable by, or belonging to, the Debtors. "State law determines which claims belong to the estate, and hence, can be asserted by the trustee." *Goldin v. Primavera Familienstiftugn, et al. (In re Granite Partners, L.P.)*, 194 B.R. 318, 324 (Bankr. S.D.N.Y. 1996) (citing cases); *see also St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989). If, under state law, a cause of action belongs to the estate, the trustee has the exclusive standing to assert it. *See Granite*

13

*Partners*, 194 B.R. at 324-25 (enjoining an action to prosecute waste, mismanagement and breach of fiduciary duty); *see also iXL Enters. v. GE Capital Corp.*, 167 Fed. Appx. 824, 826 (2d Cir. 2006) (allowing a debtor to be substituted as plaintiff of an existing pre-petition derivative action because such a claim was property of the debtor's estate).

37. Thus, the scope of the release is proper here because it could only apply to claims that belong to the bankruptcy estate, or are derivative of claims belonging to the estate -- all claims that the Debtors have the exclusive standing to assert. *See, e.g., Fox v. Picard (In re Madoff )*, 848 F.Supp.2d 469, 481 (S.D.N.Y. 2012) ("[A] bankruptcy court may enjoin actions that are derivative or duplicative of claims brought by the trustee, or that could have been brought by the trustee in the first instance."); *In re The 1031 Tax Group, LLC,* 397 B.R. 670, 680-81 (Bankr. S.D.N.Y. 2008) (holding that derivative claims are property of the estate); *In re Mrs. Weinberg's Kosher Foods, Inc.*, 278 B.R. 358, 365 (Bankr. S.D.N.Y. 2002) (holding that, in approving a settlement, a bankruptcy court "may enjoin creditors from prosecuting the settled claims derivatively in another court"). With respect to the release being given by members of the Informal Committee and the Creditors Committee to the Shareholder, that release is consensual and will not take effect until the Plan Effective Date, subject to the terms and conditions in the Term Sheet. Therefore, that release should be approved.

    vi.    <u>The Term Sheet Is the Product of Arm's Length Bargaining</u>

38. The Term Sheet is indisputably the product of good-faith, arm's length negotiations that took place over the last nine weeks since the London Mediation involving various representatives of, and advisors to, the Parties. *See* Declaration, ¶11. Ultimately, the Term Sheet represents concessions by all of the Parties, is the result of extensive negotiations by parties with competing economic interests, and was not the result of fraud or collusion. *See In re Chemtura Corp.*, 439 B.R. at 608 ("Finally, I find that

14

the Settlement was truly the product of arms-length bargaining, and not fraud or collusion.").

## NOTICE

39.  Notice of this Motion and has been given to (a) the United States Trustee; (b) counsel for the Informal Committee; (c) the Debtors' prepetition lenders; (d) counsel for the Creditors' Committee; (e) all parties in interest under Bankruptcy Rule 2002; and (f) any other party entitled to notice pursuant to Local Bankruptcy Rule 9013-1(b) and which has filed a notice of appearance in these Chapter 11 Cases (collectively, the "Notice Parties").  The Debtors submit that no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the 9019 Order substantially in the form attached hereto as Exhibit A granting the relief requested herein, and such other and further relief as may be just and proper.

Dated:   New York, New York
              December 31, 2017

> TOISA LIMITED, *et al.*,
> *Debtors and Debtors in Possession*
> By Their Counsel
> TOGUT, SEGAL & SEGAL LLP,
> By:
>
> /s/ *Albert Togut*
> ALBERT TOGUT
> FRANK A. OSWALD
> KYLE J. ORTIZ
> BRIAN F. MOORE
> One Penn Plaza, Suite 3335
> New York, New York  10119
> (212) 594-5000

15