Hearing Date: March 29, 2018 at 2:00 p.m. ET
Objection Deadline: March 22, 2018 at 4:00 p.m. ET

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
Suite 3335
New York, New York  10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Kyle J. Ortiz
Brian F. Moore

*Counsel to the Debtors and*
 *Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x
: 
In re: : Chapter 11
 : 
TOISA LIMITED, *et al.*, : Case No. 17-10184 (SCC)
 : 
            Debtors.[1] : (Jointly Administered)
 : 
--------------------------------------------------------x

**DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING
THE RETENTION AND EMPLOYMENT OF H. CLARKSON & COMPANY
AS BROKER FOR THE DEBTORS *NUNC PRO TUNC* TO FEBRUARY 26, 2018**

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Toisa Limited ("Toisa"), and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby submit this application (the "Application") for entry of an order, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*.

---

[1] The Debtors in these Chapter 11 Cases are as follows:  Trade Prosperity, Inc.;  Toisa Limited;  United Courage, Inc.;  Trade Vision, Inc.;  United Journey, Inc.;  United Kalavryta, Inc.;  Trade Sky, Inc.;  Trade Industrial Development Corporation;  United Honor, Inc.;  Trade Will, Inc.;  United Leadership Inc.;  United Seas, Inc.;  United Dynamic, Inc.;  United Emblem, Inc.;  United Ideal Inc.;  Trade Unity, Inc.;  Trade Quest, Inc.;  Trade Spirit, Inc.;  Trade Resource, Inc.;  United Ambassador, Inc.;  Edgewater Offshore Shipping, Ltd.;  United Banner, Inc.;  Toisa Horizon, Inc.;  and Trade and Transport Inc.

(the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), substantially in the form attached hereto as Exhibit A (the "Proposed Order") authorizing the retention and employment of H. Clarkson & Company Limited ("Clarkson") as broker for the Debtors *nunc pro tunc* to February 26, 2018. In support of this Application, the Debtors rely upon the Declaration of Philip Harding, a Director of Clarkson, attached hereto as Exhibit B (the "Harding Declaration"), which is incorporated herein by reference, and respectfully state:

## JURISDICTION

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule 2014-1.

## BACKGROUND

2. The Debtors are a diversified shipping business hauling both wet goods with their fleet of tankers and dry goods with their fleet of bulkers. The Debtors also own a fleet of offshore oil support vessels that provide marine transportation, construction and support services to companies in the oil and gas industry that conduct offshore exploration, production, and subsea construction activities. The Debtors have also serviced the subsea fiber optic cable installation market. The Debtors' current fleet consists of twenty-six (26) offshore oil service vessels, thirteen (13) tankers, and seven (7) bulkers. Currently, substantially all of the Debtors' offshore fleet is laid up in drydock.

2

3.  On January 29, 2017 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  The Debtors' chapter 11 cases (the "Chapter 11 Cases") have been consolidated for procedural purposes only and are being jointly administered.

4.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.  On May 18, 2017, the United States Trustee for the Southern District of New York appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee").  No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

6.  An Informal Committee of Secured Lenders (the "Informal Committee" and each member of the Informal Committee, a "Secured Lender") was formed consisting of the following lenders:  BNP Paribas S.A.;  Citibank Europe plc UK Branch;  Citibank N.A. London Branch;  Commerzbank AG;  Commonwealth Bank of Australia;  Credit Agricole Corporate and Investment Bank;  Danish Ship Finance A/S;  DNB (UK) Limited;  DVB Bank America N.V.;  Export-Import Bank of China;  HSH Nordbank AG;  ING Bank N.V., London Branch;  National Bank of Greece S.A.;  Royal Bank of Scotland plc;  and Unicredit Bank AG.

7.  Upon the request of the Debtors, the Creditors' Committee and the Informal Committee, on September 29, 2017, the Bankruptcy Court entered an Order [Docket No. 318] (the "Mediation Order") scheduling mediation (the "Mediation") to take place in London, England on November 2 and 3, 2017 regarding the Debtors'

restructuring plan. Pursuant to the Mediation Order, the Honorable James Peck (ret.) was appointed as mediator (the "Mediator").

8. At the formal Mediation sessions in London (the "London Mediation Sessions"), an agreement was reached whereby the chapter 11 plan filed with the Court on August 15, 2017 and sponsored by the ultimate beneficial owner of each of the Debtors, Gregory Callimanopulos (the "Shareholder") would not be pursued and instead the Shareholder would, among other things, resign from the Debtors board and relinquish control over the Debtors. The parties agreed, among other things, to make certain governance changes, including appointing three new independent directors to replace the board of directors of Toisa, and appointing Jonathan "Joff" Mitchell of Zolfo Cooper Management, LLC ("ZC") as Chief Restructuring Officer ("CRO").

9. On December 31, 2017, the Debtors filed a motion seeking approval of a term sheet memorializing the agreements reached at the London Mediation Sessions [Docket No. 416] (the "9019 Motion"). An Order approving the 9019 Motion was entered on January 22, 2018 (the "9019 Order"). *See* Docket No. 457.

10. On January 31, 2018, the Debtors filed a notice confirming that the corporate governance changes pursuant to the 9019 Order had been implemented. *See* Docket No. 466.

11. On March 2, 2018, the Bankruptcy Court entered an Order expanding the scope of ZC's retention to authorize the Debtors to designate John "Jason" Keyes as the Debtors' Chief Financial Officer ("CFO").

12. In furtherance of the Debtors' restructuring efforts, the Debtors, in consultation with the Informal Committee and the Creditors' Committee, determined that the sale of their tankers and bulkers (collectively, the "Vessels"), as well as the assignment of the contracts for the purchase of six (6) tankers currently under

construction (collectively, the "Newbuild Contracts") are in the best interests of their estates and provides the best chance for maximizing the value of the Vessels and Newbuild Contracts. The Debtors believe that there is substantial equity in some of the Vessels, which will be recovered for the benefit of creditors through a strategic and robust marketing and sale process aided by experienced and internationally known shipping broker, Clarkson. Accordingly, the Debtors filed this Motion seeking to retain Clarkson as their shipbroker to facilitate the Debtors' efforts to market and sell the Vessels and assign the Newbuild Contracts, and to maximize the value obtained for same.

## FACTS SPECIFIC TO RELIEF REQUESTED

### I.    The Debtors' Selection of Clarkson as their Shipbroker

13.    The Debtors obtained proposals from seven (7) experienced shipbrokers; all well known in the industry. In selecting Clarkson as their proposed broker, the Debtors considered each broker's: (i) estimated timing to sell the Vessels; (ii) recommended scope and procedures for marketing the Vessels; (iii) estimated valuation of the Debtors' fleet; (iv) experience providing services in the context of a chapter 11 case; and (v) fee structure. Clarkson provided the Debtors with, in their business judgment, the best proposal including a highly favorable fee. Clarkson began working with the Debtors to, among other things, formulate a marketing and sale process, on February 26, 2018.

### II.    Clarkson's Qualifications

14.    Clarkson, which has been in the shipping business since 1852, is a leading provider of integrated shipping services, including the new-building, sale and purchase, chartering and financing of all types of vessels. Clarkson has experienced

5

brokers in 48 offices around the world and has long-standing shipping connections and contacts throughout the world's main shipping companies and shipyards.

15. In addition, Clarkson has experience providing shipbroking services in the chapter 11 context in this district, as well as others. Specifically, Clarkson was retained as a broker in the chapter 11 cases of: *In re Primorsk International Shipping Limited*, Case No. 16-10073 (MG) (Bankr. S.D.N.Y.); *In re TMT Procurement Corp.*, Case No. 13-33763 (Bankr. S.D. Tex.).

16. Based on the foregoing, the Debtors believe that Clarkson is well-qualified and able to efficiently provide the requested brokerage services with respect to the Debtors' Vessels and Newbuild Contracts. Moreover, the Debtors shared all of the proposals received with the Informal Committee (whose Secured Lenders hold first liens on and security interests in the Vessels and the vessels to be constructed pursuant to the Newbuild Contracts), which supports the Debtors' selection of Clarkson. The Creditors' Committee likewise supports the engagement of Clarkson.

### III. Services to be Provided

17. Pursuant to the terms of the proposed engagement letter, substantially in the form attached to the Harding Declaration as <u>Exhibit 1</u> (the "<u>Engagement Letter</u>")[2] to be entered into between Clarkson and the Debtors following this Court's approval of Clarkson's retention, Clarkson shall render the following professional services, which include but are not limited to:

  i. identify potential purchasers of the Vessels and the Newbuild Contracts;

 ii. assist potential purchasers regarding inspections of the Vessels and their records and the ships being constructed pursuant to the Newbuild Contracts;

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

    iii. assist in negotiating the terms and conditions of each PSA;

    iv. assist with the provision of documentation for delivery of the Vessels and the Newbuild Contracts and with regard to the closing of the sale of the Vessels and the Newbuild Contracts;

    v. provide expert testimony, both oral and via declaration, as requested by the Debtors from time to time, regarding the sale of the Vessels and the Newbuild Contracts, as well as prepare expert reports from time to time in connection with same; and

    vi. create a virtual data room with information for each Vessel and Newbuild Contract that is typically requested in shipping sale and purchase transactions.

    18. Clarkson will provide the services described above on an exclusive basis until September 15, 2018 (or such longer period as may be required to complete the services, as requested by the Debtors) (the "Period").

    19. Clarkson has begun to work with the Debtors to establish a data room (the "Data Room"), which will contain information for each Vessel and Newbuild Contract to assist interested parties in formulating bids, including, among other things, descriptions of the Vessels, Vessel drawings, class survey status, schedule updates, last cargoes and other customary data.[3] Clarkson will grant prospective purchasers access to the Data Room upon, among other things, the prospective purchaser's delivery of a customary non-disclosure agreement regarding the information contained in the Data Room. Additionally, Clarkson has been tracking Vessel itineraries to ascertain the best locations for prospective purchasers to physically inspect each of the Vessels, and it will arrange for third party inspections for each Vessel so prospective purchasers who cannot perform their own inspection will have an independent report on which they can consult in making a bid.

---

[3] Counsel for the Creditors' Committee and the Secured Lenders will be provided access to the Data Room.

7

20. Once Clarkson's retention is approved, it will begin to place solicitations for offers in appropriate periodicals and trade publications, such as Tradewinds and Lloyd's List. Additionally, Clarkson will transmit bidding information to its vast network of over 500 companies that Clarkson has identified as potentially having an interest in acquiring all or some of the Vessels and/or Newbuild Contracts. Clarkson will track all expressions of interest received and will provide regular updates to, and respond to requests for information by the Debtors, the Informal Committee, the Creditors' Committee, and the lender for the owner of the applicable Vessel or Newbuild Contract.

### IV.  Compensation

21. Subject to Bankruptcy Court approval, the Debtors have agreed to pay Clarkson a fee (the "Fee") upon the closing of the sale of each Vessel and assignment of each Newbuild Contract equal to one-half of a percent (0.5%) of the cash purchase price payable by the relevant buyer in accordance with the terms of the relevant PSA for each Vessel and Newbuild Contract; *provided, however*, that, in the case of a credit bid by an existing Secured Lender, Clarkson will not receive a Fee for such credit bid sale unless the applicable Secured Lender resells the applicable Vessel or Newbuild Contract within three (3) months of closing on its credit bid to a buyer that was (i) introduced by or referred to Clarkson on or before February 28, 2019 or (ii) participated in the sale process for which Clarkson is being engaged herein, in which case, Clarkson will be entitled to a Fee from the relevant credit bidder equal to one half of one percent (0.5%) of the applicable credit bid.

22. Additionally, Clarkson will be entitled to reimbursement by the Debtors for the cost of any advertisements and any other related costs to facilitate the marketing or sale of the Vessels and assignment of the Newbuild Contracts, as agreed

8

and approved by Toisa, pursuant to a budget to be provided by Clarkson, as well as all relevant travel, hotel and reasonable expenses of any person designated to provide expert testimony or other evidence regarding the performance of Clarkson's services or the implementation of any agreement for the sale of a Vessel or Newbuild Contract. All costs of any inspections of any Vessel or vessel subject to a Newbuild Contract shall be the responsibility of the potential purchaser that requests such inspection. Clarkson will not receive any additional compensation in exchange for providing expert testimony. It will, however, be reimbursed for its relevant expenses, as noted above.

23. As more fully described in the Harding Declaration, because of the commission-based structure of Clarkson's fee, and the nature of the services to be provided by Clarkson, the Debtors request that Clarkson be relieved of the obligation to maintain time records (which it does not maintain in the usual course of its business). Furthermore, the Debtors request that the Proposed Order provide that the Fee shall be paid, with notice to the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), the Creditors' Committee and each of the Debtors' prepetition secured lenders, as an administrative expense without further order of the Bankruptcy Court, which parties will have ten (10) business days to object to payment of any Fee to Clarkson.

24. The Debtors believe that, based on the proposals received, the Fee is less than the commissions generally charged by shipbrokers of similar stature for comparable engagements.

25. The Debtors, with Clarkson's assistance and in consultation with the Informal Committee and the Creditors' Committee, are crafting procedures for the sale of the Vessels and assignment of the Newbuild Contracts, which procedures will be

9

designed to maximize the value obtained expeditiously. The Debtors anticipate that they will file a motion to approve such sale procedures in the near term for consideration at the March 29, 2018 omnibus hearing.

### V.      Disinterestedness

26.    To the best of the Debtors' knowledge, and as described in the Harding Declaration, Clarkson: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not represent any person or entity having an interest adverse to the Debtors in connection with these Chapter 11 Cases; (c) does not hold or represent an interest adverse to the Debtors' estates with respect to matters on which Clarkson is employed; and (d) has no connection to the Debtors, their creditors or any other party-in-interest, except as disclosed in the Harding Declaration.

27.    Clarkson will promptly review its files against any updated list of Interested Parties (as defined in the Harding Declaration) received from the Debtors from time to time during the pendency of these Chapter 11 Cases pursuant to the procedures described in the Harding Declaration. To the extent any new relevant facts or relationships are discovered or arise in the course of such review, Clarkson will promptly make additional disclosure to the Bankruptcy Court as required by Bankruptcy Rule 2014(a).

### V.      Indemnification Provisions

28.    As a material part of the consideration for which Clarkson has agreed to provide the services described herein, the Debtors have agreed to the indemnification provisions in sections 10.1 and 10.2 of the Terms and Conditions attached to the Engagement Letter as Exhibit 1. All requests of Clarkson for payment of indemnity pursuant to the Engagement Letter will be made by means of an application (interim or final as the case may be) and served upon each Secured Lender and other

parties in interest; *provided*, *however*, that in no event shall Clarkson be indemnified from any liability, loss, costs, or claim that is found by the Bankruptcy Court to be the result of Broker's fraud or fraudulent misrepresentation, knowing or willful violation of law, willful misconduct, breach of fiduciary duty, self-dealing, bad faith or gross negligence. All parties' rights to object to any request of Clarkson for payment of indemnity pursuant to the Engagement Letter shall be preserved.

29. Additionally, while the Engagement Letter does not limit Clarkson's liability for direct losses, Clarkson is not liable for indirect or consequential damages.

30. The Debtors and Clarkson submit that the indemnification provisions are customary and reasonable for professional engagements and reflect the qualifications and limitations on indemnification provisions that are customary in this district (including in these cases) and other jurisdictions. *See, e.g.*, *In re Pacific Drilling S.A.*, Case No. 17-13193 (MEW) (Feb. 26, 2018); *In re Toisa Limited*, Case No. 17-10184 (SCC) (Apr. 21, 2017); *In re Chaparral Energy, Inc.*, Case No. 16-11144 (Bankr. D. Del. June 10, 2016); *In re SunEdison, Inc.* Case No. 16-10992 (SMB) (May 5, 2016); *In re Primorsk International Shipping Limited*, Case No. 16-10073 (MG) (Bankr. S.D.N.Y. Apr. 20, 2016); *In re Energy & Exp. Partners, Inc.*, Case No. 15-44931 (Bankr. N.D. Tex. Feb. 8, 2016); *In re Energy Future Holdings Corp.*, Case No. 14-10979 (Bankr. D. Del. Sept. 16, 2014); *In re FAH Liquidating Corp. (Fisker Automotive)*, Case No. 13-13087 (Bankr. D. Del. March 31, 2014); *In re Synagro Technologies, Inc.*, Case No. 13-11041 (Bankr. D. Del. May 23, 2013); *In re Ormet Corp.*, Case No. 13-10334 (Bankr. D. Del. Apr. 18, 2013); *In re Otelco Inc.*, Case No. 13-10593 (Bankr. D. Del. Apr. 18, 2013); *In re RDA Holding Co.*, Case No. 13-22233 (Bankr. S.D.N.Y. Mar. 25, 2013); *In re Sbarro, Inc.*, No. 11-11527 (SCC) (Bankr. S.D.N.Y. May 5, 2011); *In re Great Atlantic & Pacific Tea Co.*, No. 10-24549 (RDD)

11

(Bankr. S.D.N.Y. Jan. 13, 2011); *In re CIT Group Inc.*, Case No. 09-16565 (Bankr. S.D.N.Y. Nov. 24, 2009); *In re General Motors Corp.*, Case No. 09-50026 (Bankr. S.D.N.Y. Oct. 28, 2009); *In re Motors Liquidation Co. (f/k/a Gen. Motors Corp.)*, No. 09-50026 (REG) (Bankr. S.D.N.Y. June 25, 2009); *In re Lyondell Chem. Co.*, Case No. 09-10023 (Bankr. S.D.N.Y. Feb. 25, 2009); *In re Bally Total Fitness of Greater New York, Inc.*, No. 08-14818 (BRL) (Bankr. S.D.N.Y. Jan. 28, 2009).

31.     The terms and conditions of the Engagement Letter, including the indemnification provisions, were negotiated by the Debtors and Clarkson at arms' length and in good faith. The Debtors respectfully submit that the indemnification provisions reflected in the Engagement Letter are customary and, viewed in conjunction with the other terms of Clarkson's proposed retention, are reasonable terms of consideration for shipbroking services such as those provided by Clarkson.

## RELIEF REQUESTED

32.     By this Application, the Debtors request entry of an order authorizing the Debtors to retain and employ Clarkson as their broker in connection with these Chapter 11 Cases effective *nunc pro tunc* to February 26, 2018.

## BASIS FOR RELIEF

33.     The Debtors seek to retain Clarkson as their broker pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to Bankruptcy Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

34.    Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

35.    Based on the facts and for the reasons stated herein and in the Harding Declaration, the retention of Clarkson as broker for the Debtors pursuant to this Application is reasonable, necessary and appropriate, and satisfies the requirements of sections 327 and 328 of the Bankruptcy Code and Bankruptcy Rule 2014(a). The Debtors respectfully submit that the relief requested in this Application will facilitate the Debtors' restructuring efforts through the efficient sale of the Vessels and assignment of the Newbuild Contracts, is in the best interests of the Debtors and their estates and stakeholders, and should be approved by the Bankruptcy Court.

## *NUNC PRO TUNC* RETENTION

36.    The Debtors respectfully submit that Clarkson's retention effective *nunc pro tunc* to February 26, 2018 is warranted so that Clarkson may be compensated for its services performed prior to this Court's entry of an order authorizing Clarkson's retention and employment, such as in connection with formulating a marketing strategy, negotiating the terms of engagement and the like. Such relief is warranted by the circumstances presented by these Chapter 11 Cases and the services that Clarkson is to provide, particularly in light of the Debtors' recent decision to employ Clarkson as

13

broker for the Debtors, and the prompt filing of this Application following the finalization of the engagement terms.

## **NOTICE**

37. Notice of this Motion and has been given to (a) the United States Trustee; (b) counsel for the Informal Committee; (c) the Debtors' prepetition lenders; (d) counsel for the Creditors' Committee; and (e) any other party entitled to notice pursuant to Local Bankruptcy Rule 9013-1(b) and which has filed a notice of appearance in these Chapter 11 Cases. The Debtors submit that no other or further notice need be provided.

## **NO PRIOR REQUEST**

38. No prior application for the relief sought herein has been made to this or any other court.

*"Concluded on Following Page"*

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Debtors respectfully request that the Bankruptcy Court (a) enter the Proposed Order substantially in the form attached hereto as <u>Exhibit A</u> and (b) grant such other and further relief as is just and proper.

DATED:  New York, New York
March 15, 2018

TOGUT, SEGAL & SEGAL LLP,
*Counsel to the Debtors and Debtors in Possession*
TOISA LIMITED, *et al.*,
By:

/s/*Frank A. Oswald*
ALBERT TOGUT
FRANK A. OSWALD
KYLE J. ORTIZ
BRIAN F. MOORE
One Penn Plaza, Suite 3335
New York, New York  10119
(212) 594-5000