## Brokerage Agreement
("**Agreement**")

This Agreement is made on this 15th day of May 2018 by and between:

1.  **TOISA LIMITED**, a company organized and existing under the laws of Bermuda and having its principal place of business at Clarendon House, 2 Church Street, Hamilton, Bermuda ("**TOISA**"), on behalf of itself, Affiliate Trade & Transport, Inc. and each of TOISA's Affiliates that owns an Asset (as defined below)  (each a "**Debtor Subsidiary**" and together with TOISA, the "**Debtors**") with Chapter 11 cases (collectively, the "**Chapter 11 Cases**") pending in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") (Case No. 17-10184 (SCC)); and

2.  **H. CLARKSON & COMPANY LIMITED,** a company organized and existing under the laws of England and having its registered address at Commodity Quay, St Katharine Docks, London, E1W 1BF ("**Clarksons**") on behalf of itself and its Affiliates;

(together, the "**Parties**"; each a "**Party**")

**FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE PARTIES AGREE AS FOLLOWS:**

1.  **DEFINITIONS AND INTERPRETATION**

1.1  In this Agreement:

"**Affiliate**" of any person means any other person (individual or body corporate) that directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such person (together, the "**Affiliates**");

"**Asset**" means a Vessel;

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York;

"**control**" (including the terms "controls", "controlled by" and "under common control with") means the possession, direct or indirect, of the power to direct or cause the direction of the management, policies or activities of a person, whether through the ownership of securities, by contract or agency or otherwise;

"**Fee**" has the meaning given to it in Clause 2.5 below;

"**Order**" means an order or judgment of a court of competent jurisdiction.

"**Person**" means any individual, entity, partnership, limited partnership, firm, trust, body corporate, company, corporation, government, governmental body, agency or instrumentality, unincorporated body of persons or association;

"**Period**" means the period from the date hereof until [December 15, 2018] (or such longer period as may be required to complete the Services, as requested by the Debtors) during which the Services shall be provided on an exclusive basis by Clarksons to the Debtors;

"**PSA**" means a binding agreement or agreements in relation to the sale of each of the Assets, either on a vessel-by-vessel basis or "en bloc" (whether all or groupings of Vessels), by TOISA, and/or its relevant Debtor Subsidiary/Subsidiaries on terms and conditions agreed and executed between any of TOISA, or its relevant Debtor Subsidiary/Subsidiaries and a potential buyer or buyers, in each case reasonably acceptable to the applicable Secured Lender;

"**Secured Lender**" means a lender that provided financing to a Debtor, and such financing (i) is the basis for the secured claim held by such secured lender against a Debtor, and (ii) is secured by collateral including, but not limited to, a Vessel;

"**Services**" has the meaning given to it in clause 2.2;

"**Terms and Conditions**" means the Broking Terms of Business attached to this Agreement as Schedule 1;

"**Vessel**" means each and any of the following ships plus any additional ships subject to Clause 2.7 of this Agreement (together, the "**Vessels**"), to be sold by TOISA or the relevant Affiliate of TOISA as sellers:

1. the "Toisa Proteus" built 2002 having IMO number 9582477
2. the "Toisa Perseus" built 1998 having IMO number 9171852
3. the "Toisa Independent" built 2003 having IMO number 9255957
4. the "Toisa Pisces" built 1997 having IMO number 9139074
5. the "Toisa Conqueror" built 2001 having IMO number 9237694
6. the "Toisa Intrepid" built 1998 having IMO number 9169744
7. the "Toisa Invincible" built 1998 having IMO number 9169756
8. the "Toisa Coral" built 1999 having IMO number 9182057
9. the "Toisa Crest" built 1999 having IMO number 9182215

## 2.    SERVICES AND FEES

**2.1**    In relation to the sale of the Assets, the Debtors shall use the Services of Clarksons exclusively during the Period, unless its Services are terminated in accordance with this Agreement, and shall appoint no other broker or agent world-wide in that regard

nor shall any of the Debtors seek to effect any contract of any nature whatsoever relating to the Assets directly or through another of TOISA's Affiliates other than through Clarksons.  The Debtors shall also during the Period refer to Clarksons any interested parties, including other brokers, who may make direct or indirect contact with TOISA or TOISA's relevant Affiliates relating to the purchase of the Assets and shall similarly request the Secured Lenders to make like referrals.

**2.2**    In relation to the intended sale of the Assets, Clarksons shall provide the following services (the "**Services**") to TOISA and its relevant Affiliates during the Period:

    i.    identify potential purchasers of the Assets;

    ii.    assist potential purchasers regarding inspections of the Vessels and their records;

    iii.    assist in negotiating the terms and conditions of each PSA;

    iv.    assist with the provision of documentation for delivery of the Assets and with regard to the closing of the sale of the Assets;  and

    v.    provide expert testimony, both oral and via declaration, as requested by the Debtors from time to time, regarding the sale of the Assets, as well as prepare expert reports as requested by the Debtors from time to time in connection with same;  and

    vi.    create a virtual data room with information for each Asset that is typically requested in shipping sale and purchase transactions.

Clarksons shall use commercially reasonable efforts to (i) assist the Debtors to enter into PSAs in relation to all of the Assets and close the sale of all of the Assets within the Period and (ii) arrange for the preparation and distribution of all relevant marketing materials.

In connection with providing the above-referenced Services, Clarksons shall maintain a record of every person or entity that expresses an interest in acquiring one or more Assets or otherwise responds to any marketing materials distributed by Clarksons in connection with the Services, including the status of Clarksons' communications with such person or entity (the "**Tracker**");[1]  *provided*, *however*, that Clarksons shall use its reasonable best efforts to engage any person or entity referred to Clarksons by a Secured Lender in the sale process for which Clarksons is being retained herein. Clarksons shall distribute a copy of the most recently updated Tracker to the Debtors, counsel for the Informal Committee of Secured Lenders, counsel for the Official

---

[1]    The Tracker shall be deemed to include the Affiliates of all such persons or entities listed thereon for the purpose of determining whether Clarkson is entitled to a Fee following the sale of an Asset.

Committee of Unsecured Creditors and counsel for each of the Secured Lenders on a weekly basis and within a reasonable time following any such party's request for same.

Clarksons shall not be entitled to any Fee following termination of this Agreement unless the relevant buyer of one or more of the Assets shall have been listed on the Tracker on or before [December 15, 2018] and a PSA for the sale of such Asset(s) shall have been entered into on or before [May 28, 2019], in which case Clarksons shall be entitled to the relevant Fee from the relevant sale proceeds as set forth in clause 2.5 below in relation to such sale.

2.3    Following any termination, Clarksons shall have no further obligations, other than the obligation to furnish to the Debtors a list of all interested purchasers Clarksons introduced regarding any Asset(s), which includes a copy of the most recently updated Tracker. In particular, without limitation, Clarksons shall not be obliged to inform TOISA and TOISA's relevant Affiliates about any circumstances or events known to them which may be relevant in the context of the intended sale of the Asset by TOISA and its relevant Affiliates to a purchaser introduced by Clarksons or otherwise. Clarksons undertakes to provide the Services during the Period in accordance with the Terms and Conditions solely as an independent contractor and not an agent, partner, coventurer, member or Affiliate of TOISA or its Affiliates (as the case may be) and shall not hold itself out as, or conduct any act or omission that could give rise to a finding under any applicable law that Clarksons is, an agent, partner, coventurer, member or Affiliate of TOISA or its Affiliates. Nothing in this Agreement shall constitute, or be deemed to constitute, a partnership or a joint venture between the Parties and their Affiliates nor, shall it constitute, or be deemed to constitute an agency of any other Party and their Affiliates for any purpose.

2.4    Clarksons shall use commercially reasonable efforts to assist the Debtors with implementation of the PSAs and the Debtors shall fully co-operate with Clarksons as regards the conclusion of the sale of the Assets and the implementation of the PSA.

2.5    The Debtors shall procure that Clarksons shall be paid by TOISA or the relevant Debtor Subsidiary a commission (a "**Fee**") upon the closing of the sale of the Asset owned by TOISA or the relevant Debtor Subsidiary of one per cent (1.0%) of the cash purchase price[2] as per the relevant PSA for each Asset; provided, however, that, in the case of a credit bid by a Secured Lender, no fee will be payable on that sale by TOISA or the relevant Debtor Subsidiary or the applicable Secured Lender.  A credit bid shall mean a bid by an existing Secured Lender, or its assignee, consisting solely of all or part of the indebtedness secured by the relevant Asset and related assets and any funds held in the account of TOISA or the relevant Debtor Subsidiary on which a Secured Lender

---

[2]    For the purpose of calculating Clarksons' Fee, the term "cash purchase price" shall mean the total consideration being provided in exchange for an Asset, except where such Asset is sold pursuant to a credit bid, as such term is defined further below in Clause 2.5, in which case no Fee shall be payable.

has a lien or security interest.  In the event that a credit bidder resells the Asset within three months following the closing of the sale, to a purchaser listed on the Tracker, as described in the preceding sentence, Clarksons shall be entitled to a Fee from the credit bidder equal to one percent (1.0%) of the applicable credit bid.

The Fee shall be payable solely[3] from the cash proceeds of the sale of the relevant Asset within ten (10) banking days in London following the satisfaction of each of the following conditions:  (i) the closing under the relevant PSA;  (ii) the issuance of the relevant Bankruptcy Court Order approving the sale;  and (iii) the Debtors' receipt of Clarksons' respective invoice.

**2.6**   It is to be understood that the terms and conditions (including contract price) of any sale of an Asset shall be reasonably acceptable to the applicable Secured Lender and considered and accepted by TOISA at its sole discretion on behalf of the other Debtors and the Debtor Subsidiaries and TOISA shall not be obliged to accept to sell any Asset to any particular potential buyer.

2.7   Solely with the prior written consent of the applicable Secured Lender, TOISA or the relevant Debtor Subsidiary may add ships to the definition of the terms "Vessel" and "Vessels" as set forth herein by providing written notice to Clarksons of such additional ships.  Each applicable Secured Lender may, in its sole and absolute discretion, direct TOISA or the relevant Debtor Subsidiary to add a ship or ships to the definition of the terms "Vessel" and "Vessels" as set forth herein by providing written notice to Clarksons of such additional ships.  Clarksons shall provide the Services with respect to such additional Vessels on the terms and conditions set forth in this Agreement.  TOISA or the relevant Debtor Subsidiary shall provide written notice of any additional ships that become "Vessels" pursuant to this section 2.7 to counsel to the Informal Committee of Secured Lenders and the Official Committee of Unsecured Creditors.

**3.**   **MISCELLANEOUS**

**3.1**   This Agreement shall become effective upon the date of entry of an Order of the Bankruptcy Court approving its terms.

**3.2**   TOISA, on behalf of itself and the other Debtors, shall use its reasonable best efforts to keep all information provided by Clarksons pursuant to this Agreement strictly private and confidential (including but not limited to the Tracker), except that the Debtors shall be permitted to disclose information (including the Tracker) from time to time about the sale of an Asset to the applicable Secured Lender (including its legal and

---

[3]   In the event that cash proceeds of the sale of the relevant Vessel are insufficient to satisfy the full Fee that may be due to Clarksons, the Fee shall be capped by the amount of such cash proceeds. For the avoidance of doubt, and unless specifically provided for in Clause 2.5, a Secured Lender shall not be responsible for the payment of any portion of a Fee.

financial advisors) that holds the security interest in the Asset, legal and financial advisors of the Debtors (as the case may be), or as may be required by the Bankruptcy Court or any regulatory body. Clarksons understands a copy of this Agreement (including the Terms) will be annexed to a motion, filed with the Bankruptcy Court, seeking to approve its terms.

3.3    Clarksons, on behalf of itself and its Affiliates, undertakes that all information provided by or on behalf of the Debtors under this Agreement shall be kept strictly private and confidential except if specifically permitted by TOISA to be disclosed to third parties for the purpose of performing the Services; *provided*, *however*, that Clarksons shall be permitted to disclose information from time to time about the sale of an Asset to the applicable Secured Lender (including its legal and financial advisors) that holds the security interest in the applicable Asset.

3.4    In the event that any request is made for provision of testimony or witness statement or other evidence regarding the performance of the Services or the implementation of any PSA as referred to in paragraph v of clause 2.2 above, the same shall be provided without any personal liability on the part of the persons within Clarksons or its Affiliates providing the same to the extent permitted by applicable law and the Debtors shall be responsible for all relevant travel, hotel and reasonable expenses of the person or persons within Clarksons providing such testimony or witness statement or other evidence and shall procure such further indemnities and disclaimers as Clarksons may reasonably require.  For the avoidance of doubt, Clarksons' provision during the Period of testimony or witness statement or other evidence regarding the performance of the Services or the implementation of any PSA will not entitle Clarksons to any additional compensation (aside from being reimbursed for expenses incurred in connection therewith, as described herein).

3.5    Any other travel for Clarksons person or persons requested by the Debtors shall be for the expense of the Debtors and allocated to the appropriate Debtor Subsidiary, where applicable, and, where not applicable, will be allocated to all of the Debtors in the same manner as allocations for professional fees and expenses already in place under the cash collateral orders entered in these cases.

3.6    The cost of any advertisements, third party inspections and divers' inspections requested by the Debtors to facilitate the marketing or sale of the Assets, as agreed and approved by TOISA (in consultation with counsel to the Informal Committee, Cadwalader, Wickersham and Taft LLP, the Informal Committee's financial advisors, AMA Capital Partners LLC, and counsel to the Official Committee of Unsecured Creditors, Sheppard, Mullin, Richter & Hampton LLP, and with such approval not to be unreasonably delayed or withheld), pursuant to a budget to be provided by Clarksons, shall be for the expense of the Debtors and allocated to the appropriate Debtor Subsidiary, where applicable, and, where not applicable, will be allocated to all of the Debtors in the same manner as allocations for professional fees and expenses already in place under the cash collateral orders entered in these cases.  All costs of any

inspections requested by a potential purchaser of any Vessel shall be the responsibility of the potential purchaser that requests such inspection.

**3.7**   The Debtors shall use their best efforts to procure the full co-operation and assistance of the Secured Lenders, Sealion Shipping, Ltd., Sealion Do Brasil Navegacao Ltda and Trade and Transport, London in relation to the performance of the Services.

**3.8**   This Agreement and any dispute arising out of or in connection herewith shall be governed by and construed in accordance with the laws of New York without giving effect to any conflicts of laws provisions thereof. The Bankruptcy Court shall have exclusive jurisdiction over this Agreement and any disputes that may arise therefrom.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement in duplicate on the date first above written.

**TOISA LTD**
on behalf of itself and the Debtor Subsidiaries

**H. CLARKSON & COMPANY LTD**
on behalf of itself and its Affiliates

By:   _____

By:   _____

Name:   Jonathan Mitchell

Name:  Philip Harding

Title:   Chief Restructuring Officer

Title:   Director