**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————x
:
In re:                                                    :          Chapter 11
:
:          Case No. 17-10184 (SCC)
TOISA LIMITED, *et al.*,                                  :
:          (Jointly Administered)
Debtors.[1]                                               :
:
———————————————————————x

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
## ORDER CONFIRMING THIRD AMENDED JOINT PLAN
## OF LIQUIDATION FOR TOISA LIMITED AND CERTAIN OF ITS
## AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**WHEREAS**, Toisa Limited, on behalf of itself and its affiliated debtors, as

debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the

"Debtors"), as "proponents of the plan" within the meaning of section 1129 of title 11 of the

United States Code (the "Bankruptcy Code"), filed the *Second Amended Joint Plan of*

*Liquidation for Toisa Limited and Certain of its Affiliates Pursuant to Chapter 11 of the*

*Bankruptcy Code*, dated January 18, 2019 [Docket No. 1015] (the "Second Amended Plan," and

as amended, modified, or supplemented from time to time, the "Plan")[2] and the *Disclosure*

*Statement for the Second Amended Joint Plan of Liquidation for Toisa Limited and Certain of its*

---

[1]    The Debtors in these chapter 11 cases are as follows:  Trade Prosperity, Inc.;  Toisa Limited;  United Courage, Inc.;  Trade Vision, Inc.;  United Journey, Inc.;  United Kalavryta, Inc.;  Trade Sky, Inc.;  Trade Industrial Development Corporation;  United Honor, Inc.;  Trade Will, Inc.;  United Leadership Inc.;  United Seas, Inc.;  United Dynamic, Inc.;  United Emblem, Inc.;  United Ideal Inc.;  Trade Unity, Inc.;  Trade Quest, Inc.;  Trade Spirit, Inc.;  Trade Resource, Inc.;  United Ambassador, Inc.;  Edgewater Offshore Shipping, Ltd.;  United Banner, Inc.;  Toisa Horizon, Inc.;  and Trade and Transport Inc.

[2]    Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in (a) the Plan, a copy of which is annexed hereto as Exhibit A, or (b) the *Debtors' Memorandum of Law in Support of Confirmation of Third Amended Joint Plan of Liquidation for Toisa Limited and Certain of its Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, dated March 12, 2019, as applicable.  Any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

*Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, dated January 18, 2019 [Docket No. 1017] (the "Disclosure Statement");

**WHEREAS**, on January 24, 2019, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered the *Order Approving (I) the Disclosure Statement for the Second Amended Joint Plan of Liquidation for Toisa Limited and Certain of its Affiliates; (II) the Form and Manner of the Disclosure Statement Hearing Notice; (III) Certain Key Dates Relating to Confirmation of the Plan; (IV) Procedures for Solicitation; (V) Forms of Ballots and Notices; (VI) Procedures for Tabulation of Votes; and (VII) Procedures for Notice of the Confirmation Hearing and Objections to Confirmation of the Plan* [Docket No. 1027] (the "Disclosure Statement Order"), which, among other things, (i) approved the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (ii) established March 14, 2019 as the date for the commencement of the hearing to consider confirmation of the Plan (the "Confirmation Hearing"), (iii) approved the form and method of notice of the Confirmation Hearing (the "Confirmation Hearing Notice"), and (iv) established certain procedures for soliciting and tabulating votes with respect to the Plan;

**WHEREAS**, on January 24, 2019, the Debtors filed (i) the solicitation version of the Plan [Docket No. 1028], and (ii) the solicitation version of the Disclosure Statement [Docket No. 1029];

**WHEREAS**, the Confirmation Hearing Notice and all other notices, Ballots, and documents to be served in connection with the Confirmation Hearing, voting on the Plan, and all related matters (collectively, the "Solicitation Packages") were served as set forth in the *Affidavit of Service of Andrew Henchen*, sworn to on February 6, 2019 [Docket No. 1050] (the "KCC Affidavit") and the *Supplemental Affidavit of Service of Andrew Henchen*, sworn to on February

13, 2019 [Docket No. 1060] (the "Supplemental KCC Affidavit," and together with the KCC Affidavit, the "Solicitation Affidavits");

**WHEREAS**, on February 19, 2019, the *Certifications of Publication of Notice of Hearing to Consider Confirmation of, and Deadline for Objecting to, the Joint Plan of Liquidation of Toisa Limited and Certain of its Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1065] (the "Publication Affidavit") was filed, evidencing publication of the Confirmation Hearing Notice on February 8, 2019 in the *Wall Street Journal* and *Tradewinds*;

**WHEREAS**, on February 22, 2019, the Debtors filed the *Plan Supplement In Connection with the Debtors' Second Amended Joint Plan of Liquidation for Toisa Limited and Certain of its Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1078] (as amended, modified, or supplemented from time to time, the "Plan Supplement");

**WHEREAS**, on March 1, 2019, the Debtors filed the *First Amended Solicitation Version of the Second Amended Joint Plan of Liquidation for Toisa Limited and Certain of its Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1087];

**WHEREAS**, on March 5, 2019, an objection to confirmation of the Plan was filed by the United States Trustee [Docket No. 1093];

**WHEREAS**, on March 12, 2019, the Debtors filed the *Third Amended Joint Plan of Liquidation for Toisa Limited and Certain of its Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1111];

**WHEREAS,** on March 12, 2019, the Debtors filed the *Notice of Filing of Exhibit 1 and 2 to the Third Amended Joint Plan of Liquidation for Toisa Limited and Certain of its Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. 1113];

**WHEREAS**, on March 12, 2019, the Debtors filed the *Debtors' Memorandum of Law in Support of Confirmation of Third Amended Joint Plan of Liquidation for Toisa Limited and Certain of its Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1114] (the "Confirmation Brief");

**WHEREAS**, on March 12, 2019, the Debtors filed the *Declaration of Jonathan Mitchell in Support of Confirmation of Third Amended Joint Plan of Liquidation for Toisa Limited and Certain of its Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1115]  (the "Mitchell Declaration");

**WHEREAS**, on March 12, 2019, the Debtors filed the *Declaration of John James O'Connell III in Support of Confirmation of Third Amended Joint Plan of Liquidation for Toisa Limited and Certain of its Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1116]  (the "O'Connell Declaration");

**WHEREAS**, on March 13, 2019, the *Certification of P. Joseph Morrow IV with Respect to the Tabulation of Votes of the Second Amended Joint Plan of Liquidation for Tisa Limited and Certain of its Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1117] (the "Voting Certification") was filed;

**WHEREAS**, on March 13, 2019, the Debtors filed the *Supplemental Notice of Filing of Plan Supplement In Connection with the Debtors' Third Amended Joint Plan of Liquidation for Toisa Limited and Certain of its Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1121];

**WHEREAS,** the Confirmation Hearing was held on March 14, 2019;

**NOW, THEREFORE**, based on the Mitchell Declaration, the O'Connell Declaration, the record of the Confirmation Hearing, including all the evidence proffered or adduced, and the arguments of counsel made, at the Confirmation Hearing, and the entire record

of the Chapter 11 Cases; and after due deliberation thereon and sufficient cause appearing

therefor,

FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS HEREBY FOUND AND DETERMINED THAT:**

**A.      Findings of Fact and Conclusions of Law.**

1.      The findings and conclusions set forth herein, together with the findings of

fact and conclusions of law set forth in the record of the Confirmation Hearing, constitute the

Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made

applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the

following findings of fact constitute conclusions of law, they are adopted as such.  To the extent

any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.      Exclusive Jurisdiction;  Venue;  Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).**

2.      The Court has jurisdiction over the Chapter 11 Cases pursuant to

28 U.S.C. §§ 157 and 1334.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  Confirmation

of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the Court has

exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of

the Bankruptcy Code and should be confirmed.

**C.      Commencement and Administration of the Chapter 11 Cases.**

3.      On January 29, 2017 (the "Petition Date"), each Debtor commenced with

this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors were

authorized to continue to operate their businesses and manage their properties as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On May 18, 2017,

the Office of the United States Trustee for the Southern District of New York (the "U.S.

Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee"). On June

12, 2017, the U.S. Trustee filed an amended Notice of Appointment of Official Committee of Unsecured Creditors [Docket No. 199]. No trustee, examiner, or committee of equity holders has been appointed in these Chapter 11 Cases. The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

**D.      Burden of Proof.**

4.      The Debtors have satisfied their burden of proving by a preponderance of the evidence that the Plan satisfies the requirements of section 1129(a) and (b) of the Bankruptcy Code.

**E.      Transmittal and Mailing of Materials;  Notice.**

5.      The Solicitation Packages, which were transmitted and served as set forth in the Solicitation Affidavits, have been transmitted and served in compliance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Such transmittal and service were adequate and sufficient, and no other or further notice is or shall be required. The Debtors' publication of the Confirmation Hearing Notice as set forth in the Affidavit of Publication complies with the Disclosure Statement Order and applicable law.

**F.      Voting.**

6.      Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and industry practice.

**G.      Plan Supplement.**

7.      The Plan Supplement, and the filing and notice of such documents, complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations, and no other or further notice is or shall be required.

**H.    Bankruptcy Rule 3016(a).**

8.    In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the proponents of the Plan.

**Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

**I.    Plan Compliance with Bankruptcy Code – 11 U.S.C. § 1129(a)(1).**

9.    The Plan complies with all applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

**J.    Proper Classification – 11 U.S.C. §§ 1122, 1123(a)(1).**

10.    Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Secured Lenders' Superpriorty Claims need not be classified.  For all other claims, the Plan designates thirty-three (33) Classes of Claims and Interests.  The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such classification does not unfairly discriminate between Holders of Claims and Interests.  Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**K.    Specified Unimpaired Classes – 11 U.S.C. § 1123(a)(2).**

11.    Article III of the Plan specifies that Class 1 (Other Priority Claims), Class 8 (Existing Danish Ship Tanker Secured Claims), Class 9 (Existing ING Bulker Secured Claims), and Class 10 (Existing Danish Ship Bulker Secured Claims) are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

**L.    Specified Treatment of Impaired Classes – 11 U.S.C. § 1123(a)(3).**

12.    Article III of the Plan designates Class 2 (Existing Citi Tanker Secured Claims), Class 3 (Existing Commerzbank I Secured Claims), Class 4 (Existing Commerzbank II

Secured Claims), Class 5 (Existing Credit Agricole Tanker Secured Claims), Class 6 (Existing

NBG Secured Claims), Class 7 (Existing DNB Tanker Secured Claims), Class 11 (Secured

Lenders' SPV Deficiency Claims), Class 12 (Existing DVB Guarantee Claim), Class 13

(Existing Danish Ship Offshore Guarantee Secured Claims), Class 14 (Existing Citizens I

Secured Claims), Class 15 (Existing Citi Offshore Secured Claims), Class 16 (Existing Citizens

II Secured Claims), Class 17 (Existing Commonwealth Bank of Australia Secured Claims), Class

18 (Existing DNB Offshore Secured Claims), Class 19 (Existing ING Offshore Secured Claims),

Class 20 (Existing Wells Fargo Secured Claims), Class 21 (Existing BNP Secured Claims), Class

22 (Existing Credit Agricole Offshore Secured Claims), Class 23 (Existing Danish Ship Offshore

Secured Claims), Class 24 (Existing DVB Secured Claims), Class 25 (Newbuild Tanker Credit

Facility Secured Claims), Class 26 (G550 Airplane Credit Facility Claims), Class 27 (Secured

Lenders' Toisa GUCs), Class 28 (T&T General Unsecured Claims), Class 29 (Class 29 General

Unsecured Claims), Class 30 (Personal Injury Claims), Class 31 (Intercompany Claims), Class

32 (Interests in Toisa), and Class 33 (Intercompany Interests in Other Debtors) as Impaired and

specifies the treatment of Claims and Interests in such Classes, thereby satisfying section

1123(a)(3) of the Bankruptcy Code.

**M.**     **No Discrimination – 11 U.S.C. § 1123(a)(4).**

13.     The Plan provides for the same treatment of each Claim or Interest in each

respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable

treatment of its Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

**N.**     **Implementation of Plan – 11 U.S.C. § 1123(a)(5).**

14.     The Plan and the various documents and agreements referred to therein or

set forth in the Plan Supplement provide adequate and proper means for the Plan's

implementation, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

**O.      Nonvoting Equity Securities – 11 U.S.C. § 1123(a)(6).**

15.      The Plan is a liquidating plan and does not provide for the issuance of equity or other securities by the Debtors.   Accordingly, the requirements of section 1123(a)(6) do not apply to the Plan.

**P.      Selection of Officers, Directors, or Trustees – 11 U.S.C. § 1123(a)(7).**

16.      The Plan Supplement and Section 5.9 of the Plan contain provisions with respect to the selection of director and officers of Post-Effective Toisa that are consistent with the interests of creditors, equity security holders, and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

**Q.      Impairment/Unimpairment of Classes of Claims and Equity Interests – 11 U.S.C.   § 1123(b)(1).**

17.      Pursuant to section 1123(b)(1) of the Bankruptcy Code, Classes 1, 8, 9 and 10 are Unimpaired under the Plan.  Classes 2, 3, 4, 5, 6, 7, 11, 12, 13, 14, 15, 16 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, and 33 are Impaired under the Plan.

**R.      Assumption and Rejection of Executory Contracts and Unexpired Leases – 11 U.S.C. § 1123(b)(2).**

18.      Article VIII of the Plan governing the assumption and rejection of Executory Contracts and Unexpired Leases satisfies the requirements of section 365 of the Bankruptcy Code and, accordingly, the requirements of section 1123(b)(2) of the Bankruptcy Code.

**S.      Settlement of Claims and Causes of Action – 11 U.S.C. § 1123(b)(3).**

19.      The Plan provides for an allocation of assets among Holders of Allowed Existing SPV Secured Tanker Claims, Existing SPV Oversecured Claims, Secured Lenders' SPV Deficiency Claims, the Secured Lenders' Superpriority Claims, Existing DVB Guarantee Claim, Toisa Credit Facility Claims, Newbuild Tanker Credit Facility Secured Claims, Secured

Lenders' Toisa GUCs, T&T General Unsecured Claims, and Class 29 General Unsecured Claims for Distribution purposes (the "Global Settlement"). The Global Settlement reflects the joint determination by the Debtors, Creditors' Committee, and the Secured Lenders that there are risks to each party if the legal and factual issues among them are fully litigated. To avoid the costs and delay associated with that litigation, a compromise on those issues is appropriate and in the best interest of all stakeholders.   Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan, including the releases set forth in section 10.4 of the Plan, constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.   The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, including the releases set forth in section 10.4 of the Plan, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.

20.    Retained Causes of Action.   In accordance and compliance with section 1123(b)(3)(B) of the Bankruptcy Code, other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in this Plan or by a Bankruptcy Court order, the Debtors reserve any and all Causes of Action of the Debtors and such Causes of Action are retained under the Plan.

**T.**     **Modification of Rights – 11 U.S.C. § 1123(b)(5).**

21.    In accordance and compliance with section 1123(b)(5) of the Bankruptcy
Code, the Plan properly modifies the rights of Holders of Claims as set forth in Article III of the
Plan.

**U.**     **Additional Plan Provisions – 11 U.S.C. § 1123(b)(6).**

22.    The provisions of the Plan are appropriate and consistent with the
applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the
Bankruptcy Code.  The failure to specifically address a provision of the Bankruptcy Code in this
Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

**V.**     **Debtors Are Not Individuals – 11 U.S.C. § 1123(c).**

23.    The Debtors are not individuals and, accordingly, section 1123(c) of the
Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**W.**     **Cure of Defaults – 11 U.S.C. § 1123(d).**

24.    Section 8.4 of the Plan provides for the satisfaction of cure amounts
associated with each Executory Contract to be assumed pursuant to the Plan in accordance with
section 365(b)(1) of the Bankruptcy Code.   All cure amounts are in accordance with the
underlying agreements and applicable bankruptcy and nonbankruptcy law.   Thus, the Plan
complies with section 1123(d) of the Bankruptcy Code.

**X.**     **Debtors' Compliance with Bankruptcy Code – 11 U.S.C. § 1129(a)(2).**

25.    The Debtors have complied with the applicable provisions of the
Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically:

a.     the Debtors are proper debtors under section 109 of the Bankruptcy Code;

b.     the Debtors have complied with applicable provisions of the Bankruptcy
Code, except as otherwise provided or permitted by orders of this Court;
and

c.    the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order in transmitting the Disclosure Statement, the Plan, the Ballots, and related documents and notices and in soliciting and tabulating votes on the Plan.

**Y.    Plan Proposed in Good Faith – 11 U.S.C. § 1129(a)(3).**

26.    The Debtors have proposed the Plan and all other agreements, documents, and instruments necessary to effectuate the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement and the hearings thereon, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.  The Plan, the Plan Supplement, and other agreements and documents contemplated thereby are based upon extensive, arms'-length negotiations by and among representatives of the Debtors, the Debtors' prepetition secured lenders, the Informal Committee, and the Creditors' Committee.  Thus, the Plan satisfies section 1129(a)(3) of the Bankruptcy Code.

**Z.    Payments for Services or Costs and Expenses – 11 U.S.C. § 1129(a)(4).**

27.    Any payment made or to be made by any of the Debtors for services or for costs and expenses incurred prior to the Effective Date in connection with these Chapter 11 Cases, or in connection with the Plan and incidental to these Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

**AA.    Directors, Officers, and Insiders – 11 U.S.C. § 1129(a)(5).**

28.    Upon and following the Effective Date, Alan Jacobs will be the director and an officer of Post-Effective Toisa, and Jonathan Mitchell and Jason Keyes will continue to be officers of Post-Effective Toisa. The identity and affiliation of the proposed director and officers of Post-Effective Toisa after confirmation of the Plan have been disclosed, and the

appointment to such offices of such persons is consistent with the interests of Holders of Claims

and Interests and with public policy.  The Debtors have complied with section 1129(a)(5) of the

Bankruptcy Code.

**BB.     No Rate Changes – 11 U.S.C. § 1129(a)(6).**

29.     As the Debtors are not charging rates that are the subject of any regulatory

commission jurisdiction, section 1129(a)(6) of the Bankruptcy Code is inapplicable in these

Chapter 11 Cases.

**CC.     Best Interests of Creditors – 11 U.S.C. § 1129(a)(7).**

30.     The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.   The

Disclosure Statement, the Mitchell Declaration, O'Connell Declaration, the Voting Certification,

and the other evidence proffered or adduced at the Confirmation Hearing (a) is persuasive and

credible, (b) has not been controverted by other evidence, and (c) establishes that each Holder of

an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the

Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is

not less than the amount such Holder would receive or retain if the Debtors were liquidated

under chapter 7 of the Bankruptcy Code on such date.

**DD.     Acceptance by Certain Classes – 11 U.S.C. § 1129(a)(8).**

31.     Class 1 (Other Priority Claims), Class 8 (Existing Danish Ship Tanker

Secured Claims), Class 9 (Existing ING Bulker Secured Claims), and Class 10 (Existing Danish

Ship Bulker Secured Claims) are Unimpaired under the Plan and are deemed to have accepted

the Plan pursuant to section 1126(f) of the Bankruptcy Code.  All Voting Classes (as defined in

the Voting Certification), except Class 29 (General Unsecured Claims) as to Debtor Toisa, have

voted to accept the Plan in accordance with sections 1126(c) and (d) of the Bankruptcy Code.

Classes 11 (Secured Lenders' SPV Deficiency Claims), Class 12 (Existing DVB Guarantee

Claim), Class 27 (Secured Lenders' Toisa GUCs), Class 28 (T&T General Unsecured Claims), and Class 31 (Intercompany Claims) are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Nevertheless, the Plan is confirmable under section 1129(b) of the Bankruptcy Code.

**EE. Treatment of Administrative Claims, Priority Tax Claims, Professional Fee Claims, and Other Priority Claims – 11 U.S.C. § 1129(a)(9).**

32.    The treatment of Administrative Claims, Priority Tax Claims, and Professional Fee Claims satisfies the requirements of sections 1129(a)(9)(A), (C), and (D) of the Bankruptcy Code, as applicable.    The treatment of Other Priority Claims satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code.    On the Effective Date, the Debtors will have sufficient Cash to pay Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims, and to fund the Professional Fee Escrow Account. Pursuant to section 9.2(h) of the Plan, no reserve is required to be established for any Priority Tax Claim, because, notwithstanding any language in the Plan or herein to the contrary, there are no Priority Tax Claims, Allowed or otherwise, against the Debtors in these Chapter 11 Cases as of the date hereof.    Any recovery on account of any tax liability is limited to distributions solely out of the General Unsecured Claims Distribution Reserve.

**FF. Acceptance by Impaired Classes – 11 U.S.C. § 1129(a)(10).**

33.    All Voting Classes, except Class 29 (General Unsecured Claims) as to Debtor Toisa, have voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

**GG.    Feasibility – 11 U.S.C. § 1129(a)(11).**

34.    The Disclosure Statement, the Mitchell Declaration, the O'Connell Declaration and the other evidence proffered or adduced at the Confirmation Hearing (a) is persuasive and credible, (b) has not been controverted by other evidence, and (c) establishes that the Debtors will have sufficient funds to administer and consummate the Plan and to close the Chapter 11 Cases, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

**HH.    Payment of Statutory Fees – 11 U.S.C. § 1129(a)(12).**

35.    Pursuant to Section 12.1 of the Plan, all fees payable under section 1930 of chapter 123 of title 28 of the United States Code will be paid as required.  Thus, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**II.    Benefit Plans – 11 U.S.C. § 1129(a)(13).**

36.    The Debtors do not have retiree benefit obligations within the meaning of section 1129(a)(13) of the Bankruptcy Code.  Thus, section 1129(a)(13) is inapplicable in these Chapter 11 Cases.

**JJ.    Domestic Support Obligations – 11 U.S.C. § 1129(a)(14).**

37.    The Debtors are not required by a judicial or administrative order, or by statute, to pay any domestic support obligations, and therefore, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**KK.    The Debtors Are Not Individuals – 11 U.S.C. § 1129(a)(15).**

38.    The Debtors are not individuals, and therefore, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**LL.      No Applicable Nonbankruptcy Law Regarding Transfers – 11 U.S.C. § 1129(a)(16).**

39.    Each of the Debtors that is a corporation is a moneyed, business, or commercial corporation or trust, and therefore, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**MM.   Only One Plan – 11 U.S.C. § 1129(c).**

40.    Because the Plan is the only chapter 11 plan filed in these Chapter 11 Cases, the Plan satisfies section 1129(c) of the Bankruptcy Code.

**NN.    Principal Purpose of the Plan – 11 U.S.C. § 1129(d).**

41.    Because the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, the Plan satisfies section 1129(d) of the Bankruptcy Code.

**OO.    Small Business Case – 11 U.S.C. § 1129(e).**

42.    None of these Chapter 11 Cases is a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

**PP.     Good Faith Solicitation – 11 U.S.C. § 1125(e).**

43.    Based on the record before the Court in these Chapter 11 Cases, the Debtors and their directors, officers, employees, members, agents, advisors, and professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order in connection with all of their respective activities relating to the solicitation of acceptances or rejections of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions in Section 10.6 of the Plan.

**QQ.    Injunctions, Exculpations, and Releases.**

44.    The Court has jurisdiction under sections 1334(a) and (b) of the United States Code to approve the injunctions or stays, injunction against interference with the Plan, releases, and exculpations as set forth in the Plan, including those set forth in Article X of the Plan (collectively, the "Releases").  Sections 105(a) and 1123(b) of the Bankruptcy Code permit issuance of the injunctions and approval of the Releases set forth in Article X of the Plan.  Based upon the record of the Chapter 11 Cases and the evidence proffered or adduced at the Confirmation Hearing, the Court finds that the Releases set forth in Article X of the Plan are consistent with the Bankruptcy Code and applicable law and are integral components of the Plan.

45.    The Releases constitute good-faith compromises and settlements of the matters covered thereby.  Such compromises and settlements are made in exchange for consideration and (i) are in the best interests of the Debtors, their Estates and holders of Claims and Interests; (ii) are fair, equitable and reasonable; (iii) are necessary and integral components of the Plan and the transactions contemplated under the Plan; (iv) confer a material benefit on, and are in the best interests of, the Debtors, their Estates and holders of Claims and Interests; (v) are important to the overall objectives of the Plan to finally resolve all Claims and Interests among or against parties in interest in the Chapter 11 Cases; and (vi) are supported by the Debtors and their key stakeholders.  The failure to approve the Releases would seriously impair the Debtors' ability to confirm the Plan.  Support for the Plan by the Secured Lenders is conditioned upon approval of the Releases, without which the Secured Lenders would not have supported the Plan.

46.    The Debtor Release under Section 10.4(a) of the Plan is reasonable in scope and no objections have been filed.

47.    The Third Party Release set forth in Section 10.4(b) of the Plan is appropriate for the reasons stated above and for the following reasons.  First, the Third Party Release is consensual because it was conspicuously disclosed in the Plan, the Disclosure Statement and on the Ballots, which provided parties in interest with sufficient notice of such Third Party Release.  Therefore, the Third Party Release was consented to by all parties that voted in favor of the Plan or did not opt out of the Third Party Release.  Second, the Third Party Release specifically identifies the parties granting and receiving the Third Party Release and the claims being released thereby.  Third, the Third Party Release is integral to the Plan and a condition of the settlement embodied in the Plan because the Third Party Release (i) facilitated participation in development of, and consent to, the Plan by the Secured Lenders and (ii) is an essential component of the implementation of the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code.  The Third Party Release was a critical negotiation point in developing the Plan supported by the Secured Lenders and was a material inducement for the Secured Lenders to make substantial contributions to the Plan, including consenting to the use of cash collateral and consenting to the transactions contemplated by, and the Global Settlement embodied in, the Plan.  Finally, the Third Party Release was given for fair, sufficient and adequate consideration.

48.    The Management Company Release and the Shareholder Release, as set forth in Sections 10.4(c)-(d) of the Plan, respectively, have been provided consensually, are integral to the Plan, and are consistent with prior case law, permissible, and reasonable.  The Management Company Release and the Shareholder Release are consensual because they were conspicuously disclosed in the Plan and the Disclosure Statement, which provided parties in interest with sufficient notice of such releases.  Second, the Management Company Release and the Shareholder Release specifically identify the parties granting and receiving the releases and the claims being released thereby.  Third, the Management Company Release and the

Shareholder Release are integral to the Plan and a condition of the settlement embodied in the Plan because the releases  (i) facilitated participation in development of, and consent to, the Plan by the Management Company Released Parties and the Shareholder  and (ii) are an essential component of the implementation of the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code.   The Management Company Release and the Shareholder Release were a critical negotiation point in developing the Plan supported by the Secured Lenders, the Creditors Committee and the other parties in interest.  Finally, the Management Company Release and the Shareholder  Release were given for fair, sufficient and adequate consideration.

49.    The exculpation provisions in Section 10.6 of the Plan are consistent with prior case law, reasonable in scope, integral to the Plan, and appropriate.  The exculpation provisions in Section 10.6 of the Plan were proposed in good faith following extensive good faith negotiations among the Debtors, the Secured Lenders, the Informal Committee, the Management Company Released Parties and the Shareholder, are integral to the Plan and are appropriately limited in scope, covering only certain enumerated activities performed in furtherance of the Debtors' Plan.   The exculpation provisions also contain exceptions for gross negligence, intentional fraud, willful misconduct or criminal conduct.

**RR.    Implementation.**

50.    All documents necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents, have been negotiated in good faith and at arms' length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

**SS.    Executory Contracts and Unexpired Leases.**

51.    The Debtors have exercised reasonable business judgment in determining whether to assume or reject Executory Contracts and Unexpired Leases pursuant to Section 8.1

of the Plan.  Each assumption of an Executory Contract pursuant to Section 8.1 of the Plan shall

be legal, valid, and binding upon the Debtors and their successors and assigns and all non-Debtor

parties and their successors and assigns to such Executory Contract, all to the same extent as if

such assumption had been effectuated pursuant to an order of the Court under section 365 of the

Bankruptcy Code entered before entry of this Confirmation Order.  Moreover, the Debtors have

appropriately cured, or provided adequate assurance that defaults (if any) under or relating to

each of the Executory Contract and Unexpired Lease that are being assumed pursuant to the Plan

will be cured.

**TT.    Conditions Precedent to Effective Date.**

52.    Except for Section 9.2(c) of the Plan, the conditions precedent to the

Effective Date set forth in Section 9.2 of the Plan may be waived in writing in whole or in part

by the Debtors and the Informal Committee without notice or order of the Court.  Further, it shall

be a condition precedent to the Effective Date of the Plan that the Plan Administrator Agreement

be in form and substance reasonably acceptable to the Informal Committee.

**UU.    Closing Cases of Debtor Affiliates.**

53.    On the Effective Date: (i) all of the Debtors shall be merged into Toisa and

the Plan Administrator may dissolve such Debtors other than Post-Effective Toisa and complete

the winding up of such Debtors without the necessity for any other or further actions to be taken

by or on behalf of such dissolving Debtor or its shareholder or any payments to be made in

connection therewith, other than the filing of a certificate of dissolution with the appropriate

governmental authorities; (ii) all assets of the Debtors shall be transferred to Toisa, and all claims

filed or scheduled in the affiliated Debtors' cases shall be deemed to have been filed in the

Chapter 11 Case of Toisa; and (iii) the Chapter 11 Cases of each Debtor other than Toisa shall be

closed, provided, further, in connection with the closing of such cases, a final decree shall be

deemed entered for each Debtor other than Toisa without need for further application or notice. In the discretion of Post-Effective Toisa, after the Effective Date, Toisa may engage in any other transaction in furtherance of this Plan. Such transactions will include the wind down of Post-Effective Toisa in accordance with applicable law. Any such transactions may be effective as of the Effective Date pursuant to the Confirmation Order without any further action by the stockholders, members, general or limited partners, or directors of any of the Debtors.

**VV.    Satisfaction of Confirmation Requirements.**

54.    The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**WW.    Objections.**

55.    All parties have had a full and fair opportunity to litigate all issues raised, or which might have been raised, in any objection to the Plan, and any such objections have been fully and fairly litigated.

**XX.    Retention of Jurisdiction.**

56.    The Court may, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Section 11.1 of the Plan and section 1142 of the Bankruptcy Code.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**I.    Confirmation.**

57.    The Plan annexed hereto as <u>Exhibit A</u> and each of its provisions, as modified pursuant to section 1127 of the Bankruptcy Code, are hereby approved and **CONFIRMED** under section 1129 of the Bankruptcy Code. The terms of the Plan and the Plan Supplement, each as may be modified, are incorporated by reference into and are an integral part of the Plan and this Confirmation Order.

**II.    Plan Supplement.**

58.    The form of documents contained in the Plan Supplement and any amendments, modifications, and supplements thereto, and any and all documents introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Debtors, are authorized and approved.

## III.    Modifications to the Plan.

59.    The modifications to the Plan, including, without limitation, the modifications to the Plan and the Plan Supplement since the commencement of solicitation, constitute technical changes and do not materially adversely affect or change the treatment of any Claims.    Accordingly, pursuant to Bankruptcy Rule 3019 and in accordance with the Disclosure Statement Order, such modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.    To the extent any creditor or party in interest has not accepted the modifications to the Plan in writing, the treatment of Claims of any such creditors under the Plan, as modified, is not adverse and, pursuant to Local Rule 3019-1, Holders of Claims who voted to accept the solicitation version of the Plan are deemed to accept the Plan as modified.    Prior to the Effective Date, the Debtors may make additional appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Court.    The Debtors will consult with the Shareholder, and obtain his consent, which shall not be unreasonably withheld, solely with respect to any alteration, amendment, or modification of the Shareholder Release as set forth in Section 10.4(d) of the Plan.    The Debtors will consult with the Management Company Released Parties (not owned by Toisa) and obtain their consent, which shall not be unreasonably

withheld, solely with respect to any alteration, amendment, or modification of the Management

Company Release as set forth in Section 10.4(c) of the Plan.

**IV.    Objections.**

60.    Any and all objections to Confirmation of the Plan that have not been

withdrawn, waived, or settled, and all reservations of rights pertaining to Confirmation of the

Plan included therein, are overruled on the merits, including the objection filed by the United

States Trustee [Docket No. 1093].

**V.    Omission of Reference to Particular Plan Provisions.**

61.    The failure to specifically describe or include any particular provision of

the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such

provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.

**VI.    Solicitation and Notice.**

62.    The Confirmation Hearing Notice complied with the terms of the

Disclosure Statement Order, was appropriate and satisfactory based on the circumstances of

these Chapter 11 Cases, and was in compliance with the applicable provisions of the Bankruptcy

Code, the Bankruptcy Rules, and the Local Rules.  The solicitation of votes on the Plan and the

Solicitation Packages complied with the solicitation procedures in the Disclosure Statement

Order, were appropriate and satisfactory based upon the circumstances of these Chapter 11

Cases, and were in compliance with the applicable provisions of the Bankruptcy Code, the

Bankruptcy Rules, and the Local Rules.  The Debtors solicited acceptances of the Plan in good

faith and in compliance with the applicable provisions of the Bankruptcy Code, including,

without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable

nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with

such solicitation.  The Debtors and each of their respective directors, officers, employees,

affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the solicitation of votes under the Plan, and therefore are not, and on account of such solicitation will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

**VII.    Vesting of Assets.**

63.    Pursuant to Section 10.2 of the Plan, except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estates (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Post-Effective Toisa, free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests of creditors and equity security Holders; provided, however, that all Claims, Liens, charges, encumbrances, rights and Interests granted or acknowledged by the Debtors to the Secured Lenders under any of the Cash Collateral Orders shall remain binding on and enforceable against the Debtors, Post-Effective Toisa and their respective successors and assigns.  As of the Effective Date, the Debtors or Post-Effective Toisa may operate their businesses and use, acquire, and dispose of their property without supervision of the Bankruptcy Court, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or this Confirmation Order. Consistent with Article V of the Plan and subject to the terms of the Plan Administrator Agreement, the Plan Administrator shall direct and control the wind down, liquidation, sale or abandonment of the remaining assets of the Debtors (including any remaining Offshore Vessels) as necessary to maximize Distributions to Holders of Allowed Claims.

64.    The terms and provisions of the Plan and this Confirmation Order shall upon the Effective Date be binding in all respects upon (a) the Debtors and their affiliates, (b) all

known and unknown creditors of, and holders of equity security interests in, any Debtor, including any holders of Claims, Interests, Liens, and other encumbrances, (c) the Released Parties, and (d) all interested parties, and all successors and assigns of any of the foregoing.

## VIII.    Plan Implementation Authorization.

65.    The Debtors or Post-Effective Toisa, as the case may be, and their respective directors, officers, members, agents, and attorneys, financial advisors, and investment bankers are authorized and empowered from and after the date hereof to negotiate, execute, issue, deliver, implement, file, or record any contract, instrument, release, or other agreement or document related to the Plan, including any document included in the Plan Supplement, or any document related or ancillary thereto (each according to their terms), as the same may be modified, amended, and supplemented, and to take any action necessary or appropriate to implement, effectuate, consummate, or further evidence the Plan in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Plan whether or not specifically referred to in the Plan, without further order of the Court.  To the extent applicable, any or all such documents shall be accepted upon presentment by each of the respective state filing offices and recorded in accordance with the applicable law and shall become effective in accordance with their terms and the provisions of applicable law.  No action of the Debtors' boards of directors or Post-Effective Toisa's boards of directors will be required to authorize the Debtors or Post-Effective Toisa, as applicable, to enter into, execute and deliver, adopt, or amend, as the case may be, any such contract, instrument, release, or other agreement or document related to the Plan.

66.    As of the Effective Date, Jonathan Mitchell shall continue to be an officer of Post-Effective Toisa and, in such role, shall be duly appointed as Plan Administrator with the powers and duties set forth in the Plan and otherwise necessary to implement and consummate

the Plan.  The Plan Administrator shall be deemed the Debtors' and the estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers authority and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under section 704 and 1106 of the Bankruptcy Code.

67.    The Debtors, Post-Effective Toisa, and or the Plan Administrator are authorized and empowered to execute, deliver and/or file such documents, and make such payments, as are necessary to consummate the Plan.  All actions contemplated by the Plan are authorized and approved in all respects (subject to the provisions of the Plan and this Confirmation Order).  Upon the Effective Date, the Plan Administrator is authorized to execute and deliver and to perform the terms of any agreements, documents, and instruments contemplated by the Plan in the name of and on behalf of the Debtors or Post-Effective Toisa.

## IX.  Plan Classification Controlling.

68.    The classification of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors in connection with voting on the Plan (a) were set forth on the Ballots for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Plan for distribution purposes, and (c) shall not be binding on the Debtors or Post-Effective Toisa, as applicable.

## X.  Approval of Global Settlement and Other Settlements.

69.    The entry of this Confirmation Order constitutes the Court's approval all compromises and settlements set forth in the Plan including the Global Settlement, all of which are fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

**XI. Distributions Under the Plan.**

70.     The provisions of Article VI of the Plan, including, without limitation, the provisions governing distributions, are fair and reasonable and are approved.

**XII. Disputed Claims.**

71.     The provisions of Article VII of the Plan, including, without limitation, the provisions governing procedures for resolving Disputed Claims, are fair and reasonable and are approved.

**XIII. Executory Contracts.**

72.     Pursuant to Section 8.1 of the Plan, except as otherwise provided in the Plan, all Executory Contracts and Unexpired Leases of the Debtors shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (a) has previously been assumed or assigned by order of the Bankruptcy Court in effect as of the Effective Date; (b) is the subject of a motion to assume or assign filed on or before the Effective Date with the consent of the Informal Committee; (c) is identified as an Executory Contract or Unexpired Lease to be assumed or assigned pursuant to the Plan Supplement before the Effective Date; or (d) has expired or terminated pursuant to its own terms.

73.     Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be filed with Bankruptcy Court and served on the Debtors or the Plan Administrator, as applicable, no later than thirty (30) days after the earlier of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease.  In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtors or the Plan Administrator, as

applicable, no later than fourteen (14) days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

74.    Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Plan Administrator, the Estates, Post-Effective Toisa, or the property of any of the foregoing without the need for any objection by the Debtors or the Plan Administrator, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

## XIV.    Final Fee Applications.

75.    Pursuant to Section 2.3 of the Plan, Professionals shall submit final fee applications seeking approval of all Professional Fee Claims no later than thirty (30) days after the Effective Date.  These applications remain subject to Bankruptcy Court approval under the standards established by the Bankruptcy Code, including the requirements of sections 327, 328, 330, 331, 363, 503(b), and 1103 of the Bankruptcy Code, as applicable.  Any unpaid amounts to Professionals shall be made upon entry of a Final Order approving such Professional Fee Claims.  Post-Effective Toisa is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course of business without the need for Bankruptcy Court approval.

## XV.    Administrative Bar Date

76.    Each Holder of an Administrative Claim that accrued between January 1, 2019 through and including the Effective Date is required to file a proof of Administrative Claim within thirty (30) days after the Effective Date (the "Second Administrative Bar Date"), *provided, that,* such deadline shall not apply to professionals that have been retained pursuant to an Order of this Court, or (ii) the Secured Lenders.   Nothing herein extends any Bar Date previously established by the Bankruptcy Court (including, the previously established Bar Date of February 22, 2019 for Administrative Claims that accrued between the Petition Date through and including December 31, 2018, which was established pursuant to the *Order (I) Establishing a Bar Date for Filing Administrative Claims Arising from the Petition Date Through and Including December 31, 2018 and (ii) Approving the Form and Manner of Notice Thereof* [Docket No. 1032]).

77.    The Debtors shall make a proof of Administrative Claim available for downloading at www.kccllc.net/toisa. Delivery of the proof of Administrative Claim shall be made to Kurtzman Carson Consultants LLC ("KCC") by U.S. Postal Service mail or overnight delivery to KCC, 2335 Alaska Ave., El Segundo, California 90245 (Attn: Toisa Limited, et al.). Any proof of Administrative Claim sent in any other manner, including by facsimile, telecopy, or electronic mail transmission, shall not be accepted.

78.    Any request for payment of an Administrative Claim that is not timely filed in the manner set forth above shall be forever barred, and Holders of such Administrative Claims shall not be able to assert such Claims in any manner against the Debtors, Post-Effective Toisa, the Estates, the Plan Administrator or any of the foregoing parties' accountants, advisors, agents, attorneys, consultants, directors, employees, members, officers, representatives, or Professionals.

**XVI.    Exemption from Certain Transfer Taxes.**

79.    To the fullest extent permitted by applicable law, all sale transactions and asset transfers consummated by the Debtors and approved by the Bankruptcy Court on and after the Confirmation Date through and including the Effective Date, including any issuance, sale, and/or transfer effectuated under the Plan, the sale by the Debtors of any owned property pursuant to section 363(b) or 1123(b)(4) of the Bankruptcy Code, any assumption, assignment, and/or sale by the Debtors of their interests in Executory Contracts or Unexpired Leases pursuant to section 365(a) of the Bankruptcy Code, and the creation, modification, consolidation, or recording of any mortgage or security interest pursuant to the terms of the Plan shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code, and shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.  This Confirmation Order is and shall be binding upon and shall govern the acts of all entities, including, without limitation, all recordation officers.

**XVII.    Insurance Policies.**

80.    Pursuant to Section 8.3 of the Plan, as of the Effective Date, the provisions of the Plan shall not diminish or impair in any manner the enforceability of coverage of any existing, paid for, insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtors, any directors, trustees, or officers of the Debtors, or any other Person.

81.    As of the Effective Date, the D&O Liability Insurance Policies shall be treated as if they were Executory Contracts that are assumed under the Plan.  Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise

modify any indemnity obligations for the Reconstituted Toisa Board or persons to be employed

by Post-Effective Toisa assumed by the foregoing assumption of the D&O Liability Insurance

Policies, and each such indemnity obligation shall be deemed and treated as an Executory

Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim

need be filed.

**XVIII.  Term of Injunctions or Stays.**

82.    Pursuant to Section 10.7 of the Plan, unless otherwise provided in the Plan

or in this Confirmation Order, all injunctions or stays arising under or entered during the Chapter

11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the

Confirmation Date, shall remain in full force and effect until the later of the Effective Date and

the date indicated in the order providing for such injunction or stay.  Notwithstanding anything to

the contrary in the Plan or this Confirmation Order, neither the Plan nor this Confirmation Order

shall limit, impair, or otherwise affect the Court's ability to enter an order lifting any stay that is

in effect.

**XIX. Releases, Exculpations, and Injunctions.**

83.    Subject to this Confirmation Order, all release, exculpation, and injunction

provisions set forth in the Plan, including, but not limited to, those contained in Article X of the

Plan, are approved and shall be effective and binding on all persons and entities to the extent

provided and limited therein; *provided*, *however*, that notwithstanding anything to the contrary in

the Plan or this Confirmation Order, nothing contained in Article X of the Plan shall release or

exculpate Sealion from any Claims, Interests, obligations, rights, demands, suits, damages,

Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted

or assertable on behalf of a Debtor, that Crédit Agricole Corporate and Investment Bank ("Crédit

Agricole") ever had, now has or hereafter can, shall, or may have, based on, relating to, or in any

manner arising from, in whole or in part, (i) any charter receipts, earnings, or other funds owed by Sealion to any Debtor or Crédit Agricole on account of, or with respect to, the *Toisa Valiant*, the *Toisa Vigilant* and the *Toisa Voyager* and (ii) any and all existing obligations of Sealion, as applicable, to maintain the *Toisa Valiant*, the *Toisa Vigilant* and the *Toisa Voyager* in layup or otherwise; *provided*, *further*, Sealion shall not be released by the Debtors' or any of the Secured Lenders in connection with their respective rights, interests, and claims as to (i) the Diavaz Settlement, the Diavaz Settlement Order, and the Diavaz Settlement Proceeds (or any other receivables arising under the Diavaz Settlement), (ii) the underlying claims that relate to the subject matter of the Diavaz Settlement, the Diavaz Settlement Order, and the Diavaz Settlement Proceeds (or any other receivables arising under the Diavaz Settlement), including, without limitation, any payment made to counsel to Sealion in connection with the Diavaz Settlement Order, and (iii) receivables for charter hires, freights, and passage moneys relating to the Debtors' vessels, the Toisa Perseus and the Toisa Proteus.

## XX.    Injunction Against Interference with Plan.

84.    Upon entry of this Confirmation Order, all Holders of Claims or Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

## XXI.    Notice of Entry of Confirmation Order and Effective Date.

85.    On or before the fourteenth (14th) day following the date of entry of this Confirmation Order, the Debtors or Post-Effective Toisa, as applicable, shall serve notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all creditors and interest holders, the U.S. Trustee, and other parties in interest, by causing notice of entry of this Confirmation Order (the "Notice of Confirmation"), to be delivered to

such parties by first-class mail, postage prepaid.  The notice described herein is adequate under

the circumstances, and no other or further notice is necessary.

**XXII.  Notice of Effective Date.**

86.    As soon as practicable after the occurrence of the Effective Date, Post-

Effective Toisa shall serve notice of the Effective Date on all creditors and interest holders, the

U.S. Trustee, and other parties in interest, by causing notice of the Effective Date to be delivered

to such parties by first-class mail, postage prepaid.  The Notice of Effective Date shall include

notice of the deadline for (a) filing Proofs of Claim arising out of rejection of Executory

Contracts or Unexpired Leases upon the Effective Date, (b) filing Proofs of Administrative

Claims with respect to Administrative Claims accruing between January 1, 2019 through and

including the Effective Date, and (c) filing Professional Fee Claims.

**XXIII.  Retention of Jurisdiction.**

87.    Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, this Court

shall retain exclusive jurisdiction with respect to all matters arising from or related to the Chapter

11 Cases, the Plan, and the implementation of this Confirmation Order, including, without

limitation, those matters set forth in Article XI of the Plan.

**XXIV.  Payment of Statutory Fees.**

88.    On or prior to the Effective Date, and thereafter as may be required, the

Debtors or the Plan Administrator shall pay all fees incurred pursuant to section 1930 of title 28

of the United States Code, provided however, that after the Effective Date, such fees shall only

be payable with respect to Case No. 17-10184 until such time as a final decree is entered to close

such case.

**XXV.   Payment of Professionals After the Effective Date.**

89.    Subject to the terms of the Plan Administrator Agreement, Post-Effective

Toisa and the Plan Administrator are authorized to pay compensation for services rendered or

reimbursement of expenses incurred after the Effective Date in the ordinary course without the need for Bankruptcy Court approval.

## XXVI.    Funding of Professional Fee Escrow.

90.    On the Effective Date, the Debtors or Post-Effective Toisa shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount.

## XXVII.    Liability to the United States.

91.    As to the United States of America, its agencies, departments, or agents (collectively, the "United States"), nothing in the Plan or Confirmation Order shall limit or expand the scope of discharge, release or injunction to which the Debtors or Post-Effective Toisa are entitled to under the Bankruptcy Code, if any.    The discharge, release and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar the United States from, subsequent to the Confirmation Order, pursuing any police or regulatory action.

92.    Accordingly, notwithstanding anything contained in the Plan or Confirmation Order to the contrary, nothing in the Plan or Confirmation Order shall discharge, release, impair or otherwise preclude: (1) any liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (2) any Claim of the United States arising on or after the Confirmation Date; (3) any valid right of setoff or recoupment of the United States against any of the Debtors or Post-Effective Toisa; or (4) any liability of the Debtors or Post-Effective Toisa under police or regulatory statutes or regulations to any Governmental Unit (as defined by section 101(27) of the Bankruptcy Code) as the owner, lessor, lessee or operator of property that such entity owns, operates or leases after the Confirmation Date.    Nor shall anything in this Confirmation Order or the Plan: (i) enjoin or otherwise bar the

United States or any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence; or (ii) divest any court, commission, or tribunal of jurisdiction to determine whether any liabilities asserted by the United States or any Governmental Unit are discharged or otherwise barred by this Confirmation Order, the Plan, or the Bankruptcy Code.

93.    Moreover, nothing in the Confirmation Order or the Plan shall release or exculpate any non-debtor, including any Released Parties or Exculpated Parties, from any liability to the United States, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws, nor shall anything in this Confirmation Order or the Plan enjoin the United States from bringing any claim, suit, action or other proceeding against the Released Parties or Exculpated Parties for any liability whatsoever; provided, however, that the foregoing sentence shall not limit the scope of discharge granted to the Debtors under sections 524 and 1141 of the Bankruptcy Code.

94.    Nothing contained in the Plan or Confirmation Order shall be deemed to determine the tax liability of any person or entity, including but not limited to the Debtors and Post-Effective Toisa, nor shall the Plan or Confirmation Order be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of this Plan, nor shall anything in this Plan or Confirmation Order be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under the Bankruptcy Code or applicable law.

**XXVIII.    Documents, Mortgages, and Instruments.**

95.    Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments

necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan.

### XXIX.    Binding Effect of Prior Orders

96.    Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, all prior orders entered in the Chapter 11 Cases and all documents and agreements executed by the Debtors as authorized and directed thereunder shall be binding and enforceable and shall inure to the benefit of the Debtors, post-Effective Toisa and their respective successors and assigns.  Notwithstanding anything in the Plan or this Confirmation Order to the contrary, the *Order Approving (A) Procedures Regarding the Solicitation of Offers in Connection with the Sale of Certain of the Debtors' Offshore Vessels, Subject to Bankruptcy Court Approval, (B) the Form of Notices Regarding the Sales and (C) the Form of Purchase and Sale Agreement* [Docket No. 671] (the "Offshore Sale Procedures Order"), the *Order Expanding the Retention and Employment of H. Clarkson & Company Ltd. as Shipbroker for the Debtors to Include the Sale of Offshore Vessels Nunc Pro Tunc to May 15, 2018* [Docket No. 655] (the "Expanded Clarkson Retention Order") and the Protocol are hereby binding upon the Debtors and all other parties in interest for all purposes from and after the Effective Date.  Post-Effective Toisa shall continue to retain and employ H. Clarkson & Company Ltd. pursuant to the terms of the Expanded Clarkson Retention Order, and the Plan Administrator shall continue to market and sell any remaining Offshore Vessels that have not been sold as of the Effective Date in accordance with, and subject to the terms of, the Offshore Sale Procedures Order.

### XXX.    Activities in Anticipation of the Effective Date.

97.    The Debtors are hereby authorized and empowered to take all necessary steps, and pay all related expenses, in anticipation of the Effective Date, including, without limitation, effectuating the transactions contemplated by the Plan and this Confirmation Order.

**XXXI.    Substantial Consummation.**

98.    On the Effective Date, the Plan shall be deemed to be substantially consummated pursuant to sections 1101 and 1127(b) of the Bankruptcy Code.

**XXXII.    Severability.**

99.    This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be amended in accordance with Section 12.2 of the Plan, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or amended other than in accordance with Section 12.2 of the Plan, and (c) non-severable and mutually dependent.

**XXXIII.    Immediate Binding Effect.**

100.    Pursuant to section 1141 and the other applicable provisions of the Bankruptcy Code, on or after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the terms of the Plan (including all documents and agreements executed pursuant thereto or in connection therewith), the Plan Supplement, and this Confirmation Order shall be immediately effective and enforceable and shall bind the Debtors, Post-Effective Toisa, the Releasing Parties, the Released Parties, Management Company Released Parties, the Exculpated Parties, all Holders of Claims and Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the Holders of such Claims or Interests accepted or are deemed to have accepted the Plan), any other person giving, acquiring, or receiving property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with any of the Debtors, any other party in interest in these Chapter 11 Cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing. On the Effective Date, all settlements, compromises, releases (including, without limitation, the releases set forth in Article X of the Plan), waivers, discharges, exculpations, and injunctions set

forth in the Plan shall be effective and binding on Persons who may have had standing to assert any settled, compromised, released, waived, discharged, exculpated, or enjoined Causes of Action after the Effective Date.

**XXXIV.    Conflicts Between Confirmation Order and the Plan.**

101.    To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and provisions contained in this Confirmation Order shall govern.  The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent unless expressly stated by further order of this Court.

**XXXV.    Stay of Confirmation.**

102.    The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived.  This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(g), 6006(d), or 7062.

**XXXVI.    Modifications and Amendments.**

103.    The Plan may be amended, modified, or supplemented by the Debtors in accordance with Section 12.2 of the Plan and paragraph 58 of this Confirmation Order.

**XXXVII.    Final Order.**

104.    This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

Dated: March 15, 2019
      New York, New York

                         /S/ Shelley C. Chapman
                         THE HONORABLE SHELLEY C. CHAPMAN
                         UNITED STATES BANKRUPTCY JUDGE